1    QUINN EMANUEL URQUHART & SULLIVAN, LLP
     Ethan Glass (Bar No. 216159)
2    ethanglass@quinnemanuel.com
     Michael Lyle (*pro hac vice* pending)
3    mikelyle@quinnemanuel.com
     Eric Lyttle (*pro hac vice* pending)
4    ericlyttle@quinnemanuel.com
     1300 I St. NW, Suite 900
5    Washington, District of Columbia 20005
     Telephone:      (202) 538-8000
6    Facsimile:      (202) 538-8100

7    Margret M. Caruso (Bar No. 243473)
     margretcaruso@quinnemanuel.com
8    555 Twin Dolphin Drive, 5th Floor
     Redwood Shores, California 94065
9    Telephone: (650) 801-5000
     Facsimile:      (650) 801-5100

10

11   *Attorneys for Defendants Express Scripts*
     *Holding Co. and Express Scripts, Inc.*

12                    **UNITED STATES DISTRICT COURT**
                  **NORTHERN DISTRICT OF CALIFORNIA**
13                     **SAN FRANCISCO DIVISION**

14   CZ SERVICES, INC. d/b/a              Case No. 3:18-cv-4217-JD
     CAREZONE PHARMACY and
15   CAREZONE PHARMACY LLC                **EXPRESS SCRIPTS' NOTICE OF**
                                          **MOTION AND MOTION TO TRANSFER**
16              Plaintiff,                **CZ TENNESSEE'S CLAIMS**

17        v.                              Hearing Date: September 6, 2018
                                          Time:       10:00am
18   EXPRESS SCRIPTS HOLDING CO. and      Place:      San Francisco Courtroom 11
     EXPRESS SCRIPTS, INC.,               Judge:      Judge James Donato
19
                Defendants.
20

21

22

23

24

25

26

27

28

                                                      Case No. 3:18-cv-4217-JD

TO THE CLERK OF THE ABOVE-ENTITLED COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 6, 2018, at 10:00 a.m., or as soon thereafter as the matter may be heard in the above-entitled Court, Defendants Express Scripts Holding Co. and Express Scripts, Inc., through their undersigned counsel, will bring for hearing, in Courtroom 11 of the United States Courthouse located at 450 Golden Gate Avenue, San Francisco, California, their Motion to Transfer this action with respect to Plaintiff CareZone Pharmacy LLC to the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 1404(a).

Express Scripts seeks transfer based on an explicit and mandatory forum-selection clause, which provides:

> All litigation between the parties arising out of or related in any way to the interpretation or performance of the Agreement shall be litigated in a U.S. District Court located in the state of Delaware.

Provider Agreement § 7.12.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities; the declaration of Ethan Glass filed in support of Express Scripts' first Motion to Transfer, ECF 17; the declaration of Greg Moore filed in support of Express Scripts' Opposition to CZ Tennessee's Motion for a Temporary Restraining Order; and such oral argument as may be presented at the time of the hearing.

DATED: July 31, 2018                    Respectfully submitted,

                                        QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP


                                        By /s/ *Ethan Glass*
                                        Ethan Glass (Bar No. 216159)
                                        Margret M. Caruso (Bar No. 243473)
                                        Michael Lyle (*pro hac vice* forthcoming)
                                        Eric Lyttle (*pro hac vice* forthcoming)

                                        *Attorneys for Defendants Express Scripts*
                                        *Holding Co. and Express Scripts, Inc.*

# Table of Contents

Table of Authorities ................................................................................................................ ii

Introduction ........................................................................................................................... 1

Factual Background ............................................................................................................... 1

    A.    Express Scripts ...................................................................................... 1

    B.    CZ Tennessee ........................................................................................ 2

    C.    CZ Tennessee's breaches and termination............................................ 3

    D.    Litigation against Express Scripts ......................................................... 4

Argument ............................................................................................................................... 5

I.    This Court should enforce the forum-selection clause............................................ 5

    A.    The forum-selection clause is valid and binding.................................... 6

    B.    This dispute falls within the scope of the forum-selection clause............................ 7

    C.    The public-interest factors do not overwhelmingly disfavor transfer. .................... 9

Conclusion ...........................................................................................................................10

1          **Table of Authorities**

2          **Cases**

3    *Amberger v. Legacy Capital Corp.,*
         2017 WL 264078 (N.D. Cal. Jan. 20, 2017)..................................................................... 7
4
     *Atlantic Marine Construction Co. v. U.S. District Court,*
5        134 S. Ct. 568 (2013) ...............................................................................................passim

6    *Besag v. Custom Decorators, Inc.,*
         2009 WL 330934 (N.D. Cal. Feb. 10, 2009) ................................................................ 10
7
     *Brennen v. Phyto-Riker Pharmaceuticals, Ltd.,*
8        2002 WL 1349742 (S.D.N.Y. June 20, 2002)................................................................. 8

9    *Carnival Cruise Lines, Inc. v. Shute,*
         499 U.S. 585 (1991) ....................................................................................................... 7
10
     *Cooper v. Slice Technologies, Inc.,*
11       2017 WL 4071373 (N.D. Cal. Sept. 14, 2017) ............................................................. 10

12   *Cream v. Northern Leasing Systems, Inc.,*
         2015 WL 4606463 (N.D. Cal. July 31, 2015).................................................................. 7
13
     *Diabetic Care Rx, LLC v. Express Scripts, Inc.,*
14       2018 U.S. Dist. Lexis 111100 (S.D. Fla. June 29, 2018),
         *affirmed and adopted*, 2018 U.S. Dist. Lexis 120906 (S.D. Fla. July 17, 2018).......1, 6, 8, 9
15
     *East Bay Women's Health, Inc. v. gloStream, Inc.,*
16       2014 WL 1618382 (N.D. Cal. Apr. 21, 2014) ................................................................. 7

17   *Herbert H. Landy Insurance Agency, Inc. v. Navigators Management Co.,*
         2014 WL 3908179 (D. Mass. Aug. 8, 2014) ................................................................... 5
18
     *Lentini v. Kelly Services, Inc.,*
19       2017 WL 4354910 (N.D. Cal. Oct. 2, 2017) .............................................................7, 10

20   *Lewis v. Liberty Mutual Insurance Co.,*
         2018 WL 2412181 (N.D. Cal. May 29, 2018)................................................................. 6
21
     *McCusker v. hibu PLC,*
22       2015 WL 1600066 (E.D. Pa. Apr. 8, 2015) .................................................................... 9

23   *Moretti v. Hertz Corp.,*
         2014 WL 1410432 (N.D. Cal. Apr. 11, 2014).................................................................. 7
24
     *Murphy v. Schneider National, Inc.,*
25       362 F.3d 1133 (9th Cir. 2004) .................................................................................... 6, 7

26   *Paduano v. Express Scripts, Inc.,*
         55 F. Supp. 3d 400 (E.D.N.Y. 2014) .......................................................................... 1, 6
27
     *Park Irmat Drug Corp. v. Express Scripts Holding Co.,*
28       --- F. Supp. 3d ----, 2018 WL 1033188 (E.D. Mo. Feb. 21, 2018) ................................ 7

EXPRESS SCRIPTS' MOTION TO TRANSFER CZ TENNESSEE'S CLAIMS

*Polar Shipping Ltd. v. Oriental Shipping Corp.*,
   680 F.2d 627 (9th Cir. 1982).............................................................................. 7

*Prime Aid Pharmacy Corp. v. Express Scripts, Inc.*,
   2017 WL 1086175 (D.N.J. Mar. 21, 2017).................................................1, 6, 8

*Siren, Inc. v. Firstline Security, Inc.*,
   2006 WL 3257440 (D. Ariz. May 17, 2006) ...................................................... 8

*Stavrinides v. Vin Di Bona*,
   2018 WL 317821 (N.D. Cal. Jan. 8, 2018)......................................................... 5

*TK Products, LLC v. Buckley*,
   2016 WL 7013470 (D. Or. Nov. 29, 2016).......................................................... 9

*Transamerica Corp. v. Transfer Planning, Inc.*,
   419 F. Supp. 1261 (S.D.N.Y. 1976) ..................................................................... 5

*VidAngel LLC v. ClearPlay, Inc.*,
   2014 WL 894524 (N.D. Cal. Mar. 4, 2014)......................................................... 5

**Statutes**

15 U.S.C. § 1125(a)(1)........................................................................................... 10

28 U.S.C. § 1404(a) .....................................................................................1, 5, 9, 10

42 U.S.C. § 1395w-104(b)(1)(A) .......................................................................... 10

42 U.S.C. § 1396a................................................................................................... 10

EXPRESS SCRIPTS' MOTION TO TRANSFER CZ TENNESSEE'S CLAIMS

**Introduction**

No part of this case belongs in this Court.   Both Plaintiffs have entered into Provider Agreements with Express Scripts that identify the courts where all litigation arising out of or relating in any way to the interpretation or performance of the parties' Provider Agreements shall take place.   For CZ Services, Inc. ("**CZ California**") that court is the Eastern District of Missouri.   *See* Express Scripts' Motion to Transfer, ECF 17.   For CareZone Pharmacy LLC ("**CZ Tennessee**"), that court is the District of Delaware.   The forum-selection clause in CZ Tennessee's Provider Agreement requires that its claims "***shall be litigated in a U.S. District Court located in the state of Delaware***."[1]

When "parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause."   *Atlantic Marine Construction Co. v. U.S. District Court*, 134 S. Ct. 568, 581 (2013).   Multiple district courts have held that forum-selection clauses in Express Scripts' pharmacy provider agreements are valid and binding, and they have transferred to the appropriate forum cases filed in other federal districts by pharmacies challenging the termination of such agreements.   *See Diabetic Care Rx, LLC v. Express Scripts, Inc.*, 2018 U.S. Dist. Lexis 111100 (S.D. Fla. June 29, 2018), *affirmed and adopted*, 2018 U.S. Dist. Lexis 120906 (S.D. Fla. July 17, 2018); *Prime Aid Pharmacy Corp. v. Express Scripts, Inc.*, 2017 WL 1086175 (D.N.J. Mar. 21, 2017); *Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400 (E.D.N.Y. 2014).   This Court should do the same.

Accordingly, Express Scripts respectfully requests that this Court grant its motion and transfer CZ Tennessee's claims to the District of Delaware under 28 U.S.C. § 1404(a).

**Factual Background**

**A.      Express Scripts**

Express Scripts, Inc., is a pharmacy benefit manager ("**PBM**") headquartered in St. Louis, Missouri, and incorporated in Delaware.   First Amended Complaint, ECF 24 ("**Complaint**")

---

[1]   ECF 34-8 ("**Provider Agreement**") § 7.12 (emphasis added).   CZ Tennessee's Provider Agreement is Exhibit B to the Declaration of Greg Moore ("**Moore Decl.**"), filed in support of Express Scripts' Opposition to CZ Tennessee's Motion for Temporary Restraining Order.

1  ¶¶ 17–18.    As a PBM, Express Scripts' mission is to make prescription drugs safer and more

2  affordable for its clients and their members.    Moore Decl. ¶ 5.

3       To fulfill its role, Express Scripts has created a network of over 67,000 retail pharmacies

4  throughout the country.    *Id.* ¶¶ 8–9.    Monitoring such a large network of pharmacies is an

5  enormous undertaking.    *Id.* ¶ 11.    Trust is an essential element; Express Scripts cannot

6  constantly monitor every pharmacy at all times.    *Id.* ¶ 32.    When a pharmacy violates that trust,

7  Express Scripts will take action to protect the safety of patients and the integrity and reputation of

8  its pharmacy network, including, when appropriate, by terminating the pharmacy.    *Id.* ¶ 13.

9       To join Express Scripts' retail pharmacy network, a pharmacy must agree to abide by the

10  terms of a pharmacy provider agreement.    Complaint ¶ 24.    There are multiple "standard terms

11  and conditions" in these agreements.    *Id.* ¶ 49.    One is that participating pharmacies must be

12  *retail* pharmacies—*i.e.*, a pharmacy that "primarily fills and sells prescriptions via a retail,

13  storefront location"—and "shall not include mail order . . . pharmacies."    Moore Decl. Ex.

14  B § 1.8; *see also id.* Ex. B § 1.4 (requiring participating pharmacies to satisfy § 1.8).

15       Another standard requirement is that a pharmacy must be licensed in the states that it

16  serves.    *See* Moore Decl. Ex. B § 1.4 (defining "Pharmacy" as, among other things, "licensed by

17  the appropriate state board of pharmacy"); § 2.7 (requiring pharmacy "comply with . . . all

18  applicable laws, rules and regulations"); § 4.2.c (allowing Express Scripts to terminate

19  immediately if "Provider ceases to be licensed by the appropriate licensing authority").

20       In order to gain access to Express Scripts' retail network, a pharmacy must also complete a

21  credentialing process, during which it provides information to Express Scripts about the

22  pharmacy, and it certifies the accuracy of that information.    *Id.* ¶ 27 & Ex. B § 2.2.b.

23       **B.    CZ Tennessee**

24       CZ Tennessee is a Delaware corporation that operates a pharmacy in Nashville, Tennessee.

25  Complaint ¶ 14.    In July 2017, CZ Tennessee entered into the Provider Agreement with Express

26  Scripts.    Moore Decl. ¶¶ 16–19.[2]    The operative Agreement contains a forum-selection clause

27  _____

28  [2] A provider agreement was first executed on July 7, 2017.  Moore Decl. ¶ 16.  It was superseded on July 31, 2017, when CZ Tennessee contracted with Elevate (also known as

1  mandating that "[a]ll litigation between the parties arising out of or related in any way to the

2  interpretation or performance of the Agreement shall be litigated in a U.S. District Court located in

3  the state of Delaware."  *Id.* Ex. B § 7.12.

4      **C.    CZ Tennessee's breaches and termination**

5      During the credentialing process, CZ Tennessee certified to Express Scripts that "100.0%"

6  of its business would be "Open Door Retail/Community" and "0.00%" would be "Mail Order."

7  Moore Decl. ¶ 38 & Ex. D at 2.   CZ Tennessee also certified that it "will not mail, ship, or deliver

8  any claims or prescriptions out of state, now or in the future."   Moore Decl. ¶ 43 & Ex. E.

9      In fact, however, CZ Tennessee operates primarily as a mail-order pharmacy.   See ECF

10  34-3 at 4–5.   Express Scripts' claims data show that CZ Tennessee has filled prescriptions for

11  members of Express Scripts' client health plans nationwide and that at least 94% of the

12  prescriptions CZ Tennessee dispenses are to patients who reside outside of Tennessee.   Moore

13  Decl. ¶¶ 45–47.   Indeed, CZ Tennessee has submitted declarations from two out-of-state patients

14  attesting that CZ Tennessee arranges deliveries to their homes.   ECF 27-10 ¶ 6; ECF 27-11 ¶ 9.

15      Express Scripts also discovered that CZ Tennessee was unlicensed in several states it

16  served.   Between March 28, 2017, and March 28, 2018, CZ Tennessee dispensed 1775

17  prescriptions to patients in California, 265 prescriptions to patients in South Carolina, 167

18  prescriptions to patients in Nebraska, and 142 prescriptions to patients in Arkansas, all without

19  licenses in those states.   Moore Decl. ¶¶ 50–52; *see also* ECF 24-5 at 6 (admitting that, as of

20  April 25, 2018, CZ Tennessee was not licensed in three states).   CZ Tennessee later received

21  licenses in those states, *see* Moore Decl. ¶¶ 53–56, but for over a year it deceived Express Scripts

22  by dispensing thousands of prescriptions to states where it was not licensed.

23      CZ Tennessee further abused Express Scripts' trust by making misrepresentations during

24  the credentialing process, which is grounds for immediate termination.   *Id.* ¶¶ 33–67.   Besides

25  misrepresentations about not being a mail-order pharmacy, CZ Tennessee also failed to disclose

26

27  AmerisourceBergen), which negotiated a separate provider agreement with Express Scripts that
CZ Tennessee agreed to abide by.   *Id.* ¶ 18 & Ex. A.   Thus, the operative Provider Agreement is
28  the one negotiated by Elevate.   *Id.* ¶ 19 & Ex. B.

several lawsuits in which Mr. Schwartz has been sued for making false statements—indeed it falsely certified that such lawsuits did not exist.   *Id.* ¶¶ 39–40, 58–62 & Exs. D at 4, J, K, L.   CZ Tennessee also represented that Mr. Schwartz had never owned any other pharmacy, but Express Scripts discovered that too was false.   *Id.* ¶¶ 41–42, 63–67 & Exs. D at 4, M, N.

After learning of these issues, Express Scripts notified CZ Tennessee on April 18, 2018, that it was exercising its right to terminate for cause under § 4.2.c of the Provider Agreement. Moore Decl. ¶¶ 24, 68; ECF 27-26.   Express Scripts gave 86-days' written notice, with the termination scheduled to take effect on July 13, 2018.   *Id.*   Despite the ample notice, CZ Tennessee did not sue to stop the termination, so the Provider Agreement terminated on July 13.[3]

### D.     Litigation against Express Scripts

In accordance with the forum-selection clause in its own provider agreement, CZ California filed a complaint in the Eastern District of Missouri against Express Scripts on June 20, 2018.   Glass Decl. Ex. 13 (Complaint in *CZ Services, Inc. v. Express Scripts, Inc.*, No. 4:18-cv-1005 (E.D. Mo. June 20, 2018)).   That lawsuit sought, among other things, an injunction to prevent Express Scripts "from terminating its contract with CZ Services."   *Id.* at 32 ¶ a.   Instead of pursuing that complaint, CZ California opted to voluntarily dismiss on July 13, 2018—the very day the termination took effect—and then filed this suit in the Northern District of California. Glass Decl. ¶ 15; ECF 1.

CZ Tennessee did not become part of this litigation until it, with CZ California, filed an amended complaint on July 25.   ECF 24.   The Complaint states that this lawsuit is "an action for unfair competition and other claims based on [Express Scripts']'s unlawful termination of Plaintiffs from [Express Scripts]'s network" as well as "an action against [Express Scripts] for its publishing of defamatory statements" that Express Scripts made explaining Plaintiffs' breaches of the Provider Agreement that led it to terminate CZ Services.   Complaint ¶ 1.   Part of the relief Plaintiffs seek is "injunctive relief enjoining [Express Scripts] from denying CZ Services pharmacies the right to participate as a provider of pharmacy services in [Express Scripts]'s

---

[3]     The Agreement terminated on Friday, July 13, but a backlog in Express Scripts' system caused claims to continue being processed until midday Monday, July 16.   Moore Decl. ¶ 69.

1   pharmacy networks"—that is, an order for Express Scripts to reinstate the Provider Agreement.

2   CZ Tennessee has also asked the Court for a temporary restraining order "prohibiting [Express

3   Scripts] from terminating the Agreement"[4] based on its claim that Express Scripts violated

4   Tennessee's Any Willing Provider ("**AWP**") statute.   ECF 27.

Argument

**I.      This Court should enforce the forum-selection clause**

The Supreme Court held in *Atlantic Marine Construction Co. v. U.S. District Court* that

"[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily

transfer the case [via 28 U.S.C. § 1404(a)] to the forum specified in that clause."   134 S. Ct. 568,

581 (2013).   "Only under extraordinary circumstances unrelated to the convenience of the parties

should a § 1404(a) motion be denied."   *Id.*; *accord id.* at 579 ("a proper application of § 1404(a)

requires that a forum-selection clause should be given controlling weight in all but the most

exceptional cases") (cleaned up).   To overcome a valid forum-selection clause, CZ Tennessee, as

the "party acting in violation of the forum-selection clause," bears "the burden of showing that

public-interest factors overwhelmingly disfavor a transfer."   *Id.* at 583; *accord Stavrinides v. Vin

Di Bona*, 2018 WL 317821, at *2 (N.D. Cal. Jan. 8, 2018) ("Plaintiffs bear the burden of showing

that exceptional circumstances make transfer inappropriate.   Plaintiffs must show either that the

forum selection clause is not valid or that the public interest factors recognized under Section

1404(a) make transfer inappropriate.") (citations omitted).

Here, the forum-selection clause is valid, CZ Tennessee's lawsuit falls within its scope, and

no extraordinary circumstances exist that overwhelmingly disfavor a transfer.   This Court should

---

[4]     That motion does not affect this motion to transfer.   Courts routinely grant motions to transfer without resolving pending applications for preliminary injunctions so that the transferee court will be the court that decides any substantive issues.   *E.g.*, *VidAngel LLC v. ClearPlay, Inc.*, 2014 WL 894524, at *3 (N.D. Cal. Mar. 4, 2014); *Transamerica Corp. v. Transfer Planning, Inc.*, 419 F. Supp. 1261, 1263–64 (S.D.N.Y. 1976).   Indeed, any other approach would improperly reward CZ Tennessee's attempt to evade the forum-selection clause and would unfairly deprive Express Scripts of its contractual right to have these substantive issues litigated in Delaware.   *See Herbert H. Landy Insurance Agency, Inc. v. Navigators Management Co.*, 2014 WL 3908179, at *6 (D. Mass. Aug. 8, 2014).

EXPRESS SCRIPTS' MOTION TO TRANSFER CZ TENNESSEE'S CLAIMS

1   therefore follow the ordinary rule laid down in *Atlantic Marine* and enforce the forum-selection

2   clause by transferring CZ Tennessee's claims to the District of Delaware.

3       **A.       The forum-selection clause is valid and binding**

4       "[F]orum selection clauses are presumptively valid" and "should be honored 'absent some

5   compelling and countervailing reason.'"   *Murphy v. Schneider National, Inc.*, 362 F.3d 1133,

6   1140 (9th Cir. 2004); *accord Lewis v. Liberty Mutual Insurance Co.*, 2018 WL 2412181, at *2

7   (N.D. Cal. May 29, 2018).   No such reason exists here.

8       Multiple federal district court opinions have ruled that forum-selection clauses in Express

9   Scripts' pharmacy provider agreements are valid and binding.   In *Paduano v. Express Scripts,*

10  *Inc.*, Express Scripts terminated a pharmacy provider agreement with HM Compounding Services,

11  LLC, which then sued Express Scripts in an attempt to reinstate the agreement.   55 F. Supp. 3d

12  400, 406–07, 409, 433 (E.D.N.Y. Oct. 27, 2014).   That agreement contained a forum-selection

13  clause similar to the one in this case.   *Id.* at 431.   The district court found the clause valid and

14  binding, so it transferred the case under § 1404(a) to the designated forum.   *Id.* at 431–35.

15  Likewise, in *Prime Aid Pharmacy Corp. v. Express Scripts, Inc.*, a district court enforced a similar

16  forum-selection clause in a pharmacy provider agreement and transferred to the designated forum

17  a terminated pharmacy's lawsuit against Express Scripts.   2017 WL 1086175, at *1–5 (D.N.J.

18  Mar. 21, 2017).   And just a few weeks ago, the court in *Diabetic Care Rx, LLC v. Express Scripts,*

19  *Inc.*, also ruled that an Express Scripts provider agreement forum-selection clause is valid and

20  binding, and it transferred a terminated pharmacy's lawsuit against Express Scripts to the

21  designated forum.   2018 U.S. Dist. Lexis 111100 (S.D. Fla. June 29, 2018), *affirmed and*

22  *adopted*, 2018 U.S. Dist. Lexis 120906 (S.D. Fla. July 17, 2018).   The transfer issues in

23  *Paduano*, *Prime Aid*, and *Diabetic Care* are indistinguishable from this case and show that the

24  forum-selection clause at issue is valid and binding.

25      The forum-selection clause is not the product of fraud, does not contravene public policy,

26  and is not invalid for any other reason.   *Atlantic Marine* also forecloses any argument that

27  litigating in the District of Delaware would be unreasonably inconvenient or burdensome.

28  "When parties agree to a forum-selection clause, they waive the right to challenge the preselected

1    forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of

2    the litigation." 134 S. Ct. at 582.   These concerns simply "may not be considered in analyzing

3    whether a forum selection clause is reasonable." *Cream v. Northern Leasing Systems, Inc.*, 2015

4    WL 4606463, at *7 (N.D. Cal. July 31, 2015) (collecting cases).

5             The Complaint does allege that the Provider Agreement is "a non-negotiable contract with

6    terms unilaterally determined by [Express Scripts]," Complaint ¶ 24, which Express Scripts

7    disputes.   Even if the allegations were correct, however, the Supreme Court has expressly held

8    that forum-selection clauses are enforceable even when they are part of a "form contract" that is

9    "not the subject of bargaining." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–95

10   (1991).   Many other decisions follow suit.   *E.g.*, *Murphy*, 362 F.3d at 1141 ("a differential in

11   power or education on a non-negotiated contract will not vitiate a forum selection clause"); *Lentini*

12   *v. Kelly Services, Inc.*, 2017 WL 4354910, at *2 (N.D. Cal. Oct. 2, 2017) (enforcing forum-

13   selection clause presented "in a take it or leave it package of documents that required only a

14   mouse click for consent"); *Amberger v. Legacy Capital Corp.*, 2017 WL 264078, at *3 (N.D. Cal.

15   Jan. 20, 2017) ("Even if plaintiff's contentions were true, defendants' purportedly unequal

16   bargaining power and the fact that plaintiff did not negotiate the terms of the forum selection

17   clause do not alone render the clause unreasonable.") (brackets and citation omitted); *East Bay*

18   *Women's Health, Inc. v. gloStream, Inc.*, 2014 WL 1618382, at *4 (N.D. Cal. Apr. 21, 2014) (same

19   for contract where "plaintiffs were told to 'take it or leave it' without the opportunity for

20   meaningful negotiation").   Indeed, Express Scripts' *entire* pharmacy provider agreement—which

21   necessarily includes the forum-selection clause—has been held valid and enforceable

22   notwithstanding its alleged "take-it-or-leave-it nature." *Park Irmat Drug Corp. v. Express Scripts*

23   *Holding Co.*, --- F. Supp. 3d ----, 2018 WL 1033188, at *13–14 (E.D. Mo. Feb. 21, 2018).

24           The forum-selection clause at issue here is therefore indisputably valid and binding.

25           **B.        This dispute falls within the scope of the forum-selection clause**

26           The "scope . . . of a forum selection clause is a matter of contract." *Polar Shipping Ltd. v.*

27   *Oriental Shipping Corp.*, 680 F.2d 627, 632 (9th Cir. 1982); *accord Moretti v. Hertz Corp.*, 2014

28   WL 1410432, at *3 (N.D. Cal. Apr. 11, 2014).   Here, the forum-selection clause covers "***[a]ll***

1   *litigation . . . arising out of or related in any way* to the interpretation or performance of the

2   Agreement."   Moore Decl. Ex. B § 7.12 (emphasis added).   As the *Prime Aid* court recognized,

3   this language "is clear and unambiguous; the clause applies to all litigation that is related in any

4   way to the interpretation or performance of the contract."   2017 WL 1086175, at *3.

5        CZ Tennessee's claims in this lawsuit fall within the scope of this forum-selection clause.

6   The Complaint itself states that this is "an action for unfair competition and other claims *based on*

7   *[Express Scripts]'s unlawful termination of Plaintiffs from [Express Scripts]'s network*."

8   Complaint ¶ 1 (emphasis added).   Moreover, CZ Tennessee requests a temporary restraining

9   order and injunction "*preventing [Express Scripts] from terminating th[e] agreement*" based on

10  its claim under Tennessee's AWP statute.   Motion for Temporary Restraining Order, ECF 27 at 2

11  (emphasis added).   Claims based on Express Scripts' termination of CZ Tennessee pursuant to the

12  Provider Agreement and for an injunction preventing the termination of the Provider Agreement

13  obviously arise out of, and are related to, that Provider Agreement.   Accordingly, the forum-

14  selection clause covers CZ Tennessee's claims in this case.

15       Forum-selection clauses similar to the one at issue here have already been held to

16  encompass similar claims by other pharmacies that Express Scripts' termination of a pharmacy

17  provider agreement violated various AWP laws.   See *Diabetic Care*, 2018 U.S. Dist. Lexis

18  111100, at *7–8 & n.2 (claimed violation of various federal and state AWP laws is "governed by

19  the forum-selection clause"); *Prime Aid*, 2017 WL 1086175, at *2, *4 (same for claimed violation

20  of New Jersey's AWP law).   And beyond the challenge to the termination itself, many courts have

21  held that claims challenging public statements about breaches or termination of a contract

22  containing a forum-selection clause are sufficiently intertwined with the contract to fall within that

23  forum-selection clause.   *See Siren, Inc. v. Firstline Security, Inc.*, 2006 WL 3257440, at *5 (D.

24  Ariz. May 17, 2006) (defamation and trade-libel claims over statements about contract breaches

25  are covered by contract's forum-selection clause); *Brennen v. Phyto-Riker Pharmaceuticals, Ltd.*,

26  2002 WL 1349742, at *4–5 (S.D.N.Y. June 20, 2002) (same for defamation claim).[5]

27  ───────────────

28       [5]  Even if this Court determines that some of CZ Tennessee's claims fall outside the forum-
    selection clause, it should nonetheless transfer all of them to the District of Delaware under the

**C.      The public-interest factors do not overwhelmingly disfavor transfer.**

The public has a strong interest in courts enforcing contracts—including forum-selection clauses.   Thus, where there is a valid and applicable forum-selection clause, the Supreme Court instructs courts to enforce the forum-selection clause unless the party acting in violation of the clause "show[s] that public-interest factors overwhelmingly disfavor a transfer." *Atlantic Marine*, 134 S. Ct. at 583.   Public-interest factors include "the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 581 n.6 (citation omitted).   "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 582.

Far from weighing against transfer, the public-interest factors support it.   First, courts in the Northern District of California are more congested than courts in the District of Delaware. As of March 31, 2018, there were 9,564 actions pending in the Northern District of California, or 683 per judge; whereas in the District of Delaware there were only 2,161 pending actions, or 540 per judge.   *See* ADMIN. OFF. OF THE U.S. COURTS, Federal Court Management Statistics: U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (March 31, 2018), https://tinyurl.com/ybn3ydck.      Transfer   will   therefore   alleviate   some   of   the disproportionate burden on this District to the benefit of the public.

Second, this is a dispute about the performance and termination of a contract between two companies incorporated in Delaware, CZ Tennessee and Express Scripts, *see* Complaint ¶¶ 14, 16, so the "local interest" is in having this case be adjudicated in Delaware.   California courts,

---

"interest of justice" provision of § 1404(a), as transferring some claims while retaining others "would neither promote justice nor be an efficient use of judicial, or the parties', resources." *Diabetic Care*, 2018 U.S. Dist. Lexis 111100, at *13; *accord TK Products, LLC v. Buckley*, 2016 WL 7013470, at *7 (D. Or. Nov. 29, 2016); *see also McCusker v. hibu PLC*, 2015 WL 1600066, at *5 (E.D. Pa. Apr. 8, 2015) (transferring defamation claim "related to what was said when Plaintiff was terminated" even though it fell outside the governing forum-selection clause because transfer of all claims served the interests of justice.).

1   moreover, have no local interest in the rights of CZ Tennessee, a Delaware company that operates

2   primarily in Tennessee.

3         Third, courts in California and Delaware are equally capable of applying the federal law

4   that governs some of CZ Tennessee's claims.   *See* Complaint ¶¶ 59–62, 76 (alleging violations of

5   the Lanham Act, 15 U.S.C. § 1125(a)(1), and the AWP provisions of the Medicare Part D Act, 42

6   U.S.C. § 1395w-104(b)(1)(A), and the Social Security Act, 42 U.S.C. § 1396a).   CZ Tennessee's

7   state claims are no more at home in California than they will be in Delaware.[6]   In any event, a

8   Delaware court is perfectly able to apply Tennessee (or California) law.   *See Cooper v. Slice*

9   *Technologies, Inc.*, 2017 WL 4071373, at *5 (N.D. Cal. Sept. 14, 2017) ("[T]he district court in

10   New York is capable of applying California law.").   Moreover, the Provider Agreement itself is

11   governed by Delaware law.   Moore Decl. Ex. B § 7.8.   A Delaware court will therefore likely be

12   more at home with the applicable law than a California court.   Finally, the public interest will be

13   served by preventing CZ Tennessee's brazen forum shopping and by sending CZ Tennessee's

14   claims to Delaware, where they belong.

15         Put together, these public-interest factors tip in favor of transfer.   They certainly do not

16   rise to the level of "extraordinary circumstances" that "overwhelmingly disfavor a transfer," so,

17   under *Atlantic Marine*, this Court should enforce the forum-selection clause and transfer CZ

18   Tennessee's claims to Delaware.

19   **Conclusion**

20         For the forgoing reasons, Express Scripts respectfully requests that this Court transfer CZ

21   Tennessee's claims to the District of Delaware under 28 U.S.C. § 1404(a).

22

23

24

25         [6]   The Complaint does not always distinguish between CZ California and CZ Tennessee.

26   To the extent that CZ Tennessee purports to raise any claims under California state law, it is an
    open question whether, under conflict-of-law principles, it would govern these claims, and a

27   "party challenging enforcement of a forum selection clause may not base its challenge on choice
    of law analysis."   *Besag v. Custom Decorators, Inc.*, 2009 WL 330934, at *4 (N.D. Cal. Feb. 10,

28   2009); *accord Lentini*, 2017 WL 4354910, at *4.

1    DATED: July 31, 2018                    Respectfully submitted,

2                                            QUINN EMANUEL URQUHART &
                                             SULLIVAN, LLP
3

4
                                     By  /s/ Ethan Glass
5                                        Ethan Glass (Bar No. 216159)
                                         ethanglass@quinnemanuel.com
6                                        Michael Lyle (*pro hac vice* pending)
                                         michaellyle@quinnemanuel.com
7                                        Eric Lyttle (*pro hac vice* pending)
                                         ericlyttle@quinnemanuel.com
8                                        1300 I St. NW, Suite 900
                                         Washington, District of Columbia 20005
9                                        Telephone:     (202) 538-8000
                                         Facsimile:     (202) 538-8100
10
                                         Margret M. Caruso (Bar No. 243473)
11                                       margretcaruso@quinnemanuel.com
                                         555 Twin Dolphin Drive, 5th Floor
12                                       Redwood Shores, California 94065
                                         Telephone:     (650) 801-5000
13                                       Facsimile:     (650) 801-5100

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXPRESS SCRIPTS' MOTION TO TRANSFER CZ TENNESSEE'S CLAIMS