William A. Isaacson (DC SBN 414788) (*Pro Hac Vice*)
wisaacson@bsfllp.com
William C. Jackson (DC SBN 475200) (*Pro Hac Vice*)
wjackson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

Meredith R. Dearborn (SBN 268312)
mdearborn@bsfllp.com
BOIES SCHILLER FLEXNER LLP
425 Tasso Street, Suite 205
Palo Alto, CA 94307
Telephone: (650) 445-6400
Facsimile: (650) 329-8507

*Attorneys for CZ Services, Inc. and CareZone Pharmacy LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CZ SERVICES, INC., d/b/a CAREZONE PHARMACY and CAREZONE PHARMACY LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>EXPRESS SCRIPTS HOLDING COMPANY and EXPRESS SCRIPTS, INC.<br><br>Defendants. | Case No. 3:18-CV-04217-JD<br><br>**PLAINTIFFS CZ SERVICES, INC. AND CAREZONE PHARMACY LLC's OPPOSITIONS TO EXPRESS SCRIPT'S MOTIONS TO TRANSFER**<br><br>Date:  August 30, 2018<br>Time: 10:00 am<br>Place: Courtroom 11<br>Judge: Judge James Donato |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 3

    A. CZ Services' Innovative Business Model ...................................................................... 3

    B. ESI's Efforts to Eliminate Mail-Order Pharmacies and Shifting Justifications for Terminating its Agreement with CZ Services ................................................................ 4

    C. The Missouri Action and the Forum Selection Clause .................................................. 5

    D. ESI's Publication of False and Defamatory Statements About CZ Services ................. 6

    E. The Instant California Action ......................................................................................... 7

ARGUMENT .............................................................................................................................. 7

    A. CZ Services Has Not Admitted Venue in Missouri Is Proper ........................................ 7

    B. CZ Services' Claims Are Outside the Scope of the Forum Selection Clause ................ 9

    C. The Circumstances of This Case Do Not Warrant Transfer ........................................ 13

CONCLUSION ........................................................................................................................ 14

**TABLE OF AUTHORITIES**

**CASES**

*Atlantic Marine Construction Company, Inc. v. U.S. Dist. Court for W. Dist. of Texas*,
   571 U.S. 49 (2013) .................................................................................................................. 14

*Boston Telecomms. Group, Inc. v. Wood*,
   588 F.3d 1201 (9th Cir. 2009) ................................................................................................. 14

*Brennen v. Phyto-Riker Pharmaceuticals, Ltd.*,
   No. 01 CIV 11815 (DLC), 2002 WL 1349742 (S.D.N.Y. June 20, 2002) ............................. 11

*Burgess v. HP, Inc.*,
   No. 16-CV-04784-LHK, 2017 WL 467845 (N.D. Cal. Feb. 3, 2017) .................................... 14

*Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*,
   816 F.3d 1208 (9th Cir. 2016) ................................................................................................... 8

*Cedars-Sinai Medical Center v. Global Excel Mgmt., Inc.*,
   No. CV 09-3627 PSG AJWX, 2009 WL 7322253 (C.D. Cal. Dec. 30, 2009) ......................... 9

*Connex R.R. LLC v. AXA Corp. Sols. Assurance*,
   209 F. Supp. 3d 1147 (C.D. Cal. 2016) ................................................................................... 14

*Connex R.R. LLC v. AXA Corp. Sols. Assurance*,
   No. 2:16-CV-02368-ODW (RAO)x, 2017 WL 3446633 (C.D. Cal. Jan. 13, 2017) .............. 14

*Decker Coal Co. v. Commonwealth Edison Co.*,
   805 F.2d 834 (9th Cir. 1986) ................................................................................................... 14

*Diabetic Care Rx, LLC v. Express Scripts*,
   No. 18-61331 (S.D. Fla. June 29, 2018) .................................................................................. 13

*E. & J. Gallo Winery v. Encana Energy Services, Inc.*,
   388 F. Supp. 2d 1148 (E.D. Cal. 2005) ..................................................................................... 9

*Edwards v. Arthur Andersen LLP*,
   44 Cal. 4th 937 (Cal. 2008) ..................................................................................................... 14

*Excentus Corp. v. Giant Eagle, Inc.*,
   No. CIV.A. 13-178, 2014 WL 923520 (W.D. Pa. Mar. 10, 2014) ......................................... 13

*Hamilton v. State Farm Fire & Cas. Co.*,
   270 F.3d 778 (9th Cir. 2001) ..................................................................................................... 8

*Hardy v. Advocare International L.P.*,
   No. 2:09-CV-01307-JHN-PJWx, 2010 WL 11509179 (C.D. Cal. Dec. 10, 2010) ................ 10

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
   858 F.2d 509 (9th Cir. 1988) .......................................................................................... 9

*Medina v. Oanda Corporation*,
   No. 5:16-CV-02170-EJD, 2017 WL 1159572 (N.D. Cal. Mar. 29, 2017) ............................... 9

*Net2Phone, Inc. v. Superior Court*,
   109 Cal. App. 4th 583 (Cal. Ct. App. 2003) ............................................................... 14

*Paduano v. Express Scripts, Inc.*,
   55 F. Supp. 3d 400 (E.D.N.Y. 2014) ......................................................................... 13

*Perry v. AT&T Mobility LLC*,
   No. C 11-01488 SI, 2011 WL 4080625 (N.D. Cal. Sept. 12, 2011) .......................................... 9

*Phillips v. Audio Active Ltd.*,
   4484 F.3d 378 (2d Cir. 2007) ................................................................................. 13

*Polar Shipping, Ltd. v. Oriental Shipping Corporation*,
   680 F.2d 627 (9th Cir. 1982) ................................................................................... 9

*Prime Aid Pharmacy Corp. v. Express Scripts, Inc.*,
   No. 16-2182, 2017 WL 1086175 (D.N.J. Mar. 21, 2017) ........................................ 12

*Siren, Inc. v. Firstline Security, Inc.*,
   No. 06-1109 PHX RCB, 2006 WL 3257440 (D. Ariz., May 17, 2006) ................................. 10

*Trendsettah USA, Inc. v. Swisher International Inc.*,
   No. SACV14-01664-JVS (DFM)x, 2015 WL 12697653 (C.D. Cal. Feb. 3, 2015) ............... 10

**STATUTES, RULES & REGULATIONS**

28 U.S.C. § 1404(a) ........................................................................................................ 15

Cal. Bus. & Prof. Code § 16600 ................................................................................... 12

## PRELIMINARY STATEMENT

CareZone Pharmacy LLC ("CareZone Pharmacy") and CZ Services, Inc. ("CZ Services") hereby respond to Express Scripts, Inc. and Express Scripts Holding Co. (collectively, "ESI")'s two motions to transfer. ECF Nos. 17, 36.[1]

In an attempt to transfer this case out of California, ESI ignores the precise contractual language it inserted in its own Pharmacy Provider Agreement ("Agreement"). The forum selection clauses that ESI drafted and imposed on CZ Services and its wholly owned subsidiary, CareZone Pharmacy, have the same narrow scope. They govern only litigation related to "the *interpretation or performance* of the Agreement." ESI Mot. to Transfer CZ Services, Inc., ECF No. 17 ("ESI Mot."), Ex. 2 (Agreement) § 7.12 (emphasis added); *see also* Barnes Decl., Ex. G § 7.12. ECF No. 27-9; Moore Decl., Ex. B § 7.12, ECF No. 35-3 (CareZone Pharmacy Agreements). The facts and claims in this action do not involve either. All of CZ Services' claims thus fall outside the scope of the applicable forum selection clause. Accordingly, both of ESI's motions to transfer, which are based on essentially identical arguments, should be rejected.[2]

This action is based on the numerous false statements ESI has published about CZ Services' pharmacies. ESI has publicly accused CZ Services' pharmacies of acting illegally and violating applicable pharmacy laws. As ESI is well aware, this is false. ESI made these statements after CZ Services had repeatedly informed ESI that it was licensed in all 50 states and the District of Columbia and had provided supporting documentation. Based on these false public accusations, CZ Services sued ESI for violations of the Lanham Act, defamation, trade

---

[1] In light of the fact that CZ Services and CareZone Pharmacy are responding to ESI's Motions to Transfer, ESI's Motion to Shorten Time, ECF 38, is now moot.

[2] On July 23, 2018, ESI filed a motion seeking to transfer the action to Missouri pursuant to the forum selection clause in CZ Services' Agreement. *See* ESI Mot. On July 31, 2018, ESI moved to transfer CareZone Pharmacy's claims to Delaware pursuant to a different Agreement it asserts applies to that entity. *See* Mot. to Transfer CareZone Pharmacy, ECF No. 36 ("Mot. to Transfer CZ Pharmacy"). Assuming *arguendo* that this other Agreement applies to CareZone Pharmacy, the clause is otherwise identical, and ESI's arguments as to the scope of the forum selection clause do not materially differ from ESI's original motion to transfer CZ Services' claims to Missouri. CZ Services' arguments herein regarding the Missouri forum selection clause therefore also apply to the Delaware clause.

libel, interference with prospective business relations, and unfair competition. Because ESI believes that CZ Services is a competitive threat to ESI's captive mail order pharmacy business, ESI also terminated CZ Services from its network <u>without cause</u>, which violates federal and state "Any Willing Provider" ("AWP") laws. Having terminated CZ Services "without cause," any subsequent litigation by definition does not involve the "interpretation or performance" of the Agreement. Moreover, neither CZ Services' nor CareZone Pharmacy's claims require this Court to "interpret" or asses the parties' "performance," regardless of any reason ESI has given for termination. This entire action thus falls outside the scope of the forum selection clause, and none of the cases on which ESI relies suggests otherwise.

As pertains specifically to the motion to transfer CZ Services' claims to Missouri, ESI's charge of forum-shopping is similarly based on a total disregard for the facts of this case. ESI appears to be arguing that there is no difference between this action and the action CZ Services filed in Missouri against ESI earlier this year. However, the Missouri suit sought to prevent termination of the Agreement based on various violations of state and federal antitrust laws and related unfair competition theories. The Missouri complaint does not mention or reference a single false statement ESI made about CZ Services, nor does it contain any AWP claims. Because the facts and claims at issue in the Missouri complaint appeared to fall within the scope of the forum selection clause, CZ Services brought that action in Missouri. Doing so is not a judicial admission that all litigation against ESI must be brought in ESI's preferred forum, and it is not inconsistent for CZ Services to bring this action based on different facts and claims—a suit not involving the interpretation or performance of the Agreement—in California.

While ESI may wish that all litigation between itself and CZ Services take place in either Missouri or Delaware, the forum selection clauses do not require it. ESI is bound by its choice to draft a narrow clause, and it cannot now be allowed to rewrite the clause retroactively to broaden the scope and require transfer of this action. Moreover, judicial efficiency would not be served by splitting this case into two halves and forcing them to be tried in two different forums (Missouri and Delaware). Accordingly, CZ Services respectfully requests that this Court deny ESI's motions and keep this action in the chosen forum: the Northern District of California.

**STATEMENT OF FACTS**

A.     **CZ Services' Innovative Business Model**

CZ Services operates a retail walk-in pharmacy in Richmond, California; CareZone Pharmacy operates a retail walk-in pharmacy in Nashville, Tennessee. Amended Complaint ¶¶ 13–14, ECF No. 24 ("Am. Compl."). Both pharmacies are permitted to fill prescriptions in all 50 states and the District of Columbia. *Id.* & 14 n.2. Both pharmacies have filled prescriptions pursuant to agreements with ESI. *See id.* ¶¶ 24–25.

Most of the customers who use the two pharmacies suffer from multiple illnesses and require numerous medications. Am. Compl. ¶ 52; *id.* at Ex. C at 1, ECF No. 24-3; *see also* Barnes Decl. ¶ 5, ECF No. 27-2. CZ Services has developed an innovative business model, implemented in both pharmacies, to help these vulnerable customers manage their medications by partnering with CareZone, Inc. ("CareZone"), an entirely separate corporation. Am. Compl. ¶ 20; Schwartz Decl. ¶¶ 7–11, ECF No. 27-1. CareZone operates the CareZone App, a free smartphone application that helps its customers organize, store, and manage information related to their medical care. Schwartz Decl. ¶ 9. CareZone also offers pharmacy assistance services to help its customers fill and refill their prescriptions. *Id.* ¶ 10. If a customer is unable to or does not wish to pick up his or her own prescriptions, he or she can designate a health management service like CareZone as its agent to obtain the medications on his or her behalf. *Id.* ¶¶ 11–12; Am. Compl. ¶ 29. The agent goes to the chosen pharmacy, picks up the medication, and arranges for the medication to be delivered to the patient for free. Am. Compl. ¶ 20; Schwartz Decl. ¶ 10. Having an agent pick up a prescription is a common and legal practice occurring at pharmacies throughout the country on a daily basis. *See* Am. Compl., Ex. D at 2, ECF No. 24-4. CareZone has partnered with CZ Services' pharmacies to fill these prescriptions. Schwartz Decl. ¶ 11. However, CZ Services' pharmacies do not deliver any of the medications themselves; all CZ Services' customers must either come in themselves or designate an agent to come in to pick up the medication on their behalf. *See* Am. Compl. ¶ 19. As a result, all of CZ Services'

prescriptions are dispensed in California.[3]

Through its partnership with CareZone, CZ Services syncs a patient's medications so they are on the same refill cycle, and then presorts and packages all of the patient's medications into pill packets by day and time rather than providing medications in separate vials. Barnes Decl. ¶ 11. CZ Services then shares the patient's medication schedule with CareZone so that it is reflected in the CareZone App, which reminds patients when to take the medications and tracks compliance. *Id.* Without the valuable services CZ Services and CareZone Pharmacy provide on their own and through their partnership with CareZone, the health and welfare of these vulnerable patients is placed in jeopardy. Am. Compl. ¶ 54.

### B. ESI's Efforts to Eliminate Mail-Order Pharmacies and Shifting Justifications for Terminating its Agreement with CZ Services

ESI is a pharmacy benefit manager ("PBM") which also operates the largest mail-order pharmacy service in the United States. Am. Compl. ¶¶ 21–22. In its role as a PBM, ESI acts as an agent for insurance carriers to provide a bundle of network services to insurance carriers through which all sales of prescription drugs must be made to consumers whose drug benefits are managed by ESI. *Id.* ¶ 23. In order to process prescriptions on behalf of an insurance company that uses ESI's network, ESI requires pharmacies to sign its non-negotiable Agreement, which incorporates by reference an extensive Network Provider Manual. *Id.* ¶ 24. The Agreement contains both a forum selection clause and a choice-of-law provision, designating Missouri (or, according to ESI, Delaware as to CareZone Pharmacy) for both provisions. *Id.* ¶ 25; Moore Decl., Ex. B §§ 7.8, 7.12. CZ Services initially signed ESI's form Agreement as to its Richmond, California retail location on June 11, 2015 and CareZone Pharmacy signed the Agreement on July 7, 2017. Am. Compl. ¶ 25.

ESI's Agreement also expressly prohibits pharmacies from making sales to customers by "mail order." *Id.* ¶ 24. ESI has reiterated to all provider pharmacies that they "are prohibited from acting as mail-order pharmacies." *Id.* ¶ 27 (internal citation omitted). It has admitted to

---

[3] Likewise, all of CareZone Pharmacy's prescriptions are dispensed in Tennessee, either directly to the patient or to the authorized agent of the patient. Barnes Decl. ¶ 7.

being "a mail order pharmacy that doesn't accept another mail order pharmacy service." *Id.* (internal citation omitted). ESI also launched a campaign to identify and stop provider pharmacies it believes may be competing with ESI's mail-order business. *See id.* Other pharmacies have been terminated for engaging in activities that ESI characterizes as "mail-order." *Id.*

As described above, CZ Services does not mail any prescriptions to customers. *Id.* ¶ 29; Barnes Decl. ¶ 7. All prescriptions must be picked up in person, either by the customer or, if the customer is unable or unwilling to do so, by the customer's designated agent. Barnes Decl. ¶ 8; Am. Compl. ¶¶ 13, 29. Nevertheless, on April 2, 2018, ESI notified CZ Services of termination of the Agreement, both for cause and without cause. Am. Compl. ¶ 30; ESI Mot., Ex. 9, ECF No. 17-10. ESI claimed to be entitled to terminate the Agreement immediately for cause because CZ Services was a mail-order pharmacy, among other reasons. *See* ESI Mot., Ex. 9 at 2. However, ESI did not terminate the Agreement immediately. Instead it also provided 90 days written notice that it was terminating without cause. *Id.* at 8. Pursuant to that "without cause" provision, ESI set termination of the Agreement effective July 13, 2018. *Id.* ESI also notified CareZone Pharmacy that its Agreement would terminate on the same date, purportedly for cause but providing 86-day' notice. Barnes Decl. ¶ 21; Moore Decl., Ex. 14, ECF No. 27-26 (letter to CareZone Pharmacy).

### C.   The Missouri Action and the Forum Selection Clause

On June 20, 2018, prior to the effective date of the termination, CZ Services filed suit against ESI. ESI Mot., Ex. 13, ECF No. 17-14 (Missouri complaint). CZ Services sought to prevent termination of the Agreement, alleging that ESI engaged in anticompetitive and unfair conduct by tying access to its network to its mail-order prescription services through the Agreement and terminating the Agreement without a legitimate business justification. *Id.* ¶¶ 47, 49, 68–69, Prayer for Relief. In that action, CZ Services brought federal and state law antitrust claims and related unfair competition claims. *See generally id.* As CZ Services alleged in that complaint, "ESI has engaged in contracts, agreements, and/or arrangements whereby ESI has limited the sale of a distinct 'tying' product—namely, prescription delivery services—to the

5

provision of PBM network services provided to insurance plans." *Id.* ¶ 79. Such an allegation could be seen to involve the "interpretation" and/or "performance" of the Agreement. Considering that the dispute involved the tying claim and whether the termination was proper under the terms of the Agreement, it appeared to fall within the scope of the Agreement's forum selection clause, which requires that all litigation arising out of or relating to "the interpretation or performance of the Agreement" be litigated in courts in Missouri. Am. Compl. ¶ 25 (quoting forum selection clause). CZ Services voluntarily dismissed that action without prejudice on July 13, 2018, the day the Agreement terminated.

### D. ESI's Publication of False and Defamatory Statements About CZ Services

On June 19, 2018, ESI posted on its website an "industry update" titled "The Facts About Care Zone." Am. Compl. ¶ 32. ESI made a number of false statements that CZ Services (which ESI referred to as "CareZone") was operating illegally, including that "the dispensing pharmacy [CZ Services,] was not licensed in violation of state law" and that CZ Services "is violating state pharmacy laws." *Id.* & Ex. F, ECF No. 24-6. However, CZ Services had already confirmed to ESI more than a year prior that it was licensed in all 50 states and the District of Columbia and had provided copies of the specific licenses ESI requested. Am. Compl. ¶ 33. State pharmacy licenses are also a matter of public record. *Id.* In addition, as a result of its position in the industry, ESI is well aware that state Boards of Pharmacy, who are tasked with determining legal compliance, routinely and consistently monitor and audit pharmacies in their states. No state Board of Pharmacy has taken the position that CZ Services' operations and business violate that states' pharmacy laws.[4] ESI's public statements were nothing more than a smear campaign to punish and eliminate a nascent competitor.

Nevertheless, ESI promoted its "industry update" on its official Twitter account, @ExpressScripts, in a tweet indicating CZ Services did not deliver quality care or affordable access and was not operating legally. Am. Compl. ¶ 34 & Ex. G, ECF No. 24-7. ESI then modified its post to repeat and expand on the false statements. *Id.* ¶ 37. ESI also spoke to

---

[4] For example, CareZone Pharmacy is regularly audited by the Tennessee Board of Pharmacy, which has never indicated the pharmacy is improperly licensed. *See* Barnes Decl. ¶ 10.

reporters, including from major media companies, and reiterated its false statements that CZ Services was not complying with relevant pharmacy laws. *Id.* ¶ 37.

### E. The Instant California Action

CZ Services filed the instant action on July 13, 2018 and has brought claims for false representations of fact in violation of the Lanham Act, trade libel, intentional and negligent interference with prospective economic relations, defamation, and unfair competition.[5] *See generally* Am. Compl. Unlike the Missouri complaint, neither the factual allegations nor the relief sought in the instant action depend on the interpretation or performance of the Agreement. *See id.* ¶¶ 1–8. The key factual allegations underlying CZ Services' and CareZone Pharmacy's claims focus on and quote from the numerous false statements ESI has made about them. *Id.* ¶¶ 32–44. The two pharmacies are seeking relief and damages for the injury to their business and reputation from ESI's false statements. *See id.*, Prayer for Relief. CZ Services and CareZone Pharmacy are also seeking, under federal and state AWP laws, injunctive relief to allow them to participate in ESI's network on the same terms and conditions as offered to other providers. *Id.* Again, those claims do not require the Court to "interpret[]" the Agreement or assess the parties' "performance" under the Agreement.

Given that the current dispute does not involve the interpretation or performance of the Agreement, CZ Services and CareZone Pharmacy filed suit where the injuries inflicted by ESI's false and defamatory statements were primarily suffered: CZ Services' home forum in the Northern District of California.

## ARGUMENT

### A. CZ Services Has Not Admitted Venue in Missouri Is Proper

Contrary to ESI's position in its original motion to transfer, ESI Mot. at 9, CZ Services' venue allegations in the Missouri action in no way constitute an admission that the forum selection clause requires that this action also be brought in Missouri. In arguing otherwise, ESI ignores that this is a different action with different facts and different claims.

---

[5] CareZone Pharmacy was added to the Amended Complaint, along with a claim for a violation of Tennessee's "Any Willing Provider" Statute. Am. Compl. ¶¶ 106–110.

First, the doctrine of binding judicial admissions does not apply here. It is well-established that that doctrine applies only to statements made in the same case. *See Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1213 (9th Cir. 2016) ("Although Caffe Vergnano presents the issue as one of binding judicial admission, that doctrine is inapplicable because the alleged admission was made in a separate case from the present action."). Since the alleged "admission" CZ Services made was in a separate case, it simply does not bind CZ Services in this action.

Second, ESI cannot rely on the Missouri venue allegations to judicially estop CZ Services from challenging the forum selection clause. Judicial estoppel applies only where a party takes a "clearly inconsistent" position. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). However, the Missouri allegations are not "clearly inconsistent" with the CZ Services' position here. In the Missouri action, CZ Services brought antitrust and unfair competition claims based on the terms and application of the Agreement. *See* ESI Mot., Ex. 13. The claims in this action center on ESI's false and defamatory statements, as well as violations of state and federal AWP laws. It is not "clearly inconsistent" for CZ Services to assert that the Missouri claims fell within the scope of the forum selection clause and the facts and claims in the instant case do not.

Third, the Ninth Circuit "has restricted the application of judicial estoppel to cases where the court relied on, or 'accepted,' the party's previous inconsistent position." *Hamilton*, 270 F.3d at 783. Even assuming that the Missouri venue allegations were inconsistent with CZ Services' position here—which they are not—the district court in Missouri did not rely on or accept those allegations because CZ Services voluntarily dismissed the case without prejudice before ESI even appeared in the case, and thus before the court or ESI took any action in reliance on CZ Services' allegation. For that same reason, ESI cannot establish the third judicial estoppel consideration, which involves unfair detriment to the opposing party and unfair advantage to the party to be estopped. *See id.*

**B.     CZ Services' Claims Are Outside the Scope of the Forum Selection Clause**

As ESI's motions recognize, a dispute over the scope of a particular forum selection clause is resolved by applying contract interpretation principles to the language of the clause and ascertaining the intent of the parties. *Medina v. Oanda Corp.*, No. 5:16-CV-02170-EJD, 2017 WL 1159572, at *7 (N.D. Cal. Mar. 29, 2017) (citing, *inter alia*, *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988) and *Polar Shipping, Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 632 (9th Cir. 1982)). Whether a claim falls within the scope of a given forum selection clause depends on the intersection of the language of the forum selection clause and the factual allegations underlying the claims. *See Perry v. AT & T Mobility LLC*, No. C 11-01488 SI, 2011 WL 4080625, at *4 (N.D. Cal. Sept. 12, 2011) ("The scope of the claims governed by a forum selection clause depends [on] the language used in the clause."); *E. & J. Gallo Winery v. Encana Energy Servs., Inc.*, 388 F. Supp. 2d 1148, 1162–63 (E.D. Cal. 2005) (finding that factual allegations did not bear a significant relationship to the agreement containing the forum selection clause).

In summarily concluding that CZ Services' and CareZone Pharmacy's claims based on false statements are governed by the applicable forum selection clauses, ESI fails to engage with either the full language of the clause or the facts of this case. In both of its motions, ESI bolded and italicized the language: "arising out of or relating in any way to[.]"  *See* ESI Mot. at 11 (quoting the Agreement § 7.12, ESI Mot., Ex. 2); Mot. to Transfer CZ Pharmacy at 7-8 (quoting Moore Decl., Ex. B § 7.12). However, the clause cannot be applied without knowing what a claim must relate to. ESI glosses over the key limiting portion of the clause: that the litigation must relate to "***the interpretation or performance of the Agreement***.  Agreement § 7.12, ESI Mot., Ex. 2. Clauses that require a relationship to the "interpretation or performance" of an agreement are narrowly construed, while clauses generally relating to the agreement itself are broader. *See Cedars-Sinai Med. Ctr. v. Glob. Excel Mgmt., Inc.*, No. CV 09-3627 PSG AJWX, 2009 WL 7322253, at *5 (C.D. Cal. Dec. 30, 2009). The "interpretation or performance" requirement in the forum selection clauses here thus constitutes a significant limitation on the scope of the clause, which ESI wholly ignores.

By focusing only on the first part of the clause, ESI fails to analyze whether the false statements giving rise to CZ Services' and CareZone Pharmacy's claims do, in fact, relate to the interpretation or performance of the Agreement. Even though the false statements form the heart of the claims here, the only reference to them in ESI's entire motion is a passing statement that ESI put up a post that "corrected the public record." ESI Mot. at 6. In particular, the Amended Complaint alleges that ESI defamed CZ Services when ESI stated CZ Services was not licensed, was violating state pharmacy laws, and was not delivering quality care or affordable access. Am. Compl. ¶¶ 29–41. Determining the falsity of these statements simply does not implicate the "interpretation or performance" of the Agreement in any way.[6] CZ Services' and CareZone Pharmacy's claims based on ESI's false statements thus do not relate to the interpretation or performance of the Agreement and fall outside the scope of the applicable forum selection clauses. *See Hardy v. Advocare Int'l. L.P.*, No. 2:09-CV-01307-JHN-PJWx, 2010 WL 11509179, at *5 (C.D. Cal. Dec. 10, 2010) (finding misrepresentation claims outside the scope of forum selection clause because they were based on facts and conduct external to the agreement); *see also Trendsettah USA, Inc. v. Swisher Int'l Inc.*, No. SACV14-01664-JVS (DFM)x, 2015 WL 12697653, at *3 (C.D. Cal. Feb. 3, 2015) (finding disputes arising from purchases made under a credit agreement did not arise out of the interpretation or performance of the agreement itself).

The two defamation cases on which ESI relies are inapposite, as both involved claims that directly required interpretation of the agreement in question and applied broad forum selection clauses. In *Siren, Inc. v. Firstline Security, Inc.*, the allegedly defamatory statements accused the plaintiffs of breaching the non-compete clause in the agreement containing a forum selection clause encompassing actions "relating to th[e] Agreement." *See* No. 06-1109 PHX RCB, 2006 WL 3257440, at *1, 5 (D. Ariz., May 17, 2006) (noting which provisions of the contract were relevant). The fact that the dispute involved a purported breach of the non-compete clause meant that it "relat[ed] to th[e] Agreement." *See id.* And similarly, in *Brennen v. Phyto-Riker Pharmaceuticals, Ltd.*, the plaintiff was accused of stealing money to which he

---

[6] State pharmacy licenses, for example are a matter of public record, and CZ Services has already sent ESI copies of the particular licenses ESI has questioned. Am. Compl. ¶ 33 & Ex. C.

1  claimed he was entitled under his employment contract, which contained a forum selection
2  clause "arising out of or relating to th[e] Agreement." *See* No. 01 CIV 11815 (DLC), 2002 WL
3  1349742, at *5 (S.D.N.Y. June 20, 2002). Unlike the clause at issue here, the clauses in those
4  cases were not limited to "interpretation or performance" of the agreements. And, even if they
5  had been so limited, each case required the court to interpret the relevant contractual provisions,
6  and thus involved the "interpretation or performance" of the Agreement.

7   ESI's position that the unfair competition and AWP claims "based on [ESI's] unlawful
8  termination of CZ Services from [ESI's] network," fall within the scope of the forum selection
9  clause, ESI Mot. at 11–12, is similarly flawed. ESI expressly admits in its original motion that it
10 terminated CZ Services' California pharmacy without cause. ESI Mot. at 5 (noting that ESI
11 provided 90-days written notice "[b]ecause it was exercising its right to terminate without
12 cause"). However, ESI ignores the significance of this admission. Because ESI terminated the
13 pharmacy without cause, it is irrelevant whether ESI had a reason for termination, much less
14 what that reason was or whether it was justified by the parties' performance under the terms of
15 the Agreement.[7] At no point in this case has CZ Services asserted that ESI did not have the
16 contractual authority to terminate CZ Services, or that ESI's performance of any authority to
17 terminate CZ Services is inconsistent with the language of the Agreement. Claims of that nature
18 would arguably have fallen under the scope of the forum selection clause. By "exercising its
19 right to terminate without cause," ESI Mot. at 5, ESI placed its actions outside of the forum
20 selection clause's language requiring "interpretation or performance" of the Agreement. Put
21 differently, with respect to the AWP claims, the Court will not need to address the "interpretation
22 or performance" under the Agreement, but rather must consider whether ESI's actions—
23 regardless of the Agreement—are permitted under the various federal and state AWP laws.

24  Moreover, the factual allegations underlying CZ Services' and CareZone Pharmacy's
25 unfair competition and AWP claims for both pharmacies show that they do not depend on the

---

[7] Although ESI also purported to terminate CZ Services' California pharmacy for cause, that is irrelevant. Regardless of whether ESI was permitted to terminate the pharmacy for cause, ESI's decision to do so without cause would still remain.

11

CZ SERVICES, INC. & CAREZONE PHARMACY LLC'S OPPOSITIONS TO ESI'S MOTIONS TO TRANSFER
CASE NO. 3:18-CV-4217-JD

1  reason for termination of their Agreements. The pharmacies have alleged that termination from
2  ESI's network is an unlawful covenant restraining competition in violation of California
3  Business & Professions Code § 16600, regardless of whether ESI's unfounded assertions that
4  they are mail-order pharmacies are correct. Am. Compl. ¶ 75. The Court thus does not need to
5  interpret the Agreement's prohibition on mail-order pharmacies or determine whether either of
6  the two pharmacies qualifies as such. Similarly, ESI has violated federal and state AWP laws by
7  terminating the pharmacies, regardless of its ESI's perception of the pharmacies' compliance
8  with the terms and conditions set out for pharmacy providers is correct. *See id.* ¶ 76. As already
9  explained in CareZone Pharmacy's motion for a temporary restraining order, ESI is unlawfully
10 restricting participation in its network by impermissibly setting special terms for its own mail-
11 order pharmacy service. *See* Mot. for TRO at 10, ECF No. 27. The Court thus need not evaluate
12 the reasons given for termination, whether as to CareZone Pharmacy or CZ Services to
13 determine the AWP claims.  Accordingly none of the unfair competition or AWP claims requires
14 interpretation or analysis of the parties' performance under the Agreement, CZ Services' claims
15 fall outside the scope of the applicable forum selection clauses, and ESI's admission above as to
16 CZ Services constitutes a concession to the same.

17       All of the cases on which ESI relies involving similar forum selection clauses and AWP
18 and unfair competition claims are factually inapposite because they depended on ESI's reasons
19 for terminating the pharmacy under the relevant agreement. In *Prime Aid Pharmacy Corp. v.*
20 *Express Scripts, Inc.*, ESI terminated the pharmacy's 2014 agreement and then later denied the
21 pharmacy's subsequent 2016 application based on "numerous breaches" of the earlier agreement.
22 No. 16-2182, 2017 WL 1086175, at *2 (D.N.J. Mar. 21, 2017). The pharmacy challenged the
23 denial, and the court determined that the propriety of the denial turned on whether termination of
24 the 2014 agreement was appropriate. *Id.* at *4. Because that analysis was "entirely dependent on
25 the terms of, and the parties' performance under, the Agreement," the dispute fell within the
26 scope of the forum selection clause. *Id.*

27       Similarly, in *Diabetic Care Rx, LLC v. Express Scripts*, ESI terminated the pharmacy
28 because it had allegedly concealed material information from ESI, causing it to have justifiable

concerns about the risks posed to the network and clients. No. 18-61331, 2018 U.S. Dist. Lexis 111100, at *3-4 (S.D. Fla. June 29, 2018), *affirmed and adopted*, 2018 U.S. Dist. Lexis 120906 (S.D. Fla. July 17, 2018). The pharmacy brought claims for breach of contract and violations of AWP laws, among others. *Id.* at *7-8. Those claims required analysis of the agreement and the parties' performance in order to determine whether the termination was justified. The court could thus conclude that the claims were "sufficiently connected to the parties' own contract to be governed by the forum selection clause…." *Id.* at *7. And in *Paduano v. Express Scripts, Inc.*, ESI terminated the pharmacy because it allegedly had made material misrepresentations regarding collection of co-payments. 55 F. Supp. 3d 400, 409 (E.D.N.Y. 2014). The pharmacy then sought reinstatement of the agreement and payment of claims for certain types of medications. *Id.* at 408. Those claims also required interpretation of the agreement and the parties' performance, so the court determined that the forum selection clause applied. *Id.* at 433.

In sum, all of the cases on which ESI relies turn on relevant factual differences that ESI ignores. None of CZ Services' or CareZone Pharmacy's claims relate to the interpretation or performance of the Agreement, as required by the forum selection clause. As such, this entire action falls outside the scope of the forum selection clause and should not be transferred.[8]

**C.      The Circumstances of This Case Do Not Warrant Transfer**

Even if this Court determines that CZ Services' claims fall within the scope of the forum selection clause, transfer is still not warranted.  The Supreme Court has recognized that "it is conceivable in a particular case that the district court would refuse to transfer a case" despite the

---

[8] If this Court determines that only some of CZ Services' or CareZone Pharmacy's claims are subject to the forum selection clause, the Court should transfer only those claims.  Severing those claims would uphold each pharmacy's choice of forum. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 393 (2d Cir. 2007) (requiring separate proceedings where only some claims were governed by the forum selection clause in order to defer to the plaintiff's choice of forum); *Excentus Corp. v. Giant Eagle, Inc.*, No. CIV.A. 13-178, 2014 WL 923520, at *10 (W.D. Pa. Mar. 10, 2014) (similar). In addition, the sheer complexity of managing litigation where some claims would be subject to the forum selection clause of the Agreement, while others are not, and having to apply the law of multiple different jurisdictions do not promote efficiency or the interests of justice. Requiring the two pharmacies to litigate essentially identical claims in two different fora only renders transfer even more inefficient.

1  existence of a valid forum selection clause. *Atl. Marine Const. Co. v. U.S. Dist. Court for W.*
2  *Dist. of Texas*, 571 U.S. 49, 64 (2013) (internal citation and quotation omitted).  In making that
3  determination, the Court should consider whether public-interest factors outweigh the parties'
4  settled expectations from the contract.  *See Connex R.R. v. AXA Corp. Sols. Assurance*, 209 F.
5  Supp. 3d 1147, 1150 (C.D. Cal. 2016), *motion to certify appeal denied,* No. 2:16-CV-02368-
6  ODW (RAO)x, 2017 WL 3446633 (C.D. Cal. Jan. 13, 2017) (citing *Atlantic Marine*, 571 U.S. at
7  65–66).  Public-interest factors include the local interest in the lawsuit, the court's familiarity
8  with the governing law, the unfairness of burdening citizens in an unrelated forum with jury
9  duty, and issues of forum shopping.  *Atl. Marine*, 581 U.S. at 581, n.6; *Boston Telecomms. Grp.,*
10 *Inc. v. Wood*, 588 F.3d 1201, 1211 (9th Cir. 2009); *Decker Coal Co. v. Commonwealth Edison*
11 *Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *Burgess v. HP, Inc.*, No. 16-CV-04784-LHK, 2017 WL
12 467845, at *10 (N.D. Cal. Feb. 3, 2017).

13        This Court will be able to resolve this action more efficiently than Missouri or Delaware
14 courts.  California has more familiarity with its own unfair business practices laws than Missouri
15 or Delaware, and neither Missouri nor Delaware has greater familiarity than California with any
16 of the other claims. California also has strong public policy interests in ensuring fair business
17 practices in California.  *See, e.g.*, *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 949 (Cal.
18 2008) ("California courts have been clear in their expression that section 16600 represents a
19 strong public policy of the state which should not be diluted by judicial fiat." (internal quotation
20 and citation omitted)); *Net2Phone, Inc. v. Superior Court*, 109 Cal. App. 4th 583, 591–92 (Cal.
21 Ct. App. 2003) (California's UCL, § 17200, "constitutes an important public policy of the State
22 of California").  The local interest thus supports the California choice of forum.  Moreover, it
23 would be unfair and inefficient to burden both a Missouri and a Delaware jury with this action,
24 as the principal injuries CZ Services has suffered to its business and reputation are in California.
25 *See* Am. Compl. ¶ 41.  Because of the strong public-interest factors, transfer is not warranted.

## CONCLUSION

27        CZ Services' and CareZone Pharmacy's claims do not fall within the scope of the forum
28 selection clause.  Because transfer to Missouri and Delaware is not warranted under the

1  applicable forum selection clauses or 28 U.S.C. § 1404(a), CZ Services respectfully requests that
2  this Court deny ESI's Motions to Transfer. ECF Nos. 17, 36.

3  Dated:  August 1, 2018          Respectfully submitted,

By:  */s/ William C. Jackson*
───────────────────────────────
William A. Isaacson (DC SBN 414788)
(*Pro Hac Vice*)
wisaacson@bsfllp.com
William C. Jackson (DC SBN 475200)
(*Pro Hac Vice*)
wjackson@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 237-2727
Facsimile:  (202) 237-6131

Meredith R. Dearborn (SBN 268312)
mdearborn@bsfllp.com
BOIES SCHILLER FLEXNER LLP
425 Tasso Street, Suite 205
Palo Alto, CA 94307
Telephone: (650) 445-6400
Facsimile: (650) 329-8507

*Attorneys for CZ Services, Inc. and CareZone Pharmacy LLC*