1   William A. Isaacson (DC SBN 414788) (*Pro Hac Vice*)
    wisaacson@bsfllp.com
2   William C. Jackson (DC SBN 475200) (*Pro Hac Vice*)
    wjackson@bsfllp.com
3   BOIES SCHILLER FLEXNER LLP
    1401 New York Avenue, N.W.
4   Washington, DC 20005
    Telephone: (202) 237-2727
5   Facsimile: (202) 237-6131

6   Meredith R. Dearborn (SBN 268312)
    mdearborn@bsfllp.com
7   BOIES SCHILLER FLEXNER LLP
    425 Tasso Street, Suite 205
8   Palo Alto, CA 94307
    Telephone: (650) 445-6400
9   Facsimile: (650) 329-8507

10  *Attorneys for CZ Services, Inc. and CareZone Pharmacy LLC*

11

12              UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14               SAN FRANCISCO DIVISION

15

16  CZ SERVICES, INC., d/b/a CAREZONE            Case No. 3:18-CV-04217-JD
    PHARMACY and CAREZONE PHARMACY
17  LLC,                                          **SUPPLEMENTAL MEMORANDUM IN
                                                   SUPPORT OF PLAINTIFFS CZ
18                      Plaintiffs,                SERVICES, INC. AND CAREZONE
                                                   PHARMACY LLC'S OPPOSITION TO
19         vs.                                     EXPRESS SCRIPT'S MOTIONS TO
                                                   TRANSFER**
20
    EXPRESS SCRIPTS HOLDING COMPANY
21  and EXPRESS SCRIPTS, INC.

22                      Defendants.

23

24

25

26

27

28

1

## **TABLE OF CONTENTS**

2
TABLE OF AUTHORITIES ............................................................................................... ii

3
INTRODUCTION ............................................................................................................. 1

4
DISCUSSION ................................................................................................................... 2

5
   A.  Claims Arising From ESI's Defamatory Statements .......................................... 3

6
        1.    Count I: Violation of the Lanham Act, 15 U.S.C § 1125(a) ........................... 5

7
        2.    Count II: Trade Libel ........................................................................ 6

8
        3.    Count IV: Intentional Interference with Prospective Economic
             Relations ........................................................................................ 7

9

10
        4.    Count V: Negligent Interference with Prospective Economic Relations.......... 8

11
        5.    Count VI: Defamation ...................................................................... 8

12
        6.    Count III: Defamation Theory of Unfair Competition ................................. 9

13
   B.  Claims for Unfair Competition and Violation of AWP Laws ............................. 9

14
        1.    Counts III and VII: AWP Violations and Related Unfair Competition
             Allegation ........................................................................................ 9

15
             a)    Unequal Opportunity to Serve Mail-Order Customers ...................... 10

16
             b)    Termination of CZ Services Without Cause ..................................... 11

17
             c)    Remedies for ESI's Violation of AWP Laws ................................... 12

18
             d)    Counts III and VII Fall Outside the Forum Selection Clause ............. 13

19
        2.    Count III: Restraint of Trade Theory of Unfair Competition ........................ 14

20
CONCLUSION ............................................................................................................... 15

21

22

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

**CASES**

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
 973 P.2d 527 (Cal. 1999) ............................................................... 13

*Davis v. HSBC Bank Nev., N.A.*,
 691 F.3d 1152 (9th Cir. 2012) ........................................................ 13

*Edwards v. Arthur Andersen LLP*,
 189 P.3d 285 (Cal. 2008) ................................................................ 14

*In re Orange, S.A.*,
 818 F.3d 956 (9th Cir. 2016) ....................................................... 1, 2

*Korea Supply Co. v. Lockheed Martin Corp.*,
 63 P.3d 937 (Cal. 2003) .................................................................... 7

*Optinrealbig.com, LLC v. Ironport Sys., Inc.*,
 323 F. Supp. 2d 1037 (N.D. Cal. 2004) ........................................... 6

*Price v. Stossel*,
 620 F.3d 992 (9th Cir. 2010) ............................................................ 9

*Settimo Associates. v. Environ Systems, Inc.*,
 14 Cal. App. 4th 842 (Cal. Ct. App. 1993) ....................................... 8

*Southland Sod Farms v. Stover Seed Co.*,
 108 F.3d 1134 (9th Cir. 1997) .......................................................... 5

*Telesocial Inc. v. Orange S.A.*,
 No. 14-CV-03985-JD, 2015 WL 1927697 (N.D. Cal. Apr. 28, 2015) ........................... passim

*Tryfonas v. Splunk, Inc.*,
 No. 17-CV-01420-HSG, 2018 WL 534287 (N.D. Cal. Jan. 24, 2018) ................................ 14

**STATUTES, RULES & REGULATIONS**

15 U.S.C § 1125(a) ........................................................................... 5

42 U.S.C. § 1395w-104(b)(1)(A) ............................................... 10, 11

42 U.S.C. § 1396a ..................................................................... 10, 11

Cal. Bus. & Prof. Code § 16600 ......................................................... 14

Cal. Bus. & Prof. Code § 17200 ................................................... 13, 14

Tenn. Code Ann. § 56-7-2359(a)(2) ............................................. 10, 11

ii

**Supp. Memo. ISO Plaintiffs' Opp. to ESI's Mots. to Transfer – Case No. 3:18-cv-4217-JD**

1

## INTRODUCTION

2
3
4
5
Pursuant to the Court's August 2, 2018 order, *see* ECF No. 49, Plaintiffs CZ Services, Inc. ("CZ Services") and CareZone Pharmacy LLC ("CZ Pharmacy") (together, "Plaintiffs") hereby submit this supplemental memorandum in support of their Opposition to Defendants' Motions to Transfer, ECF No. 42 ("Opp.").

6
7
8
9
10
11
12
13
14
15
16
17
18
ESI's Motions to Transfer turn on the application of a forum selection clause contained in the Pharmacy Provider Agreements (the "Agreements") that Express Scripts, Inc. and Express Scripts Holding Co. (collectively, "ESI") required Plaintiffs to sign. The scope of the forum selection clause in the Agreements is narrow. Each clause governs only litigation related to "the ***interpretation or performance*** of the Agreement." ESI Mot. to Transfer CZ Services, Inc.*,* ECF No. 17, Ex. 2 (CZ Services Agreement) § 7.12 (emphasis added); *see also* Barnes Decl., Ex. G (ECF No. 27-9) § 7.12; Moore Decl., Ex. B (ECF No. 35-3) § 7.12 (CZ Pharmacy Agreements). If "[n]othing in th[e] claim or the facts alleged in support of it can be characterized with a straight face as requiring the interpretation of the [Agreements]," the forum selection clause does not apply. *Telesocial Inc. v. Orange S.A.*, No. 14-CV-03985-JD, 2015 WL 1927697 (N.D. Cal. Apr. 28, 2015) *aff'd, In re Orange, S.A.*, 818 F.3d 956 (9th Cir. 2016). That is the case here: none of Plaintiffs' claims requires the Court to consider "the interpretation or performance" of the Agreements.

19
20
21
22
23
24
25
26
27
28
In *Telesocial*, the Court interpreted a forum selection clause that was significantly broader than the one at issue here. There, the parties had entered into a non-disclosure agreement ("NDA") that governed conversations about the plaintiff's technology during acquisition negotiations. *Id.* at *1. The *Telesocial* NDA contained a forum selection clause that required that litigation "relating to the Agreement" be litigated in France. *Id.* When the defendant later allegedly hacked the plaintiff's computers to obtain different information about the plaintiff's technology, the plaintiff sued under the federal Computer Fraud and Abuse Act and California state law for theft of trade secrets, breach of its Terms of Use, and other claims. *Id.* at *2. Because "[n]othing in the claims required the district court to interpret, let alone reference, the NDA to issue a ruling," the claims fell outside the scope of the forum selection clause. *In re*

1

*Orange*, 818 F.3d at 962.

The forum selection clause here is narrower than the one at issue in *Telesocial*. Rather than covering claims that "relat[e] to" the Agreements, the claims subject to the forum-selection clause here are only those involving the "interpretation or performance" of the Agreements. *Compare* ECF No. 17-3 § 17.2 (CZ Services Agreement); ECF No. 27-9 § 7.12, ECF No. 35-3 § 7.12 (CZ Pharmacy Agreements) *with Telesocial*, 2015 WL 1927697, at *1 (quoting forum selection clause). The claims in this action all arise from ESI's conduct outside of and unrelated to the Agreements: (1) false accusations that CZ Services and CZ Pharmacy are operating illegally; and (2) ESI's attempt to protect its own mail-order pharmacy business from competition by refusing to allow any other pharmacy within its network to operate as a mail-order pharmacy. Nothing about these facts requires this Court to "interpret" the Agreements or assess the parties' "performance" under the Agreements. Plaintiffs therefore respectfully renew their request that the Court deny ESI's motions to transfer, and keep this action in CZ Services' home forum: the Northern District of California.[1]

## DISCUSSION

To aid the Court's review, Plaintiffs have divided their claims into two groups. The first group is comprised of those claims arising from ESI's defamatory statements: Lanham Act violations, trade libel, intentional interference with contract, negligent interference with contract, and defamation (Counts I, II, IV, V, and VI), and a defamation theory of unfair competition (Count III). The second group involves claims relating to unfair competition and "Any Willing

---

[1] If the Court finds that some claims fall within the scope of the applicable forum selection clause, CZ Services' and CZ Pharmacy's choice of forum should be upheld as to all claims outside the scope of the clause. *See* Opp. at 13 & n.8. Even where there is a valid and applicable forum selection clause, this Court is not required to transfer all claims subject to it. *See id.* at 13-14. Here, the interests of justice strongly favor keeping this entire action in the Northern District of California. *See id.* at 13 & n.8. Requiring two different judges to work on even 30 or 40 percent of the issues does not promote the economy and efficiency of the courts. 8/2/18 Hr'g Tr. 25:3-9. In addition, splitting this action would raise serious concerns about inconsistent verdicts. Accordingly, transfer would not further the interests of justice and is not warranted under the circumstances of this case.

Provider" ("AWP") issues (Counts III and VII). None of these claims requires any analysis of the interpretation or performance of the Agreements.

**A.      Claims Arising From ESI's Defamatory Statements**

Counts I, II, IV, V, and VI center on ESI's defamatory statements. On June 19, 2018, ESI published material on its website that contained the following libelous and defamatory language:

- "However <u>when a pharmacy breaks the law</u>, misrepresents itself, or otherwise violates the agreement we have, we take action, and remove it from the network."

- "During a recent review, we found . . . that many prescriptions were being mailed to states <u>where the dispensing pharmacy was not licensed in violation of state law</u>."

- "Because CareZone is <u>violating state pharmacy laws</u> and is unwilling to comply with its contract, we are removing CareZone from our network."

Amended Complaint ¶¶ 32, ECF No. 24 ("Am. Compl.) (emphasis added); *id.*, Ex. F, ECF No. 24-6. ESI promoted the post containing these allegations on Twitter to its 21,800 followers. *Id.* ¶ 34. ESI also repeated and expanded on the allegations in a modified website post. *Id.* ¶¶ 36-37. The modified post notably ends by highlighting its offer to transition patients to "another nearby pharmacy that will provide quality, affordable access to medicine, and do so <u>lawfully</u>." *Id.*, Ex. H, ECF No. 24-8 (emphasis added). ESI has also reiterated these false statements to reporters. *Id.* ¶ 37.

While the defamatory statements at issue reference the Agreements in passing, the focus of these statements, and of Plaintiffs' claims of defamation, are the far more inflammatory (and false) accusations that Plaintiffs are acting illegally, or in an unlicensed manner, or failing to deliver quality care to their patients. The Amended Complaint's focus on statements that have <u>nothing to do</u> with the Agreements is plain from Plaintiffs' allegations. *See id.* ¶ 32 (quoting post that "directly alleged, or otherwise implied, that CZ Services was operating illegally"); ¶ 33 ("In short, ESI stated that CZ Services 'breaks the law,' was engaging in actions 'in violation of state law,' and 'is violating state pharmacy laws.' None of those statements are accurate."); ¶ 35 ("This tweet, stating or implying that CZ Services is not in fact delivering quality care, affordable access, or operating legally, was published to ESI's 21,800 Twitter followers."); ¶ 37 ("ESI spoke to reporters, including reporters from both CNBC and Axios, among others, and

3

reiterated these false statements that CZ Services was not complying with the relevant pharmacy laws."); ¶ 38 ("Given the size of ESI's business and customer base, the promotion on this content on its website and Twitter account, and the severity of the allegations that CZ Services is acting in violation of state and federal laws, ESI's statements have caused and will continue to cause significant damage to CZ Services' reputation and future business opportunities."); ¶ 39 ("By accusing CZ Services of breaking both federal and state law, ESI's statements are causing irreparable harm to CZ Services and to the public at large. The pharmacy industry is highly regulated at both the state and federal level. Any accusation of illegal activity, especially by an industry behemoth such as ESI, will needlessly draw the attention of state and federal regulators, potentially cause the wasteful expenditure of public funds, cause competitive harm, and dissuade vulnerable patients from using CZ Services' pharmacies."); ¶ 40 ("ESI is attempting to drive customers away from CZ Services by disseminating the false rumor that CZ Services is not in compliance with laws where CZ Services' customers reside.").

As ESI is well aware, these statements are false. Plaintiffs are not operating "illegally." Both pharmacies are permitted to fill prescriptions in all 50 states and the District of Columbia. *Id.* ¶¶ 13-14 & n.2. State pharmacy licenses are a matter of public record. *Id.* ¶ 33. And Plaintiffs are in no way operating in a way that jeopardizes patient health and safety. Before ESI published these accusations, CZ Services and CZ Pharmacy responded to each one of ESI's concerns about their businesses with supporting documentation showing why ESI's concerns were unfounded, and thus ESI knew that their defamatory statements were false when made. *Id.*, Exs. C-E, ECF Nos. 24-3 to 24-5.

Determining the truth or falsity of ESI's public accusations does not require this Court to interpret the Agreements or assess the parties' performance under the Agreements. *See* 8/2/18 Hr'g Tr. 11:1-4, 12:16-23, ECF No. 50. To be clear, Plaintiffs are not seeking relief due only to the (also false) statements that Plaintiffs were allegedly violating the Agreements. Frankly, it strains credulity to think that ESI published and promoted the above statements because it wanted to inform patients of a contractual dispute between ESI and the CZ Services pharmacies. Businesses have contract disputes all the time. Indeed, if informing the public about the dispute

with Plaintiffs had been the goal, ESI could have included in its post the various reasons stated in the termination notices ESI sent each pharmacy. *See* Am. Compl. ¶ 30. Instead, ESI honed in on the alleged illegality of Plaintiffs' operations. A claim that a pharmacy is operating illegally causes patients to believe that their "lives and safety" are "at risk. That's the thing that's going to hurt [CZ Services and CZ Pharmacy] publicly." 8/2/18 Hr'g Tr. 8:21-23.

**1.      Count I: Violation of the Lanham Act, 15 U.S.C § 1125(a)**

Plaintiffs' first cause of action under the Lanham Act requires Plaintiffs to show: "(1) a false statement of fact by [ESI] in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) [ESI] caused its false statement to enter interstate commerce; and (5) [Plaintiffs] ha[ve] been or [are] likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with [their] products." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). The defamatory statements in Plaintiffs' Amended Complaint are focused on the false statements that Plaintiffs are acting illegally, in contravention of state licensing requirements, and in a way that allegedly jeopardizes patient safety. The focus of the defamatory statements is not that Plaintiffs are in breach of the Agreements. Thus, to determine whether ESI's statements are false, deceptive, and material, nothing in Count I requires the Court to engage in any analysis of the interpretation or performance of the Agreements.

Accusations that CZ Services and CZ Pharmacy are operating without proper licenses and in violation of applicable pharmacy laws are material to whether patients will fill prescriptions at CZ pharmacies, and both CZ Services and CZ Pharmacy have lost business as a result. ESI's statements are particularly damaging because the CZ pharmacies operate in a highly regulated industry. Patients and regulators who hear matter-of-fact accusations that a pharmacy is operating illegally and without a license question whether the public's health and safety has been jeopardized. These statements are defamatory per se, without reference to any provision of the Agreements at all.

Plaintiffs' Lanham Act claims are cognizable separate and apart from any claim related to the Agreements. CZ Services and CZ Pharmacy are required to comply with applicable federal and state pharmacy laws and license requirements. The Court can determine the falsity of ESI's accusations that Plaintiffs were operating illegally, without proper licenses, and in a manner that jeopardizes patient safety without reference to the Agreements. And as Plaintiffs confirmed at the hearing on August 2, 2018, Plaintiffs will not argue that they are entitled to remedies due to ESI's statement that Plaintiffs breached the Agreements. 8/2/18 Hr'g Tr. 9:21-25 ("[W]hen you prosecute your claim, you're not going to spend any time at all saying, well, one of the reasons, Your Honor, they violated the Lanham Act is because they told people we breached our contract? MR. JACKSON: No."). While Plaintiffs seek both monetary damages and injunctive relief as a result of ESI's defamatory statements, restraining ESI from publishing any additional false statements and requiring ESI to retract and correct the statements already issued, Am. Compl. ¶ 62; *id.* Prayer for Relief ¶¶ I, J, will not require any interpretation of the Agreements or assessment of either party's performance of the Agreements.

Thus, "[n]othing in this claim or the facts alleged in support of it can be characterized with a straight face as requiring the interpretation" of the Agreements. *Telesocial*, 2015 WL 1927697, at *3. Because resolution of Plaintiffs' Lanham Act claims does not in any way relate to the interpretation or performance of the Agreements, these claims fall outside the scope of the applicable Agreements and should not be transferred.

### 2.      Count II: Trade Libel

"To prevail in a claim for trade libel, a plaintiff must demonstrate that the defendant: (1) made a statement that disparages the quality of the plaintiff's product; (2) that the offending statement was couched as fact, not opinion; (3) that the statement was false; (4) that the statement was made with malice; and (5) that the statement resulted in monetary loss." *Optinrealbig.com, LLC v. Ironport Sys., Inc.*, 323 F. Supp. 2d 1037, 1048 (N.D. Cal. 2004). The facts underlying this claim are the same as those relevant to Plaintiffs' Lanham Act claims above. For the same reasons, CZ Services' and CZ Pharmacy's trade libel claims do not depend on the interpretation or performance of the Agreements.

ESI disparaged Plaintiffs' services by claiming that Plaintiffs were operating illegally and subjecting patients to low-quality care. *See* Am. Compl. ¶¶ 32-41, 64-65. As ESI surely knew, patients are concerned about a pharmacy's legality and quality of service, and are more likely to choose a different pharmacy if they believe that a pharmacy is jeopardizing their own health and safety. As with the Lanham Act claims above, the trade libel claims can be resolved, and all remedies awarded, without reference to the interpretation or performance of the Agreements.

### 3. Count IV: Intentional Interference with Prospective Economic Relations

The elements of the tort of intentional interference with prospective economic advantage are as follows: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional wrongful acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 950 (Cal. 2003).

By publishing the above-described false and defamatory statements, ESI has deliberately and wrongfully interfered with the economic relationships between Plaintiffs and the patients who prefer to have those pharmacies fill their prescriptions. ESI's interference in those relationships has nothing to do with the "interpretation or performance" of the Agreements. The Agreements provide certain rights and duties as between ESI and the CZ pharmacies. They say nothing about what ESI can publish on its website and social media to the general public. ESI has independent statutory and common law obligations to not intentionally make false statements like the ones it made here.[2] ESI wrongfully published these statements in order to drive patients who prefer CZ Services and CZ Pharmacy to ESI's own mail-order pharmacies. Am. Compl. ¶¶ 39-40, 92.

---

[2] ESI has also interfered by using improper means, including unfair competition and violations of applicable AWP laws, to deprive the CZ pharmacies of access to the patients in its network. Am. Compl. ¶¶ 46-49, 74-78, 89. For the same reasons as discussed *infra* with respect to those claims (Counts III and VII), Plaintiffs' claims in this regard do not depend on interpretation or performance of the Agreements.

ESI's choice to defame CZ Services and CZ Pharmacy has a broad impact. While ESI's statements no doubt affect the choices of patients within ESI's network, they also likely affect the choices of patients in other PBM networks like Humana. 8/2/18 Hr'g Tr. 16:23-25 (noting that Plaintiffs also assist Humana patients). The average patient does not know who her PBM is. But the patient certainly knows who her pharmacy is. Statements that the patient's pharmacy is operating in contravention of state and federal pharmacy laws qualifies as an intentional and wrongful act designed to disrupt CZ Services' and CZ Pharmacy's relationships with their customers. CZ Services' and CZ Pharmacy's loss of customers in no way touches upon the "interpretation or performance" of the Agreements. The forum selection clause therefore does not reach claims for lost business resulting from patients who choose another pharmacy out of concern that Plaintiffs are operating illegally, without licenses, and in a way that jeopardizes patient safety.

### 4.    Count V: Negligent Interference with Prospective Economic Relations

The tort of negligent interference with economic advantage involves conduct that "unlawful[ly] interfere[s] with a business opportunity through methods which are not within the privilege of fair competition." *Settimo Assocs. v. Environ Sys., Inc.*, 14 Cal. App. 4th 842, 845 (Cal. Ct. App. 1993). Again, CZ Services' and CZ Pharmacy's negligent interference claims do not depend on "the interpretation or performance" of the Agreements.

Making false and defamatory statements about a competitor business in order to drive customers away from that business is not within the privilege of fair competition. The false accusations are independently wrongful, violate the Lanham Act and common law duties, as well as constitute unfair competition as discussed *infra*. For the same reasons described above, neither the resolution of these claims nor the remedies Plaintiffs seek require the Court to interpret the Agreements or evaluate either party's performance under the Agreements. Thus, these claims fall outside the scope of the forum selection clause and should not be transferred.

### 5.    Count VI: Defamation

"Under California law, defamation involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special

8

**Supp. Memo. ISO Plaintiffs' Opp. to ESI's Mots. to Transfer – Case No. 3:18-cv-4217-JD**

damage." *Price v. Stossel*, 620 F.3d 992, 998 (9th Cir. 2010) (internal citation and quotation omitted). For the reasons described above and herein, CZ Services' and CZ Pharmacy's defamation claims do not depend on "the interpretation or performance" of the Agreements.

By falsely and intentionally accusing CZ Services and CZ Pharmacy of operating illegally and without proper licenses and of not providing quality care, ESI has defamed both pharmacies without regard to the language of the Agreements or Plaintiffs' compliance with their Agreements. As this Court has already indicated, challenging ESI's statements about illegality and licensure "would not be within the purview of the agreement." 8/2/18 Hr'g Tr. 12:18-23. ESI has not—and cannot—offer any reason why the resolution of CZ Services' and CZ Pharmacy's defamation claims depends on the interpretation or performance of the Agreements.

In short, the claims arising from ESI's false statements—Counts I, II, IV, V, and VI—do not require "any reference to, let alone interpretation of," the relevant Agreements. *Telesocial*, 2015 WL 1927697, at *3. To arrive at any other conclusion, the Court would have to "stretch the [Agreements] well past any reasonable application to the facts alleged in the complaint…." *Id.*

### 6.    Count III: Defamation Theory of Unfair Competition

Plaintiffs have also brought unfair competition claims based on ESI's publication of false and defamatory statements. Am. Compl. ¶¶ 74, 77. These claims do not depend on the interpretation or performance of the Agreements for the same reasons detailed above.

## B.    Claims for Unfair Competition and Violation of AWP Laws

CZ Pharmacy's claim in Count VII asserts a violation of Tennessee's AWP law, and one of the theories underlying CZ Services' and CZ Pharmacy's unfair competition claims in Count III is based on ESI's violation of federal and state AWP laws. *See* Am. Compl. ¶¶ 72-83, 106-10. Nothing in this group of claims requires the Court to analyze the interpretation or performance of the Agreements.

### 1.    Counts III and VII: AWP Violations and Related Unfair Competition Allegation

ESI is subject to both federal and state AWP laws, which require it to allow pharmacies that meet the terms and conditions offered to other pharmacies to participate in its network.

9

*Id.* ¶¶ 76, 107-08 (citing Medicare Part D Act, 42 U.S.C. § 1395w-104(b)(1)(A), the Social Security Act, 42 U.S.C. § 1396a, and Tenn. Code Ann. § 56-7-2359(a)(2)). Specifically, Medicare requires that ESI "permit the participation of any pharmacy that meets the terms and conditions under the plan," and the Social Security Act provides Medicaid beneficiaries the right to obtain medical services from any institution or person qualified to perform the required services who undertakes to perform them. *Id.* ¶ 48. Tennessee's AWP law prohibits ESI from "[d]eny[ing] any licensed pharmacy…the right to participate as a participating provider in any policy, contract or plan on the same terms and conditions as are offered to any other provider of pharmacy services under the policy, contract or plan." Tenn. Code Ann. § 56-7-2359(a)(2).

The purpose of these AWP provisions is to allow patients to obtain their prescriptions at the pharmacy of their choice by ensuring a pharmacy's equal participation. Am. Compl. ¶ 51; *see* 42 U.S.C. § 1395w-104(b)(1)(A) (AWP provision falls under headings assuring pharmacy access and participation of willing providers); Tenn. Code Ann. § 56-7-2359 (individuals cannot be denied the right to "select[] a licensed pharmacy of the person's choice…."). ESI is failing to follow these requirements. Even though it permits one particular mail-order pharmacy to participate in its network—namely, its own captive pharmacy—ESI refuses to allow any other pharmacies to mail. This means that any patient in ESI's network has only one mail-order option: an ESI pharmacy. In ESI's own words, it "is a mail order pharmacy that doesn't accept another mail order pharmacy service." Am. Compl. ¶ 27 & Ex. A, ECF No. 24-1; *id.*, Ex. B, ECF No. 24-2 ("We do not accept mail order pharmacies."). These unequivocal statements do not require the Court to interpret or assess the parties' performance of the Agreements.

### a)   Unequal Opportunity to Serve Mail-Order Customers

ESI refuses to offer the opportunity to serve patients whose drug benefits are managed by ESI on the same terms and conditions as it offers to its own mail-order pharmacies. *Id.* ¶¶ 76, 107-110. By ESI's own express admission, the only pharmacies allowed to mail prescriptions to ESI's network of patients are the pharmacies it owns. *See id.* ¶¶ 22, 26-27; Moore Decl. ¶¶ 10, 26 ECF No. 35-1. In other words, ESI does not allow any outside pharmacy to mail prescriptions to patients in its network on <u>any</u> terms or conditions. This practice violates federal and state AWP

laws, because ESI is refusing to offer other pharmacies the same terms and conditions for participation in the network that it offers to its own captive pharmacies. *Id.* ¶¶ 76, 107-08 (citing Medicare Part D Act, 42 U.S.C. § 1395w-104(b)(1)(A), the Social Security Act, 42 U.S.C. § 1396a, and Tenn. Code Ann. § 56-7-2359(a)(2)). When Plaintiffs requested applications to enter contracts to provide mail order services, ESI refused even to permit Plaintiffs to <u>apply</u>. *Id.* ¶ 27 & Ex. A; *id.*, Ex. B ("We do not accept mail order pharmacies."). Because the operative fact is ESI's refusal to permit Plaintiffs to mail prescriptions, the interpretation and performance of the Agreements is not at issue.

ESI is likely to argue that the resolution of this dispute will implicate restrictions in the Agreements. But, even if this were true, it does not convert the dispute into one involving the "interpretation or performance" of the Agreements. ESI has made plain that it considers the Agreements to prohibit any other pharmacy from mailing prescriptions to patients in ESI's network. *See* ESI Mot. to Transfer CZ Services at 2; ESI Mot. to Transfer CZ Pharmacy at 2, ECF No. 36; Am. Compl. ¶ 27 & Exs. A, B. In the face of ESI's clear positions, the Court need not engage in any interpretation of the Agreements in order to determine whether ESI's policies violate the AWP laws. And the Court need not engage in any contract interpretation or assessment of performance to understand that ESI's subsidiary pharmacies are permitted to mail prescriptions, while all other pharmacies are forbidden from doing so. *See* Moore Decl. ¶¶ 10, 26. Because of this unequal access, ESI's reasons for terminating CZ Services and CZ Pharmacy and its perception of them as mail-order pharmacies and its termination of the pharmacies, even if correct and justified under the language of the Agreements, are irrelevant. ESI has a policy that ESI's own pharmacies can mail prescriptions to customers, and ESI has refused to allow any other pharmacy the opportunity to do so. Resolving whether ESI has violated applicable AWP statutes thus does not require this Court to interpret the Agreements, nor does it require this Court to assess the parties' performance under them.

### b)   Termination of CZ Services Without Cause

Terminating CZ Services without cause constitutes an independent AWP violation. At the hearing on August 2, ESI's counsel expressly refused to renounce its argument that it was

11

1   permitted to terminate Plaintiffs without cause. 8/2/18 Hr'g. Tr. 18:20-25 ("THE COURT …
2   you're going to stand on the termination without cause at some point in the case; right? You're
3   not going to abandon that as a defense? MR. LYTTLE: No, we would run both defenses,
4   correct."). CZ Services has never questioned whether its Agreement with ESI provides ESI the
5   contractual right to terminate without cause. By "exercising its right to terminate without cause,"
6   ESI Mot. to Transfer CZ Services at 5, ESI has made clear that it refuses to do business with CZ
7   Services no matter the interpretation or performance of the Agreement. As a result, there are <u>no</u>
8   terms and conditions on which ESI will allow CZ Services to fill prescriptions for customers in
9   its network. That decision both violates AWP laws and eliminates any need to "interpret[]" the
10  Agreement or assess the parties' "performance" under the Agreement. The Court can thus "do all
11  this without looking at the for cause part." 8/2/18 Hr'g Tr. 19:1-5.

12                  c)      **Remedies for ESI's Violation of AWP Laws**

13          The injunctive relief that Plaintiffs seek in connection with ESI's AWP violations also
14  does not require interpretation or performance of the Agreements.

15          As in *Telesocial* and *Orange*, the "degree to which" the forum selection clause is "in
16  force"—based on its express language—"depend[s] on whether resolution of the claims related
17  to interpretation of the contract." *Id.* at 5:20-23. The pharmacies seek "injunctive relief enjoining
18  ESI from denying [them] the right to participate as a provider of pharmacy services in ESI's
19  pharmacy networks on the same terms and conditions offered to any other provider." Am.
20  Compl., Prayer for Relief ¶ H. Nothing about this request requires the Court to interpret the
21  Agreements or assess the parties' performance, even if the pharmacies were merely seeking
22  reinstatement.

23          Furthermore, reinstatement would not fully remedy ESI's failure to offer the opportunity
24  to any pharmacy other than its own subsidiaries to mail prescriptions to patients in ESI's
25  network. Fully remedying the AWP violations requires ESI to provide CZ Services and
26  CZ Pharmacy the opportunity to participate on the same terms and conditions as ESI offers to
27  other pharmacies, including its own mail-order pharmacies. So long as ESI's own mail-order
28  pharmacies can fill prescriptions for patients in ESI's network, the Court can order ESI to offer

                                                    12

1    that opportunity to other pharmacies to do so and can prohibit ESI from categorically rebuffing

2    CZ Services' and CZ Pharmacy's inquiries on the basis that it is a "mail order pharmacy service

3    that doesn't accept another mail order pharmacy service." *Id.* ¶ 27 & Ex. A. This relief does not

4    require the Court to interpret the Agreements or assess whether CZ Services or CZ Pharmacy

5    could or would be willing to meet the terms and conditions of the Agreements.

6              **d)    Counts III and VII Fall Outside the Forum Selection Clause**

7              In Count VII, CZ Pharmacy has asserted a claim for a direct violation of Tennessee's

8    AWP statute. For all the reasons discussed above, determining whether ESI has violated

9    Tennessee's AWP law does not depend on "the interpretation or performance" of the

10   Agreements between ESI and CZ Pharmacy.

11             Plaintiffs have also asserted claims for unfair competition in Count III. Under California

12   Business & Professions Code § 17200, unfair competition includes "any unlawful, unfair or

13   fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising…."

14   Among other theories of liability, § 17200 "'borrows violations of other laws and treats them as

15   unlawful practices that the unfair competition law makes independently actionable.'" *Davis v.*

16   *HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) (quoting *Cel-Tech Commc'ns, Inc.*

17   *v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539 (Cal. 1999)). ESI's conduct is unfair because it

18   excludes all pharmacies but its own from the mail-order prescription business. ESI has

19   effectively eliminated consumer choice among mail-order pharmacy services for all patients in

20   its network. Am. Compl. ¶ 76 (ESI's conduct "threatens and harms competition by excluding

21   pharmacies like CZ Services that ESI (rightly or wrongly) views to compete with its captive

22   mail-order pharmacy, and harms vulnerable patients…who will lose their ability to [choose to fill

23   prescriptions with CZ Services] if CZ Services' pharmacies are excluded from the network.").

24   ESI's separate violation of federal AWP laws also underpins CZ Services' unfair competition

25   claim under California law as a "borrowed" violation. *Davis*, 691 F.3d at 1168 (stating that §

26   17200 borrows violations of other statutes and renders them actionable). For the same reasons

27   discussed above, determining that ESI has unfairly competed by privileging and protecting its

28

mail-order pharmacies from competition in the network of ESI patients does not depend on "the interpretation or performance" of the Agreements.

### 2.      Count III: Restraint of Trade Theory of Unfair Competition

Finally, Plaintiffs have brought unfair competition claims under the "borrowing" theory of § 17200 based on ESI's violation of California Business & Professions Code § 16600. Am. Compl. ¶ 75. Section 16600 voids "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind." Cal. Bus. & Prof. Code § 16600.  This statute "'evinces a settled legislative policy in favor of open competition….'" *Tryfonas v. Splunk, Inc.*, No. 17-CV-01420-HSG, 2018 WL 534287, at *3 (N.D. Cal. Jan. 24, 2018) (quoting *Edwards v. Arthur Andersen LLP*, 189 P.3d 285, 291 (Cal. 2008)). For the same reasons discussed above, Plaintiffs' § 16600 claim does not depend on "the interpretation or performance" of the Agreements.

In the Agreements, ESI requires all outside provider pharmacies to refrain from engaging in the business of mail-order prescriptions. Am. Compl. ¶ 24. Only ESI's subsidiary pharmacies are allowed to mail prescriptions to patients in its network. *See id.* ¶¶ 22, 26-27; Moore Decl. ¶ 10. Patients do not select which PBM controls their pharmacy benefits and cannot change PBM if they want to use a (mail order) pharmacy that is not within the PBM's network. *See* Am. Compl. ¶¶ 21, 24 (describing how PBMs coordinate prescription fulfillment for insurers). ESI is the largest PBM in the United States and also operates the largest mail-order pharmacy company in the country. *Id.* ¶ 22. ESI has thus effectively foreclosed competition for its own mail order service for every patient in ESI's network, in violation of § 16600.

Even though the Agreements are the mechanism by which ESI restrains pharmacies from engaging in the mail-order prescription business, the Court does not have to interpret the Agreements or assess the parties' performance under the Agreements in order to conclude that ESI has violated § 16600, because there is no dispute about the contract's scope or terms. ESI has freely admitted that its Agreements prohibit outside provider pharmacies from providing mail-order services. Mot. to Transfer CZ Services at 4; ESI Opp. to TRO at 3, ECF No. 35; Moore Decl. ¶ 26. No contract interpretation is required of the Court. Nor do the Agreements

14

require the Court to assess the parties' performance. ESI admits that its Agreements prohibit Plaintiffs from mailing, even though ESI's own pharmacies can mail prescriptions. Moore Decl. ¶ 10 (ESI's subsidiary mail-order pharmacies provide mail-dispensing services); ¶ 26 (under the Agreement, providers cannot be mail-order pharmacies). The Court's task has nothing to do with assessing the interpretation or performance of the Agreements—but rather in applying the law to ESI's actions barring other pharmacies from mailing prescriptions.

## <u>CONCLUSION</u>

This Court should reject ESI's invitation to rewrite its narrow forum selection clause. The claims that Plaintiffs have asserted do not depend on "the interpretation or performance" of the Agreements. Thus, for all of the reasons set forth above, in their Opposition to ESI's Motions to Transfer, ECF No. 42, and for the reasons stated on the record, the forum selection clause in the Agreements does not require transfer of any of CZ Services' or CZ Pharmacy's claims. Plaintiffs respectfully request that this Court deny ESI's Motions to Transfer. ECF Nos. 17, 36.


Dated: August 9, 2018                    Respectfully submitted,

                                         By: */s/ William C. Jackson*
                                              William A. Isaacson (DC SBN 414788)
                                              (*Pro Hac Vice*)
                                              wisaacson@bsfllp.com
                                              William C. Jackson (DC SBN 475200)
                                              (*Pro Hac Vice*)
                                              wjackson@bsfllp.com
                                              BOIES SCHILLER FLEXNER LLP
                                              1401 New York Avenue, N.W.
                                              Washington, DC 20005
                                              Telephone: (202) 237-2727
                                              Facsimile: (202) 237-6131

                                              Meredith R. Dearborn (SBN 268312)
                                              mdearborn@bsfllp.com
                                              BOIES SCHILLER FLEXNER LLP
                                              425 Tasso Street, Suite 205
                                              Palo Alto, CA 94307
                                              Telephone: (650) 445-6400
                                              Facsimile: (650) 329-8507

                                              *Attorneys for CZ Services, Inc. and CareZone*
                                              *Pharmacy LLC*