QUINN EMANUEL URQUHART & SULLIVAN, LLP
Ethan Glass (Bar No. 216159)
ethanglass@quinnemanuel.com
Michael Lyle (*pro hac vice*)
mikelyle@quinnemanuel.com
Eric Lyttle (*pro hac vice*)
ericlyttle@quinnemanuel.com
1300 I St. NW, Suite 900
Washington, District of Columbia 20005
Telephone:      (202) 538-8000
Facsimile:      (202) 538-8100

Margret M. Caruso (Bar No. 243473)
margretcaruso@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:      (650) 801-5000
Facsimile:      (650) 801-5100

*Attorneys for Defendants Express Scripts*
*Holding Co. and Express Scripts, Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| CZ SERVICES, INC. d/b/a CAREZONE PHARMACY and CAREZONE PHARMACY LLC | Case No. 3:18-cv-4217-JD |
| Plaintiff, | **EXPRESS SCRIPTS' SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTIONS TO TRANSFER** |
| v. | |
| EXPRESS SCRIPTS HOLDING CO. and EXPRESS SCRIPTS, INC., | |
| Defendants. | |

1

**Table of Contents**

2    Introduction ............................................................................................................... 1

3    Argument .................................................................................................................... 3

4    I.      All of the claims fall within the forum-selection clauses ................................... 3

5           A.     Count I: False representation of fact in violation of the Lanham Act ....................... 3

6                1.     The publics statements at issue ............................... 3

7                2.     The Pharmacies renounce any claims about the public statements except about the statement that there was a violation of state law ................ 4

8

9                3.     Claims about the public statement that there was a violation of state law fall within the forum-selection clauses ..................................... 4

10           B.     Count II: Trade libel ....................................................................... 7

11           C.     Count III: Unfair competition ....................................................... 7

12           D.     Count IV: Intentional interference with prospective economic relations ............... 10

13           E.     Count V: Negligent interference with prospective economic relations ................. 11

14           F.     Count VI: Defamation ................................................................. 11

15           G.     Count VII: Violation of Tennessee's AWP statute ..................................... 12

16    II.     Even if the Court finds that some claims are beyond the scope of the forum-selection clauses, the Court should transfer all the claims to the designated forums .......... 12

17    Conclusion .................................................................................................................. 13

18

19

20

21

22

23

24

25

26

27

28

EXPRESS SCRIPTS' SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTIONS TO TRANSFER

1

## Table of Authorities

2

Page

3

**Cases**

4

*Diabetic Care RX, LLC v. Express Scripts, Inc.*,
   2018 U.S. Dist. Lexis 111100 (S.D. Fla. June 29, 2018), *affirmed*

5

   *and adopted*, 2018 U.S. Dist. Lexis 120906 (S.D. Fla. July 17, 2018)......................5, 11, 12

6

*In re Orange*,
   818 F.3d 956 (9th Cir. 2016) ...................................................................................... 1

7

*Manetti-Farrow, Inc. v. Gucci America Inc.*,

8

   858 F.2d 509 (9th Cir. 1988) ...................................................................................... 2

9

*McCusker v. hibu PLC*,
   2015 WL 1600066 (E.D. Pa. Apr. 8, 2015) ............................................................. 12

10

*Paduano v. Express Scripts, Inc.*,

11

   55 F. Supp. 3d 400 (E.D.N.Y. 2014).......................................................................... 5

12

*Sprint Sols., Inc. v. LaFayette*,
   2018 WL 3097027 (W.D. Tenn. June 22, 2018)........................................................ 7

13

*Telesocial Inc. v. Orange S.A.*,

14

   2015 WL 1927697 (N.D. Cal. Apr. 28, 2015) ........................................................ 1, 2

15

*TK Products, LLC v. Buckley*,
   2016 WL 7013470 (D. Or. Nov. 29, 2016) .............................................................. 12

16

17

**Statutory Authorities**

18

28 U.S.C. § 1404(a)................................................................................................... 2, 12

19

42 U.S.C. § 1395w104(b)(1)(A) .................................................................................... 8

20

42 U.S.C. § 1396a ......................................................................................................... 8

21

Cal. Bus. & Prof. Code § 16600.................................................................................... 8

22

Cal. Bus. & Prof. Code § 17200....................................................................................7

23

Tenn. Code Ann. § 56-7-2359 .......................................................................................8

24

25

26

27

28

**Introduction**

As ordered by the Court at the hearing on August 2, 2018, Defendants ("**Express Scripts**") submit this supplemental brief to address the applicability, under the test elucidated in *Telesocial Inc. v. Orange S.A.*, 2015 WL 1927697 (N.D. Cal. Apr. 28, 2015), and approved by *In re Orange*, 818 F.3d 956 (9th Cir. 2016), of the forum-selection clauses in the parties' Provider Agreements to each claim pleaded in the Amended Complaint, ECF 24 ("**Complaint**"), by Plaintiffs CZ Services, Inc. ("**CZ California**") and CareZone Pharmacy LLC ("**CZ Tennessee**," together the "**Pharmacies**"), for purposes of resolving Express Scripts' pending transfer motions, ECF 17, 36.

The Provider Agreements contain broad forum-selection clauses.  For CZ California, "[a]ll litigation between the parties ***arising out of or related in any way*** to the ***interpretation or performance of the Agreement*** shall be litigated in the U.S. District Court for the Eastern District of Missouri."   CZ California Provider Agreement § 7.12 (emphasis added).[1]   For CZ Tennessee, "[a]ll litigation between the parties ***arising out of or related in any way*** to the ***interpretation or performance of the Agreement*** shall be litigated in a U.S. District Court located in the state of Delaware."   CZ Tennessee Provider Agreement[2] § 7.12 (emphasis added).

The genesis of the dispute is easy to trace:   First CZ California and CZ Tennessee each entered into a Provider Agreement with Express Scripts.   Second, each Pharmacy breached its Agreement.   Third, Express Scripts notified the Pharmacies it was going to terminate both Agreements.   Fourth, the Pharmacies began a public smear campaign against Express Scripts in an effort to pressure Express Scripts to cancel the termination.   Fifth, Express Scripts responded with public statements to clear the record about why it was terminating the Agreements.   Sixth, Express Scripts terminated the Agreements, just as it had notified the Pharmacies that it would. The Pharmacies then brought this action based on Express Scripts' decision to terminate the Agreements and its public statements about the termination.   On these facts, it is clear that these

---

[1]   Certain relevant provisions of the CZ California Provider Agreement have been filed at ECF 17-3 as Exhibit 2 to the Declaration of Ethan Glass.

[2]   The CZ Tennessee Provider Agreement has been filed at ECF 35-3 as Exhibit B to the Declaration of Greg Moore.

1   events—and thus the Pharmacies' claims—all arise out of, and are related to, the performance of

2   the Provider Agreements.

3        The Pharmacies' specific claims fall into two categories, both of which "arise out of" and

4   are "related in [some] way" to the "interpretation or performance" of the Provider Agreements:

5   (1) claims about Express Scripts' allegedly unlawful termination of the Provider Agreements

6   (Counts III, IV, and VII); and (2) claims about Express Scripts' allegedly defamatory public

7   statements (Counts I, II, III, IV, V, and VI).   *See* Complaint ¶ 1 ("This is an action against ESI for

8   its publishing of defamatory statements against [the Pharmacies] . . . .   This is also an action for

9   unfair competition and other claims based on [Express Scripts'] unlawful termination of [the

10  Pharmacies] . . . .").

11        In *Telesocial*, this Court explained that the "condition precedent" for a transfer motion is

12  whether the "forum clause applies to [the plaintiff's] claims in the [complaint]."   2015 WL

13  1927697, at *3.   In that case, the defendant "failed to connect the [complaint] to the [contract

14  containing the forum-selection clause]," so the Court held the clause to be inapplicable.   *Id.*

15        As detailed below, and unlike in *Telesocial*, all of the Pharmacies' claims connect to the

16  Provider Agreements, including the parties' performance under them and their termination for

17  cause, and are therefore covered by the broad forum-selection clauses at issue here.   To hold

18  otherwise would enable the Pharmacies to mount in a federal court in California a collateral attack

19  on the reasons for their termination, in contravention of the broad forum-selection clauses at issue

20  here that channel all such litigation to Missouri and Delaware.   Express Scripts thus respectfully

21  submits that these forum-selection clauses apply to every claim in the Complaint.

22        Alternatively, even if this Court concludes that the forum-selection clauses apply only to

23  some, but not all, of the Pharmacies' claims, then Express Scripts respectfully requests that the

24  Court nonetheless grant the transfer motions in full.   The "interest of justice," 28 U.S.C.

25  § 1404(a), will be best served if all of CZ California's claims are transferred together to Missouri,

26  and all of CZ Tennessee's claims are transferred together to Delaware.   The alternative—

27  fracturing the cases across three venues, with some claims proceeding here in California before

28  one judge while others proceed in Delaware and Missouri before other judges—would be

EXPRESS SCRIPTS' SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTIONS TO TRANSFER

needlessly wasteful, inefficient, and contrary to the interest of justice.   Moreover, to further promote efficiency, Express Scripts is willing to stipulate that all claims for both Pharmacies, even those of CZ Tennessee, be transferred to the Eastern District of Missouri, so that all claims and issues can be resolved in a single court by a single judge.

<strong>Argument</strong>

**I.     All of the claims fall within the forum-selection clauses**

**A.     Count I: False representation of fact in violation of the Lanham Act**

In Count I, the Pharmacies advance a claim of false representation of fact in violation of Section 43 of the Lanham Act.   The basis for this claim is certain public statements that Express Scripts made in June 2018, which the Pharmacies contend are "false or misleading."   *See* Complaint ¶¶ 32–44, 60–62.

**1.     The publics statements at issue**

In April 2017, Express Scripts discovered that CZ California appeared to be violating its Provider Agreement in various respects, including by functioning as a mail-order pharmacy rather than a retail pharmacy, and so it sent CZ California a cease-and-desist letter warning that it may terminate the Agreement if the breaches were not remedied.   ECF 27-27.   The parties spent the next year corresponding about CZ California's breaches.   *See* Complaint ¶¶ 29–30; ECF 27-28 through ECF 27-37 (various correspondence in 2017 and 2018).   Ultimately, on April 2, 2018, Express Scripts notified CZ California that it was terminating its Provider Agreement effective July 13, 2018.   *See* Complaint ¶ 30; ECF 27-38 (April 2 letter).   Sixteen days later, on April 18, 2018, Express Scripts notified CZ Tennessee that it was terminating its Provider Agreement, also effective July 13, 2018.   *See* Complaint ¶ 30; ECF 27-26 (April 18 letter).

In response to the notices of termination, the Pharmacies began a public smear campaign against Express Scripts to pressure it to rescind the announced terminations of the Provider Agreements.   *See* ECF 17 at 5–6 (describing this campaign).   The Pharmacies made many public misstatements about Express Scripts and the reasons for their termination, so in June 2018, Express Scripts published statements to explain its termination decisions and correct the public record.

In the challenged statements, Express Scripts explained that it was terminating the Pharmacies because they "were operating in direct violation of the retail provider requirement in their agreements" and because they "had failed to comply with a number of other obligations under their agreements."   Complaint ¶¶ 32, 36.   Express Scripts further noted that "many prescriptions were being mailed to states where the dispensing pharmacy was not licensed, which is a violation of state law."   *Id.*   These public statements are the basis for the Lanham Act claim in Count I, as well as other claims in Counts II–VI.

> ## 2. The Pharmacies renounce any claims about the public statements except about the statement that there was a violation of state law

At the recent TRO hearing on August 2, 2018, counsel for the Pharmacies represented, in response to questions from the Court, that all of the Pharmacies' claims about Express Scripts' public statements concern only the portion of the statement regarding "a violation of state law," and that the Pharmacies do not contend that any other aspect of the statements is false or unlawful, including the statements that the Pharmacies "were operating in direct violation of the retail provider requirement in their agreements" or that they "had failed to comply with a number of other obligations under their agreements."   *See* Transcript at 8–10.   As the Court put it: counsel for the Pharmacies "said they are renouncing any claims based on violations of the agreement."   Transcript at 10.   Express Scripts accordingly limits its analysis of the claims about the public statements solely to the portion of the statement about the violation of state law.

> ## 3. Claims about the public statement that there was a violation of state law fall within the forum-selection clauses

Importantly, the applicable forum-selection clauses apply to any claims "***arising out of or related in any way*** to the ***interpretation or performance of the Agreement***."   CZ California Provider Agreement § 7.12; CZ Tennessee Provider Agreement § 7.12.   Thus, under the plain language of the clauses, claims arising out of or relating to *either* the interpretation *or* the performance of the Agreement are covered.   A claim arising out of or related in some way to the "performance" of the Agreements is therefore captured by the forum-selection clauses, even if it has nothing to do with "interpretation" of the Agreements.   Any other construction of the forum-

EXPRESS SCRIPTS' SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTIONS TO TRANSFER

selection clauses would nullify the plain language of the clauses specifying that they cover claims about the "interpretation *or performance*."

Indeed, other courts have already construed Express Scripts' broad forum-selection clauses to encompass tort claims that are similar to those that the Pharmacies raise in their Complaint. *See Diabetic Care RX, LLC v. Express Scripts, Inc.*, 2018 U.S. Dist. Lexis 111100, at *8 (S.D. Fla. June 29, 2018) (holding that claims that Express Scripts "engaged in bad faith and unfair practices," "tortiously interfered with PCA's business relationships," and "has been unjustly enriched" are "within the scope of the parties' broad forum-selection agreement, which covers any claims 'arising out of or related in any way to the interpretation or performance' of the parties' agreement. When parties include a provision that any disputes 'arising out of' or 'arising under' their agreement are subject to a contractually-agreed upon forum, such language is sufficiently broad to include claims arising in tort."), *affirmed and adopted*, 2018 U.S. Dist. Lexis 120906 (S.D. Fla. July 17, 2018); *Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 433 (E.D.N.Y. 2014) (finding that the language of Express Scripts' forum-selection clauses "is regularly construed to encompass securities, antitrust, and tort claims associated with the underlying contract").

A claim based on the statement that there was a violation of state law falls within the forum-selection clauses for three reasons. **First**, it arises out of the performance of the Provider Agreements. The Pharmacies' deficient performance under the Agreements gave rise to their termination and to Express Scripts' public statements (in response to the Pharmacies' smear campaign) explaining the termination, including the statement about the violation of state law. A claim challenging the veracity of that statement is therefore a claim that arises out of how the Pharmacies performed under the Agreements.

**Second**, it relates to the performance of the Provider Agreements. The statement about a violation of state law refers to one of the breaches by CZ Tennessee of its Provider Agreement. Specifically, CZ Tennessee's Provider Agreement requires it to be "licensed by the appropriate state board of pharmacy and other applicable regulatory authorities," § 1.4, and to have "all required federal, state and local licenses, certificates and permits that are necessary to allow the

Provider, the Pharmacy and pharmacist (as applicable) to dispense Covered Medications to Members," § 2.7.   *See also* § 4.2.c (allowing immediate termination when "Provider ceases to be licensed by the appropriate licensing authority").

As detailed in its letter to CZ Tennessee dated April 18, 2018, Express Scripts discovered that CZ Tennessee was mailing drugs to states where it was not licensed, including Arkansas, California, Nebraska, and South Carolina, in violation of state law.   ECF 27-26 at 3.   Indeed, CZ Tennessee admitted in response to that letter that it was not licensed in at least three states as of April 25, 2018.   ECF 27-39 at 6.   Express Scripts made this discovery based on "claims" for payment "submitted by [CZ Tennessee]" to Express Scripts.   ECF 27-26 at 3.   It noted to CZ Tennessee that "[n]early every state requires pharmacies dispensing prescriptions in their state to maintain a non-resident license if the pharmacy is not located within that state," and that "[u]nlicensed dispensing violates the terms of the Agreement, constitutes malfeasance, and creates the potential for action by a state Board of Pharmacy."   *Id.* at 3–4.   The public statement that is the subject of this Lanham Act claim—that "many prescriptions were being mailed to states where the dispensing pharmacy was not licensed, which is a violation of state law"—is therefore a statement about CZ Tennessee's performance under the Agreement, and specifically a statement about how CZ Tennessee was violating the terms of the Provider Agreement that obligate it to be appropriately licensed by the states where it dispenses medication.   *See* CZ Tennessee Provider Agreement §§ 1.4, 2.7, 4.2.c; *see also* Express Scripts' TRO Opposition, ECF 35, at 5 (discussing CZ Tennessee's dispensing of medications to states where it was not licensed); Moore Declaration, ECF 35-1, ¶¶ 50–57 (same).

***Third***, the damages remedy that the Pharmacies seek will also require them to address their performance of the Agreements.   *See* Complaint ¶ 62 & Prayer for Relief ¶¶ A–F.   As described above, the statement that prescriptions were mailed in violation of state law is just one of the reasons that Express Scripts gave in its public statement; Express Scripts also noted that it was terminating the Agreements because the Pharmacies had "failed to comply" with a number of contractual obligations.   Complaint ¶¶ 32, 36.   To obtain any damages for the one part of this public statement that the Pharmacies maintain is false and defamatory, they will have to

disentangle any harm caused by the allegedly defamatory statement from any harm caused by the rest of the statement, including the parts discussing the Pharmacies' breaches of contract.   This Lanham Act claim will therefore require the parties to delve into the truth of Express Scripts' statements about Pharmacies' deficient performance of the Provider Agreements.   That brings this claim within the forum-selection clauses.

### B.      Count II: Trade libel

In Count II, the Pharmacies advance a claim of trade libel.   Just like the Lanham Act claim, this trade-libel claim is based on the public statements made by Express Scripts that there was a violation of state law.   *See* Complaint ¶¶ 64–70 (challenging the "above-described statements").   This claim therefore arises out of, and relates to, the performance of the Provider Agreements for the same reasons as the Lanham Act claim.

### C.      Count III: Unfair competition

Next, the Pharmacies allege a claim under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, and for unfair competition in violation of Tennessee law.[3] Complaint ¶ 73.   This claim has several parts, all of which "arise out of" and are "related" to the performance or interpretation of the Provider Agreements—indeed, the relief sought under these claims is to force Express Scripts to reinstate the Provider Agreements with the Pharmacies.

*First*, the Pharmacies allege that Express Scripts' conduct is "unlawful and unfair because it constitutes a violation of the laws described in the Counts in this Complaint."   Complaint ¶ 74. This aspect of the claim thus incorporates Counts I–II and IV–VII, and so, for the reasons

---

[3]      Generally, "[t]o establish a claim for unfair competition under Tennessee law, a plaintiff must establish that: (1) the defendant engaged in conduct that "passed off" its organization or services as those of the plaintiff; (2) in engaging in such conduct, the defendant acted with intent to deceive the public as to the source or services offered or authority of its organization; and (3) the public was actually confused or deceived as to the source of the services offered or authority of its organization."   *Sprint Sols., Inc. v. LaFayette*, 2018 WL 3097027, at *5 (W.D. Tenn. June 22, 2018).   The Pharmacies do not specify whether they allege passing off or some novel theory. Although Express Scripts disputes that Tennessee's unfair competition law applies to the claims described, the arguments Express Scripts makes in this section apply *arguendo* to Tennessee law as well as California law.

1    explained in this brief for each of those Counts, this claim is covered by the forum-selection

2    clauses.

3        **Second**, the Pharmacies allege that Express Scripts' "announced termination" of CZ

4    California "is also unlawful and unfair as a violation of California Business & Professions Code

5    § 16600," which, they contend, "voids 'every contract by which anyone is restrained from

6    engaging in a lawful profession, trade, or business of any kind,' and, here, voids the Agreement's

7    prohibition on mail order pharmacies participating in the [Express Scripts] pharmacy network."

8    Complaint ¶ 75.   In other words, this aspect of the claim seeks to have a Court review the terms

9    of the Provider Agreements that bar mail-order pharmacies from participating in Express Scripts'

10   retail pharmacy network and then strike down those provisions.   Such a claim involves not only

11   referencing the Provider Agreements (specifically, the terms prohibiting mail-order pharmacies in

12   the retail network), but also interpretation of those terms (to determine the scope of the prohibition

13   for purposes of adjudicating its lawfulness).   This claim thus clearly falls within the forum-

14   selection clauses by arising out of, and being related to, an interpretation of the Provider

15   Agreements.

16       **Third**, the Pharmacies allege that Express Scripts' "termination of [the Pharmacies] from

17   [Express Scripts'] network is also unlawful as a violation of the AWP provisions of the Medicare

18   Part D Act, 42 U.S.C. § 1395w-104(b)(1)(A), and the Social Security Act, 42 U.S.C. § 1396a, as

19   well as the Tennessee Any Willing Provider Law."   Complaint ¶ 18 (citations omitted).   Express

20   Scripts disputes that any of these laws apply to it.   But assuming *arguendo* that they do, these

21   claims are clearly covered by the forum-selection clauses.

22       The AWP provision of the Medicare Part D Act, 42 U.S.C. § 1395w104(b)(1)(A), provides

23   that "[a] prescription drug plan shall permit the participation of any pharmacy that meets the terms

24   and conditions under the plan."   If a pharmacy does not "meet" those "terms and conditions,"

25   nothing in the Medicare AWP provision bars its termination.

26       Similarly, Tennessee's AWP statute requires a health insurance issuer or managed health

27   insurance issuer to allow licensed pharmacies to join a pharmacy network on "the same terms and

28

-8-                                                    Case No. 3:18-cv-4217-JD

1    conditions."   Tenn. Code Ann. § 56-7-2359.   If a pharmacy breaches those terms, nothing in the

2    Tennessee AWP statute bars its termination.

3            Thus, to prevail on the claim that federal or Tennessee AWP laws were violated, the

4    Pharmacies must establish that they did not breach any of the standard terms and conditions of the

5    Provider Agreement.   To that end, they repeatedly allege that they "complied" with all of the

6    "standard terms and conditions" in their Provider Agreements.   Complaint ¶ 49; *accord id.* ¶ 53

7    ("As stated above, both [Pharmacies] have remained in compliance with all of the terms and

8    conditions of [Express Scripts'] provider agreement."), ¶ 58 ("Given both [Pharmacies'] continued

9    compliance with all terms and conditions of [their] provider agreement[s], [Express Scripts']

10   termination is unlawful under the federal AWP law, [and] unlawful under Tennessee's 'Any

11   Willing Provider' or 'Any Willing Pharmacy' statute . . . .").

12           Indeed, in seeking a TRO based on its claim under the Tennessee AWP law, CZ Tennessee

13   repeatedly argued, and put forth declarations attesting, that it was in "full compliance" with the

14   "terms and conditions" of the Provider Agreement.   *See* CZ TRO Brief, ECF 27, at 5 ("Since

15   joining the [Express Scripts] network, [CZ Tennessee] has been in full compliance with all of

16   [Express Scripts'] terms and conditions."); *id.* at 9 (CZ Tennessee "has agreed to the terms and

17   conditions offered to other participating providers in [Express Scripts'] network and is in full

18   compliance with those terms."); Barnes Declaration, ECF 27-2 ¶ 22 ("To my knowledge, since

19   joining the [Express Scripts] network, [CZ Tennessee] has been in full compliance with all of the

20   terms and conditions in the Agreement with [Express Scripts].").   And CZ California appears to

21   have argued the same.   *See* CZ TRO Brief at 15 ("[CZ California] is also entitled to an injunction

22   on the same basis . . . .").

23           As these allegations, arguments, and declaration statements make clear, the AWP claims

24   are related to the interpretation and performance of the Provider Agreements, and specifically

25   whether the Pharmacies breached any of the standard terms and conditions included in their

26   Agreements.   This claim is therefore subject to the forum-selection clauses in the Provider

27   Agreements.

28

***Fourth***, the Pharmacies allege that Express Scripts' conduct is "unfair" in that it "threatens an incipient violation of an antitrust law, violates the policy or spirit of an antitrust law, or otherwise significantly threatens or harms competition."   Complaint ¶ 77.   It is not clear what theory the Pharmacies are relying on for this claim.   As an "example" of this allegedly anticompetitive conduct, the Complaint refers to Express Scripts' public statements.   *Id.*   To the extent this purportedly "unfair" conduct relates to those public statements, this claim is covered by the forum-selection clauses for the same reason that the Lanham Act claim is covered.   And to the extent that the antitrust theory is that the terms of the Provider Agreements unlawfully exclude mail-order pharmacies, then this claim clearly relates to the interpretation and performance of those Agreements—as the Pharmacies have already acknowledged.   *See* CZ Transfer Opposition, ECF 42, at 2 (acknowledging that CZ California's antitrust claims against Express Scripts in a prior lawsuit "appeared to fall within the scope of the forum selection clause"); *id.* at 5–6 (similar).

***Fifth***, the Pharmacies allege that Express Scripts' conduct "is fraudulent" because the public statements it made about terminating the Pharmacies are "false, misleading, and/or likely to deceive consumers."   Complaint ¶ 78. As this aspect of the claim relates to the public statements covered by the Lanham Act claim, this claim is covered by the forum-selection clauses for the same reason that the Lanham Act claim is covered.

***Sixth***, as a remedy for this claim, the Pharmacies seek both a declaration that Express Scripts has improperly terminated the Provider Agreements and an injunction that would require Express Scripts to reinstate its Provider Agreements.   Complaint Prayer for Relief ¶¶ G, H. Asking for this relief establishes beyond any doubt that this claim is closely related to the performance of the Provider Agreements, as the Pharmacies seek to have the Court undo Express Scripts' exercise of its contractual right to terminate—*i.e.* undo its performance of the Provider Agreements.   This claim therefore readily falls within the Provider Agreements' broad forum-selection clauses.

### D.        Count IV: Intentional interference with prospective economic relations

In Count IV, the Pharmacies advance a claim of intentional interference with prospective economic relations.   They contend that Express Scripts intentionally interfered with their

prospective economic relations in two ways: (1) by making the public statements discussed above, which were allegedly "defamatory and constituted trade libel," Complaint ¶ 87, and (2) by "improperly terminating" the Pharmacies, *id.* ¶ 89, when Express Scripts "knew or should have known that its termination of the CZ Services pharmacies was unlawful under state and federal AWP laws, as applicable," *id.* ¶ 92.   Aspect (1) of this claim raises the same issues about the public statements as the Lanham Act and trade-libel claims discussed above, and so this claim is covered by the forum-selection clauses for the same reasons as those claims.   Aspect (2) of this claim raises the same issues about the AWP laws discussed above in Count III, and so this claim is also covered by the forum-selection clauses for the same reasons that Counts III is covered.   *See also Diabetic Care RX*, 2018 U.S. Dist. Lexis 111100, at *8 (holding that a terminated pharmacy's claim of tortious interference with business relationships is "within the scope" of Express Scripts' "broad forum-selection agreement").

**E.      Count V: Negligent interference with prospective economic relations**

In Count V, the Pharmacies advance a claim of negligent interference with prospective economic relations.   Just like the Lanham Act claim, this claim is based on the public statements made by Express Scripts that there was a violation of state law.   *See* Complaint ¶¶ 96–99 (challenging the "statements described above" and "above-described communications").   This claim therefore arises out of, and relates to, the performance of the Provider Agreements for the same reasons as the Lanham Act claim.   *See also Diabetic Care RX*, 2018 U.S. Dist. Lexis 111100, at *8 (holding that a terminated pharmacy's claim of tortious interference with business relationships is "within the scope" of Express Scripts' "broad forum-selection agreement").

**F.      Count VI: Defamation**

In Count VI, the Pharmacies advance a claim of defamation.   Just like the Lanham Act claim, this defamation claim is based on the public statements made by Express Scripts that there was a violation of state law.   *See* Complaint ¶¶ 101–105 (challenging the "above-described publications").   This claim therefore arises out of, and relates to, the performance of the Provider Agreements for the same reasons as the Lanham Act claim.

### G.      Count VII: Violation of Tennessee's AWP statute

Finally, in Count VII, the Pharmacies allege that Express Scripts violated the Tennessee AWP statue when it "terminated" them from its network.    Complaint ¶ 108.    This claim raises the same issues regarding the Tennessee AWP law that are discussed above with respect to Count III, and for the same reasons, this claim is subject to the forum-selection clauses in the Provider Agreements.

## II.      Even if the Court finds that some claims are beyond the scope of the forum-selection clauses, the Court should transfer all the claims to the designated forums

Even if this Court determines that some of Plaintiffs' claims fall outside the forum-selection clauses, it should nonetheless transfer all of CZ California's claims to the Eastern District of Missouri and all of CZ Tennessee's claims to the District of Delaware to promote the interests of justice.    Under 28 U.S.C. § 1404(a), a court "may transfer any civil action to any other district or division where it might have been brought" when it serves "the interest of justice."

Transferring some claims while retaining others "would neither promote justice nor be an efficient use of judicial, or the parties', resources." *Diabetic Care RX*, 2018 U.S. Dist. Lexis 111100, at *13 (S.D. Fla. July 2, 2018); *accord TK Products, LLC v. Buckley*, 2016 WL 7013470, at *7 (D. Or. Nov. 29, 2016); *see also McCusker v. hibu PLC*, 2015 WL 1600066, at *5 (E.D. Pa. Apr. 8, 2015) (transferring defamation claim "related to what was said when Plaintiff was terminated" even though it fell outside the governing forum-selection clause because transfer of all claims served the interests of justice).

Any claims that this Court might determine fall outside the forum-selection clauses will nonetheless share many relevant facts with the claims this Court finds within the scope of the forum-selection clauses.    The convenience of the parties and witnesses counsels in favor of keeping the claims of each pharmacy in a single court, and judicial economy demands that claims arising from a single contractual relationship and events not be split between two courts. Accordingly, this Court should transfer all of each pharmacy's claims to the designated court if it finds that any claim falls under the applicable forum-selection clause.

1    Moreover, Express Scripts is willing to stipulate that the claims of CZ Tennessee may be

2    transferred to the Eastern District of Missouri, notwithstanding the Provider Agreement's

3    designation of the District of Delaware, so that all the claims in this case can be resolved by a

4    single judge in a single court, in the interest of justice and in order to further promote efficiency.

5                                             **Conclusion**

6    For the foregoing reasons, the forum-selection clauses apply to the Pharmacies' claims, and

7    Express Scripts respectfully requests that this Court transfer CZ California's claims to the Eastern

8    District of Missouri and transfer CZ Tennessee's claims to the District of Delaware.   In the event

9    that the Court finds that some, but not all, of the claims fall under the forum-selection clauses,

10   Express Scripts respectfully requests that the Court nonetheless transfer all the claims to the

11   designated courts in the interests of justice.

12

13   Dated: August 9, 2018                    Respectfully submitted,

14                                            QUINN EMANUEL URQUHART &
                                              SULLIVAN, LLP
15

16
                                             By  */s/ Ethan Glass*
17                                               Ethan Glass (Bar No. 216159)
                                                 ethanglass@quinnemanuel.com
18                                               Michael Lyle (*pro hac vice*)
                                                 mikelyle@quinnemanuel.com
19                                               Eric Lyttle (*pro hac vice*)
                                                 ericlyttle@quinnemanuel.com
20                                               1300 I St. NW, Suite 900
                                                 Washington, District of Columbia 20005
21                                               Telephone:     (202) 538-8000
                                                 Facsimile:     (202) 538-8100
22
                                                 Margret M. Caruso (Bar No. 243473)
23                                               margretcaruso@quinnemanuel.com
                                                 555 Twin Dolphin Drive, 5th Floor
24                                               Redwood Shores, California 94065
                                                 Telephone:     (650) 801-5000
25                                               Facsimile:     (650) 801-5100

26                                               *Attorneys for Defendants Express Scripts*
                                                 *Holding Co. and Express Scripts, Inc.*
27

28