UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| CZ SERVICES, INC., et al., | Case No. 3:18-cv-04217-JD |
| Plaintiffs, | |
| v. | **ORDER RE TRANSFER** |
| EXPRESS SCRIPTS HOLDING COMPANY, et al., | Re: Dkt. Nos. 17, 36 |
| Defendants. | |

Plaintiffs CZ Services, Inc. ("CZ") and CareZone Pharmacy LLC ("CareZone") are retail pharmacies with their principal places of business in Richmond, California, and Nashville, Tennessee, respectively. CareZone is a wholly owned subsidiary of CZ. Defendants Express Scripts Holding Company and Express Scripts, Inc. (collectively, "ESI") manage pharmacy benefits for over 80 million Americans. ESI has over 67,000 pharmacies that participate in its retail network. All parties are Delaware corporations. Dkt. No. 24 ¶¶ 13-17. Until recently, CZ and CareZone were two of ESI's participating pharmacies, and were subject to the terms of ESI's standard-form pharmacy provider agreement.

The parties' relationship began to sour in April 2017, when ESI says it discovered that CZ allowed patients to receive prescriptions through the mail by designating an agent who would walk in, pick up, and mail out prescriptions. *See* Dkt. Nos. 26-6, 27-28, 26-8. In ESI's view, this practice was a deliberate effort to circumvent the provider agreement's ban on mail-order pharmacies, and CZ was unable to convince ESI otherwise. Dkt. No. 26-14. In April 2018, ESI advised CZ that it would be removed from ESI's retail pharmacy network effective July 13, 2018. Dkt. No. 26-22. A few days later, ESI also sent a notice of termination to CareZone. Dkt. No. 26-4.

After that, the relationship between the parties deteriorated even further. ESI accused CareZone and CZ of launching a "public smear campaign." Dkt. No. 17 at 5-6. ESI responded by posting on its website that plaintiffs "were operating in direct violation of the retail provider requirement in their agreements, had failed to comply with a number of other obligations under their agreements, and . . . many prescriptions were being mailed to states where the dispensing pharmacy was not licensed in violation of state law." Dkt. No. 24 ¶ 32. ESI added on Twitter, "We also believe in #PharmacyForAll: Pharmacy that delivers quality care, affordable access, and operates legally. Good news is that most every one of the 70,000 pharmacies we work with shares those traits. Then there is CareZone." *Id.* ¶ 34.

CZ sued ESI on July 13, 2018, alleging claims under the Lanham Act and for defamation, unfair business practices and various torts under California law. Dkt. No. 1. The complaint triggered a barrage of other filings. On July 23, ESI moved under 28 U.S. Code Section 1404(a) to transfer CZ's claims to the Eastern District of Missouri, based on a forum-selection clause in CZ's provider agreement. Dkt. No. 17. On July 25, an amended complaint was filed. CareZone joined the case as a plaintiff and added a claim under Tennessee's "Any Willing Provider" ("AWP") law. Dkt. No. 24. On July 26, CareZone moved for a temporary restraining order seeking reinstatement to ESI's pharmacy network. Dkt. No. 27. The Court ordered ESI to oppose the TRO and set a hearing and a status conference for August 2. On July 31, ESI filed its opposition to the TRO, Dkt. No. 35, and also filed a separate 1404(a) transfer motion for CareZone based on the forum-selection clause in CareZone's provider agreement, Dkt. No. 36. At the August 2 hearing, the Court directed the parties to file supplemental briefs on whether the claims in the amended complaint are covered by the forum-selection clauses in plaintiffs' provider agreements. Dkt. No. 49. The Court held the TRO in abeyance pending resolution of the transfer motions, which this order now resolves. *Id.*

## DISCUSSION

ESI does not dispute that venue is proper in this district under 28 U.S. Code Section 1391(b). ESI's motions to transfer are based on forum-selection provisions in its provider agreements with CZ and CareZone. The forum clause in CareZone's provider agreement states,

"All litigation between the parties arising out of or related in any way to the interpretation or performance of the Agreement shall be litigated in a U.S. District Court located in the state of Delaware." Dkt. No. 34-8 § 7.12. The forum clause in CZ's provider agreement states, "All litigation between the parties arising out of or related in any way to the interpretation or performance of the Agreement shall be litigated in the U.S. District Court for the Eastern District of Missouri," or in Missouri state court. Dkt. No. 18-4 § 7.12.

Plaintiffs do not challenge the validity of the forum-selection clauses, but contend the case should stay here. Forum-selection clauses "may be enforced through a motion to transfer under § 1404(a)." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 59 (2013). When "parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Id.* at 62. "'[E]nforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.' For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote 'the interest of justice,' 'a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'" *Id.* at 63 (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 31-33 (Kennedy, J. concurring)). This is not to say that a forum-selection clause will always be enforced, no matter what. It means that the Court, in weighing a transfer, may consider "public-interest factors only" such as the interest of justice, and not arguments about witness convenience or other "private" concerns of the litigants. *Id.* at 64.

Critically, a forum clause applies only to claims within its scope. *See Telesocial Inc. v. Orange S.A.*, No. 14-CV-03985-JD, 2015 WL 1927697, at *3 (N.D. Cal. Apr. 28, 2015), *aff'd*, *In re Orange, S.A.*, 818 F.3d 956 (9th Cir. 2016). In *Telesocial*, this Court discussed a forum clause almost identical to the ones here, and concluded that a claim does not "arise out of" or "relate to" an agreement if it can be "'adjudicated without analyzing whether the parties were in compliance'" with the agreement. *Telesocial*, 2015 WL 1927697, at *3 (quoting *Manetti-Farrow, Inc. v. Gucci Am. Inc.*, 858 F.2d 509, 514 (9th Cir. 1988)). The clauses do not apply to any and all litigation between the parties. *In re Orange, S.A.*, 818 F.3d at 962. They apply only to the claims

in the amended complaint that will require the interpretation of the agreements, or a determination of whether the parties complied with their terms. *Id.* at 963.

These principles weigh against a transfer because most of the claims in the amended complaint arise entirely outside the provider agreements. The defamation claim (Count 6), and the related dependent claims under the Lanham Act (Count 1), the defamation portions of the California Unfair Competition Law ("UCL") claim (Count 3), and the claims for trade libel (Count 2) and intentional and negligent interference with prospective economic relations (Counts 4 and 5) will stand or fall without any reference to the agreements. These claims are premised on ESI's public statements that plaintiffs flouted state pharmacy laws, operated illegally, and put the health of patients at undue risk. *See, e.g.*, Dkt. No. 24 ¶¶ 33, 35, 37, 39, 40. They are not based on the terms of the provider agreements, and plaintiffs have expressly represented that they will not sue on any statements about plaintiffs' alleged violations of the provider agreements. *See, e.g.*, Dkt. No. 52 at 6. Consequently, the defamation claims will depend on evidence and proof unrelated to the provider agreements.

ESI has not offered a compelling reason in support of a different conclusion. It suggests the defamation claims arose out of the performance of the provider agreements because ESI made the disputed statements after deciding that plaintiffs had violated the terms of the agreements. Maybe so, but the timing of ESI's remarks is not the issue. The determinative question is whether the defamation claims will require the Court or the trier of fact to make any findings about the adequacy of the parties' performance under the provider agreements. As plaintiffs' claims currently stand, with their focus on ESI's statements about health and safety violations, they do not.

ESI also contends that its statements about CareZone relate to the provider agreement because the agreement required CareZone to be licensed under state law. Even so, that also does not entail any reliance on the provider agreement. CareZone had an independent and free-standing obligation to conform to state pharmacy and patient safety laws, and the truth *vel non* of ESI's statements about CareZone's compliance will be measured under those laws. The fact that the

4

provider agreement says that plaintiffs were expected to be law-abiding merely begs the question of whether they were, and does not supply the standards by which the question will be answered.

ESI also says any damages theory would have to calculate and exclude harm caused solely by statements that plaintiffs breached their provider agreements. Whether damages would be assessed in this way is far from clear, and even if they were, the proposed calculation would not require the Court to interpret the agreements or to determine whether CZ or CareZone failed to meet their contractual obligations.

The same is true for the portion of the UCL claim alleging restraint of trade. Plaintiffs contend that ESI has improperly suppressed competition by forcing participating pharmacies to agree not to engage in mail-order business. *See* Dkt. No. 24 ¶¶ 75, 77. ESI acknowledges that it does not allow mail-order pharmacies to participate in its retail network. *See, e.g.*, Dkt. No. 24 Exh. A ("We're a mail-order pharmacy that doesn't accept another mail-order pharmacy"); Dkt. No. 36 at 2. Determining whether this conduct amounts to an incipient violation of the antitrust law, *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999), will turn on established principles of competition law, even if the agreement itself may be evidence of an anticompetitive practice. *Compare with Cung Le v. Zuffa, LLC*, 108 F. Supp. 3d 768, 777 (N.D. Cal. 2015) (antitrust claims were brought to "interpret or enforce" agreements because parties had "differing opinions of the meaning of contractual language directly challenged by Plaintiffs"). The UCL claim will also require a determination of injury in fact and other issues outside the provider agreements.

The only claim that indisputably falls within the scope of the forum clause is the Tennessee AWP claim (Count 7). CareZone alleges that its termination was illegal under the AWP because it was participating in ESI's provider network on the same terms and conditions as other pharmacies. Dkt. No. 24 ¶ 108; *see also* Dkt. No. 27 at 9 (CareZone "agreed to the terms and conditions offered to other participating providers in ESI's network and is in full compliance with those terms"). This claim necessarily implicates the terms of the provider agreement, and whether CareZone complied "in full" with them. The exhibits attached to CareZone's TRO application

1   underscore this point by showing that ESI terminated it for ostensible violations of the provider

2   agreement that would trigger a for-cause termination.  Dkt. Nos. 26-4, 26-22.

3           For similar reasons, the AWP portion of the UCL claim is subject to the forum-selection

4   clause.  Plaintiffs allege that ESI acted unfairly or illegally under the UCL by relying on "false or

5   pretextual justification[s] to terminate its provider agreements with the CZ Services entities."  Dkt.

6   No. 24 ¶ 76.  Whether those justifications were false or pretextual clearly depends in part on the

7   plaintiffs' performance under the provider agreements.

8           What, then, is the appropriate disposition of the transfer request when most of plaintiffs'

9   claims do not come within the scope of the forum-selection clauses?  Transferring just the AWP

10  and AWP-based portion of the UCL claims, and keeping the bulk of the case here, makes little

11  sense.  As ESI says, "fracturing the cases across three venues . . . would be needlessly wasteful,

12  inefficient, and contrary to the interest of justice."  Dkt. No. 53 at 2-3.  That is all the more true

13  since a good argument can be made that the transferee courts would not have subject matter

14  jurisdiction over the state law claims.  This Court's jurisdiction arises out of plaintiffs' federal

15  Lanham Act claim, which is not covered by the forum-selection clauses, and the parties do not

16  appear to be diverse for jurisdiction purposes.  While CZ's provider agreement points to Missouri

17  state court in situations where the federal court lacks jurisdiction, ESI has never requested or even

18  mentioned transfer to Missouri state court through the doctrine of forum non conveniens.  *Atl.*

19  *Marine*, 571 U.S. at 60.  CareZone's forum clause specifies only federal district court in Delaware

20  and does not identify an alternative non-federal forum.  Dkt. No. 34-8 § 7.12.

21          ESI's suggestion of transferring the entire case to the Eastern District of Missouri is not

22  well taken.  The parties did not contemplate that result in the forum-selection clauses.  They

23  agreed to venue in Missouri federal court only for claims by CZ within the scope of the forum

24  clause.  They did not agree to send all disputes between both plaintiffs and ESI there.  There is no

25  contractual basis for ESI's suggestion, and no concern that declining to transfer the matter *in toto*

26  to Missouri would "unnecessarily disrupt the parties' settled expectations."  *Atl. Marine*, 571 U.S.

27  at 66.  Besides, transfer to Missouri would effectively supplant plaintiffs' traditional right to

28  choose the venue of its action with ESI's choice, for no good reason.

The optimal outcome is to retain all of plaintiffs' claims here for supervision "in a single court by a single judge," to use ESI's words. Dkt. No. 53 at 3. That outcome is most consistent with the fair and efficient administration of justice, and the parties' contractual expectations. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 13-3349 SI, 2014 WL 1477748, at *1 (N.D. Cal. Apr. 14, 2014); *Farmland Indus., Inc. v. Frazier-Parrott Commodities, Inc.*, 806 F.2d 848, 852 (8th Cir. 1986), *abrogated on other grounds by Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495 (1989).

## CONCLUSION

ESI's motions to transfer are denied.

**IT IS SO ORDERED.**

Dated: August 20, 2018

_____
JAMES DONATO
United States District Judge