UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CZ SERVICES, INC., et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>EXPRESS SCRIPTS HOLDING COMPANY, et al.,<br><br>　　　　　Defendants. | Case No. 3:18-cv-04217-JD<br><br>**ORDER RE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**<br><br>Re: Dkt. No. 27 |

Plaintiff CareZone Pharmacy LLC ("CareZone"), a Tennessee pharmacy, seeks a temporary restraining order and an order to show cause for a preliminary injunction on the basis of the Tennessee "Any Willing Provider" law, Tenn. Code Ann. § 56-7-2359 ("AWP"), which prohibits insurers from excluding a licensed pharmacy from their networks if the pharmacy agrees to the same terms and conditions offered to other participants. Dkt. No. 27. CareZone says that it willingly accepted the terms offered by defendant Express Scripts, Inc. ("ESI"), a pharmacy benefits manager ("PBM"), for participation in ESI's retail pharmacy network, but that ESI nevertheless terminated it on pretextual claims of breach of its participation agreement. *Id*. at 4-6. CareZone contends the real reason behind the termination was ESI's belief that CareZone operates a rival mail order service and is otherwise a competitive threat. *Id*. at 1. CareZone asks to be restored to ESI's network pending resolution of the case.

**STANDARDS**

CareZone's noticed TRO motion is subject to the same standards that apply to a preliminary injunction motion. *Fang v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 16-cv-06071-JD, 2016 WL 9275454, at *1 (N.D. Cal. Nov. 10, 2016), *aff'd*, 694 F. App'x 561 (9th Cir. 2017). Because CareZone seeks a return to its status *pendente lite* as a participating pharmacy in

ESI's network -- its last, uncontested status preceding this litigation -- the TRO request is evaluated under the standards for a prohibitory injunction, and not under the heightened inquiry for a mandatory injunction. *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 and n.4 (9th Cir. 2015) (en banc).

Preliminary injunctions are "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) ("A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'") (citation omitted and emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he [or she] is likely to succeed on the merits, that he [or she] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his [or her] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20; *see also Garcia*, 786 F.3d at 740 (same). In our circuit, a plaintiff may also obtain a preliminary injunction under a "sliding scale" approach by raising "serious questions" going to the merits of its claims and showing that the balance of hardships tips "sharply" in plaintiff's favor. *A Women's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018); *Vanguard Outdoor LLC v. City of Los Angeles,* 648 F.3d 737, 740 (9th Cir. 2011). But "at an irreducible minimum," the party seeking the injunction "must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation." *Airbnb, Inc. v. City and County of San Francisco*, 217 F. Supp. 3d 1066, 1072 (N.D. Cal. 2016) (citation omitted); *see also Garcia*, 786 F.3d at 740 (likelihood of success on the merits is "the most important" factor, and a failure to show that likelihood relieves any need to consider the remaining *Winter* elements).

## DISCUSSION

CareZone has not shown serious questions or a likelihood of success on the merits of the AWP claim at this stage of the case. The AWP prohibits a "health insurance issuer" or "managed health insurance issuer" from denying a licensed pharmacy or pharmacist "the right to participate as a participating provider in any policy, contract or plan on the same terms and conditions as are offered to any other provider of pharmacy services under the policy, contract or plan." Tenn.

Code Ann. § 56-7-2359(a)(1). In effect, the AWP "requires insurance companies to include all pharmacies on their lists of providers if the pharmacy agrees to the terms and conditions offered to others on the list." *Reeves-Sain Medic., Inc. v. BlueCross BlueShield of Tenn.*, 40 S.W.3d 503, 505 (Tenn. Ct. App. 2000).

The key concept here is "insurer," and it is far from clear that ESI is a health insurance or coverage issuer within the purview of the AWP. The statute does not define "health insurance issuer" and the parties have not identified any Tennessee court decisions that have treated a PBM as subject to the AWP. Other courts have typically concluded that PBMs are not health insurers, but rather are "third-party health plan administrators which manage and administer prescription drug benefits on behalf of health insurance plans." *Pharm. Care Mgmt. Ass'n. v. Tufte*, 297 F. Supp. 3d 964, 970 (D.N.D. 2017); *see also Beeman v. TDI Managed Care Servs., Inc.*, 449 F.3d 1035, 1037-38 (9th Cir. 2006); *In re Express Scripts, Inc., PBM Litig.,* No. 4:05-MD-01672 SNL, 2008 WL 2952787, at *3 (E.D. Mo. July 30, 2008) ("PBMs operate as middlemen" for insurers).

CareZone does not contest this general understanding of PBMs. *See* Dkt. No. 27 at 3-4. Even so, it contends Tennessee treats PBMs as insurers for AWP purposes. It points to Section 56-2-125(a)(6) of the Tennessee Code Annotated, which defines "health insurance issuer" to include PBMs. The problem for CareZone, however, is that this definition is not in the same part of the Tennessee Code as the AWP and has not been construed to apply to it. In addition, the fact that the Tennessee legislature expressly included PBMs in one section of the code but not in the AWP weighs against CareZone's position.

CareZone's reliance on the unpublished opinions of a Tennessee trial court and intermediate appellate court are also unfruitful for its merits contentions. In both cases, the defendant indisputably issued health insurance policies. *See Walgreens Mail Serv., Inc. v. BlueCross BlueShield of Tenn., Inc. et al.*, No. CH0518653, 2009 WL 9980329, at *1 (Tenn. Ch. June 18, 2009); *Gray v. City of Memphis*, No. W2004-00976-COA-R3-CV, 2005 WL 652786, at *1 (Tenn. Ct. App. Mar. 22, 2005). To be sure, the court in *Gray* found Memphis to be covered by the AWP even though it was not a traditional insurance company, but that finding turned on the fact that the city issued health insurance coverage under a benefit plan in exchange for the

3

1  payment of premiums by plan members.  *Gray*, 2005 WL 652786, at \*6-7.  The same has not been

2  established for ESI.

3  CareZone's suggestions that ESI is covered by the AWP as a managed care health

4  insurance issuer or an agent of health insurers are equally unavailing.  While the AWP

5  incorporates a definition of managed health insurance issuer from another part of the code, *see*

6  Tenn. Code Ann. § 56-7-2359(d), that definition omits any reference to PBMs and again better fits

7  the typical understanding of a health insurer as an entity that provides insurance policies or

8  coverage.  *See* Tenn. Code Ann. § 56-32-128(a).  The agency allegation is purely conclusory and

9  consequently of no moment.

10  This is not to say that ESI may not be found to qualify as an insurer under the AWP if the

11  record ultimately supports that.  As CareZone recognizes, in the absence of clear statutory

12  guidance, an intensive and "fact-specific" inquiry might illuminate whether the AWP applies to

13  ESI.  Dkt. No. 59 at 4.  But at this juncture, the facts potentially relevant to ESI's business and

14  practices are complicated and hotly disputed, as the parties' voluminous and conflicting

15  declarations and exhibits for this motion amply illustrate.  Resolution of these questions is not

16  appropriate in the constrained context of a TRO or preliminary injunction motion.  *See Int'l.*

17  *Molders' and Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986).

18  The contract dispute between the parties also undercuts CareZone's showing on the merits.

19  ESI advised CareZone in April 2018 that its participation in ESI's retail network would be

20  terminated for a variety of reasons under the Pharmacy Provider Agreement ("PPA") the parties

21  had in place.  Dkt. No. 27-2, Ex. G (agreement); Dkt. No. 27-12, Ex. 14 (termination letter).

22  These reasons included alleged licensing deficiencies and reporting omissions, among others.

23  This is an important factor because the AWP does not bar the removal of pharmacies that violate

24  the contractual terms common to all network participants.  As CareZone acknowledges, to

25  maintain a claim under the AWP, it must establish that it was in compliance with the same terms

26  and conditions as every other pharmacy in the ESI network.  Tenn. Code Ann. § 56-7-2359(a)(1);

27  Dkt. No. 27 at 9.  Whether that condition has been met is another highly contested battleground

28  between the parties, which is again accompanied by a mass of conflicting evidence in the parties'

dueling declarations. CareZone attempts to dismiss the contractual issues as a bundle of "false and pretextual" allegations, Dkt. No. 27 at 10, but that merely begs the question of whether the PPA was breached.

In light of all of these circumstances, it cannot be said that CareZone has raised serious questions or shown a likelihood of success under the AWP. Consequently, the Court finds that CareZone has not made a showing on the merits that is sufficient for the extraordinary relief of a TRO.

While that is enough to deny the motion under all of the governing standards, it is also worth noting that CareZone has not shown a likelihood of irreparable harm in the absence of injunctive relief, or that the balance of hardships tips sharply in its favor. To start, CareZone waited too long before seeking a TRO. ESI advised it on April 18, 2018, that it would be terminated from the network effective July 13, 2018, which amounted to almost three months of notice. Dkt. No. 27-12, Ex. 14. Despite that long runway, CareZone did not launch the TRO motion until July 26, 2018, almost two weeks after the termination occurred. Dkt. No. 27. In total, CareZone let 99 days go by before filing the motion. This delay sharply undercuts a likelihood of irreparable harm. *See Garcia*, 786 F.3d at 746.

CareZone tries to explain this undue delay by saying that "it was not clear that ESI would actually terminate" it. Dkt. No. 59 at 8. The crystal clear language of the April 2018 notice of termination readily establishes otherwise. The fact that the parties may have been engaged in dispute resolution talks is also no excuse. CareZone had concrete notice that its participation in the ESI network would end on July 13, 2018, and should not have assumed that a settlement would be reached. For TRO purposes, it properly bears the consequences of making a risky bet on a speculative outcome.

CareZone's contention that its possible harm is not compensable with monetary damages is also unpersuasive. The statements about customer losses are effectively a claim for lost revenue and profit, which is redressable with an award of damages and consequently not a basis for finding irreparable harm. *See Cotter v. Desert Palace, Inc.*, 880 F.2d 1142, 1145 (9th Cir. 1989). CareZone has already quantified its financial losses from lost business on a preliminary basis.

5

*See, e.g.*, Dkt. No. 69-1 at ¶¶ 21-26. CareZone's statements about a possible loss of goodwill or reputation are conclusory and speculative, and presented by interested parties, namely its chief pharmacist, and its founder and sole owner. *See, e.g.,* Barnes Decl. (chief pharmacist), Dkt. No. 27-2 at ¶¶ 1, 28-34; Schwartz Decl. (founder and owner), Dkt. No. 69-1 at ¶¶ 1, 37-38. They are properly discounted on those grounds. *Oakland Trib., Inc. v. Chronicle Publ'g. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985).

The final element of whether an injunction is in the public interest also need not be discussed, but for completeness the Court finds no compelling showing on this score. There is no evidence that any CareZone customer has been denied access to medications as a result of the termination by ESI, or has suffered or is likely to suffer a health-related injury. There is no evidence that any customer has been forced to pay significantly more for their prescriptions. While it might be that there is a degree of inconvenience in switching pharmacies, the record does not show that it rises to the level of a public interest concern.

## CONCLUSION

The TRO and request for an order to show cause are denied.

**IT IS SO ORDERED.**

Dated: October 15, 2018

JAMES DONATO
United States District Judge