QUINN EMANUEL URQUHART & SULLIVAN, LLP
Ethan Glass (Bar No. 216159)
ethanglass@quinnemanuel.com
Michael J. Lyle (*pro hac vice*)
mikelyle@quinnemanuel.com
Eric C. Lyttle (*pro hac vice*)
ericlyttle@quinnemanuel.com
Meghan McCaffrey (*pro hac vice*)
meghanmccaffrey@quinnemanuel.com
1300 I St. NW, Suite 900
Washington, District of Columbia 20005
Telephone:     (202) 538-8000
Facsimile:     (202) 538-8100

Margret M. Caruso (Bar No. 243473)
margretcaruso@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

*Attorneys for Express Scripts Holding Co. and Express Scripts, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| CZ SERVICES, INC. d/b/a CAREZONE PHARMACY and CAREZONE PHARMACY LLC,<br><br>Plaintiffs,<br><br>v.<br><br>EXPRESS SCRIPTS HOLDING CO. and EXPRESS SCRIPTS, INC.,<br><br>Defendants.<br><hr>EXPRESS SCRIPTS, INC.,<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>CZ SERVICES, INC., d/b/a CAREZONE PHARMACY; CAREZONE PHARMACY LLC; CARE ZONE INC.; and JONATHAN SCHWARTZ,<br><br>Counterclaim-Defendants. | Case No. 3:18-cv-4217-JD<br><br>**EXPRESS SCRIPTS' NOTICE OF MOTION AND MOTION TO ENJOIN CAREZONE FROM HARASSING EXPRESS SCRIPTS' CLIENTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: August 22, 2019<br>Time:           10:00 AM<br>Place:          Courtroom 11<br>Judge:         Judge James Donato |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on August 22, 2019, at 10:00 a.m., consistent with Express Scripts' concurrently filed Motion to Shorten Time, or as soon thereafter as the matter may be heard in the above-entitled Court, Defendants Express Scripts Holding Co. and Express Scripts, Inc., through their undersigned counsel, will bring for hearing, in Courtroom 11 of the United States Courthouse located at 450 Golden Gate Avenue, San Francisco, California, their motion to enjoin CareZone from prosecuting its vexatious complaint against Express Scripts' clients.

As discussed in the memorandum below, Plaintiffs CZ Services, Inc.'s, and CareZone Pharmacy LLC's (collectively, "**CareZone**") motions and filings before multiple courts regarding the same facts and claims, including this newest complaint against certain of Express Scripts' clients, have been harassing, and vexatious.  Accordingly, CareZone should be prohibited from pursuing the action it has initiated against those clients, prohibited from filing further complaints arising out of the same set of facts in this case without first securing leave of Court, and ordered to show cause why it should not be sanctioned for its conduct.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the declaration of Ethan Glass, and such oral argument as may be presented at the time of the hearing.

DATED: August 5, 2019               Respectfully submitted,

                                    QUINN EMANUEL URQUHART & SULLIVAN, LLP


                                    By /s/   Ethan Glass
                                       Ethan Glass (Bar No. 216159)
                                       Margret M. Caruso (Bar No. 243473)
                                       Michael Lyle (*pro hac vice*)
                                       Eric Lyttle (*pro hac vice*)
                                       Meghan McCaffrey (*pro hac vice*)

                                       *Attorneys for Defendants Express Scripts Holding Co. and Express Scripts, Inc.*

## TABLE OF CONTENTS

Page

Factual Background ..................................................................................................................3

Argument .....................................................................................................................................6

I. The Court Should Enjoin CareZone's Lawsuit Against Express Scripts' Clients Under the All Writs Act Because It Is Frivolous and Harassing ............................................6

II. CareZone's Latest Complaint Is an End Run Around the Court's Scheduling Order ............9

III. CareZone's New Lawsuit Against Express Scripts' Clients Has Been Brought for an Improper Purpose, Warranting an Order to Show Cause Why CareZone Should Not Be Sanctioned ...............................................................................................................10

Conclusion .................................................................................................................................11

# TABLE OF AUTHORITIES

Page

## Cases

*Adams v. California Department of Health Services*,
    487 F.3d 684 (9th Cir. 2007) ............................................................................... 4, 5

*Baneth v. Planned Parenthood*,
    1994 WL 224382 (N.D. Cal. May 12, 1994) ......................................................... 10

*CZ Services, Inc. v. Express Scripts, Inc.*,
    No. 4:18-cv-01005-JAR (E.D. Mo. June 20, 2018) ............................................. 4, 5

*CZ Services, Inc. v. Anthem Insurance Companies*,
    No. 3:19-cv-04453 (N.D. Cal.) ............................................................................. 1, 8

*De Long v. Hennessey*,
    912 F.2d 1144 (9th Cir. 1990) ............................................................................... 6, 7

*Molski v. Evergreen Dynasty Corp.*,
    500 F.3d 1047 (9th Cir. 2007) ............................................................................... 6, 9

*Molski v. Mandarin Touch Rest.*,
    347 F. Supp. 2d 860 (C.D. Cal. 2004) ................................................................... 9

*Moore v. Wells Fargo Bank*,
    2018 WL 2723305 (C.D. Cal. Mar. 21, 2018), *report and recommendation adopted*, 2018 WL 2264207 (C.D. Cal. May 17, 2018) .......................................... 8

*Moore v. Wells Fargo Bank*,
    N.A., 749 F. App'x 624 (9th Cir. 2019) ................................................................. 8

*Moy v. United States*,
    906 F.2d 467 (9th Cir. 1990) ................................................................................. 7

*Ringgold-Lockhart v. County of Los Angeles*,
    761 F.3d 1057 (9th Cir. 2014) ............................................................................... 7

*Smith v. The Educ. People, Inc.*,
    2008 WL 749564 (2d Cir. Mar. 20, 2008) ............................................................. 9

*Stone Creek Inc. v. Omnia Italian Design Inc.*,
    2016 WL 492629 (D. Ariz. Feb. 9, 2016) .............................................................. 10

*Tripati v. Beaman*,
    878 F.2d 351 (10th Cir. 1989) ............................................................................... 6

*United States v. Associated Convalescent Enterprises, Inc.*,
    766 F.2d 1342 (9th Cir. 1985) ............................................................................... 10

*United States v. Blodgett*,
    709 F.2d 608, 610 (9th Cir.1983) .......................................................................... 10

**Statutory Authorities**

28 U.S.C. § 1651(a) ................................................................................................................ 7

## MEMORANDUM OF POINTS AND AUTHORITIES

CareZone is harassing Express Scripts again. As the Court knows, CareZone previously attempted to harass and vex Express Scripts by launching a series of small claims court cases against Express Scripts, which the Court described as a "questionable" and "cheesy" tactic. *See* Jan. 10, 2019, Hr'g Tr. at 3:12–4:19. CareZone now has doubled-down on that improper tactic, and has filed yet another lawsuit for the same conduct at issue here (this time against Express Scripts' clients Anthem Insurance Companies, Inc., Premera Blue Cross, and Blue Cross and Blue Shield of Kansas City) in an ongoing pattern of frivolous and vexatious litigation targeted at Express Scripts and its interests. CareZone brings this latest action for no other reason than to harass Express Scripts through its clients. This conduct must be stopped, and warrants sanctions.

This is undoubtedly CareZone's most egregious tactic to date. That is because CareZone did exactly what it knows it could not do, and what in fact it previously told this Court it could not do: it sued three of Express Scripts' clients for the *same claims* based upon the *same facts* it has pressed against Express Scripts. *See CZ Services, Inc. v. Anthem Ins. Cos., Inc.*, 3:19-cv-04453 (N.D. Cal.). At the September 11, 2018, hearing on CareZone's motion for a temporary restraining order on its Tennessee Any Willing Provider claim, CareZone's counsel (with CareZone's General Counsel present at counsel table in the courtroom) told this Court:

> **MR. JACKSON:** <u>So in essence to the degree the Court is thinking, well, then, why didn't we bring in the -- the insurance companies, the real problem here is the contract with the network, and the only party that has got the contract with the network is ESI.</u>  In essence, a requirement that we bring in the insurance companies would have us sue hundreds of insurance companies to direct the -- their PBM, ESI, to let us in the network under ESI's network contract. <u>There is one problem, one issue, one contract that is at issue. That's the ESI network.</u>

Sept. 11, 2018, Hr'g Tr. at 26:19–27:4 (emphasis added). That is as true now as it was then.

CareZone's most recent claims lack a good faith legal basis for other reasons as well. *First*, the Express Scripts clients that CareZone sued are not even licensed in Tennessee and thus are not subject to Tennessee's Any Willing Provider law. With even a minimal amount of pre-filing diligence, CareZone would have been able to confirm this fact using the Tennessee insurance regulator's public licensee list at *https://sbs-tn.naic.org/Lion-*

*Web/jsp/sbsreports/AgentLookup.jsp.*   And for one of the three clients CareZone sued, Blue Cross and Blue Shield of Kansas City, there is no need to look any further than its name to determine where it likely is licensed.  The chance of CareZone simply being sloppy is unlikely because Express Scripts previously cited the Tennessee licensee search tool and CareZone's new Complaint carefully avoids describing where the three clients are licensed.  *Second*, the "one contract" CareZone says is "at issue" (the Express Scripts Provider Agreement, which incorporates the Express Scripts Provider Manual) prohibits CareZone from having "any recourse against" any Express Scripts' client for payment for covered medications.  *See* Ex. A[1] (Provider Manual); *see also* Dkt. 154 ¶ 51 & Ex. 5 ¶ 2.4.b; *id.* ¶ 165 & Ex. 32 ¶ 2.4.b.  *And third,* the deadline to join parties was January 19, 2019.  CareZone's late claims both violate the Court's Scheduling Order, and further shows that CareZone has no valid claims against Express Scripts' clients.  If CareZone really had valid claims, it would have sued those clients when it sued Express Scripts in July 2018 or at least joined them by the January 2019 deadline.  With its latest filing, CareZone thus blithely ignores the law, its prior representations to this Court, its contractual commitments, and this Court's Scheduling Order—just as it has done throughout this case.

The only thing that has happened since CareZone told this Court that it had no claims against Express Scripts' clients is that its case against Express Scripts **has continued to collapse**.  On the determinative issue of whether or not CareZone was a mail-order pharmacy, the documents that CareZone was recently forced to produce show that its own General Counsel told the Tennessee insurance regulator in an email about CareZone's dispute with Express Scripts that "[t]o be clear, what we want is a mail order contract."  *See* Ex. B (CZE0027565).  CareZone would not want a "mail order contract" if it were a retail pharmacy as it represented to Express Scripts and in filings and hearings with this Court.  Ms. Willoughby's email matches with the licenses that CareZone has produced in this litigation that expressly state its pharmacies are licensed in at least four states only as a "mail order."   And on the allegedly defamatory statements made by Express Scripts about CareZone, these same documents show that CareZone witnesses believed that they, in fact, "totally benefit[ed]" CareZone by giving it publicity and marketplace

---

[1] Exhibits A–F are attached the Declaration of Ethan Glass filed with this Motion.

recognition.  *See* Ex. C (CZE0024744).

As its case crumbles, CareZone is misusing this Court in a desperate attempt to disrupt the pending lawsuit against Express Scripts, and interfere with Express Scripts' business relationships with its clients.  CareZone knows that Express Scripts' relationships with its clients are key to its business and believes that threatening and harassing those clients with baseless litigation will coerce Express Scripts into abandoning its defense against this lawsuit and allowing CareZone into its pharmacy network.  If there was any doubt, CareZone made its intentions clear by immediately going to the press about its new lawsuit (the article was published the day after CareZone sued with a quote from CareZone's counsel in this case) and falsely blaming Express Scripts for Express Scripts' clients being sued.  To be clear, Express Scripts never stated that Express Scripts' clients should be sued or that Express Scripts' clients were subject to Tennessee's Any Willing Provider statute.  What Express Scripts actually argued was that the Tennessee Any Willing Provider statute does not apply to Express Scripts, *see* Sept. 11, 2018, Hr'g Tr. at 33:3–21, 36:1–18, and even if it did, that Express Scripts gave CareZone the same terms and conditions as any other Tennessee pharmacy, *see id.* at 38:17–22, 58:10–14.

CareZone is a serial litigant bent on vexatious and abusive litigation.  The Court has the power under the All Writs Act, as well as its inherent power to manage its docket, to end CareZone's misconduct.  CareZone should be told to focus on the lawsuit it brought against Express Scripts, and use its time and resources to comply with discovery there.  For these reasons, and others detailed below, Express Scripts respectfully requests that this Court enjoin the CareZone from pursuing the instant litigation against Express Scripts' clients, and enter sanctions as the Court deems proper.

### Factual Background

***CareZone's Misstatements.***  The CareZone pharmacies are mail-order pharmacies that told Express Scripts they were not mail-order pharmacies in order to join the Express Scripts retail pharmacy network.  *See, e.g.*, Express Scripts' Amended Counterclaims, Dkt. 154 ¶¶ 36–211.  That retail network is, as its name suggests, intended exclusively for retail (*i.e.*, open-door) pharmacies.  Knowing it would not be admitted into the retail network as a mail-order pharmacy,

CareZone instead lied about being a retail pharmacy.  See id. ¶ 38 & Ex. 1; id. ¶ 71 & Ex. 7; id. ¶ 155 & Ex. 29.  After discovering that lie, as well as additional breaches of the Provider Agreements, Express Scripts notified the CareZone pharmacies that it would terminate them from its retail pharmacy network.  See id. ¶ 148 & Ex. 27; id. ¶ 210 & Ex. 37.

**CareZone Retaliates Against Express Scripts With a Public Smear Campaign.** Unwilling to face this consequence—but equally unwilling to comply with their contracts—the pharmacies and their owner Jonathan Schwartz made private threats and launched a public smear campaign in an effort to harass Express Scripts and its business partners and strong-arm Express Scripts into allowing the CareZone pharmacies back into the retail network.  For example, after receiving notice on April 2 and 20 of the impending terminations, Mr. Schwartz wrote to Express Scripts CEO Tim Wentworth on April 25, threatening to reach out to "regulatory authorities," CMS, and "the thousands of patients who use CareZone's pharmacy assistance services, along with the millions of people who use the CareZone app" if Express Scripts failed to "reconsider" the terminations.  See id. ¶ 215–16 & Ex. 39.  When Express Scripts refused to do so, Mr. Schwartz and CareZone followed through with their threats, sending tens of thousands of false and defamatory emails regarding Express Scripts to certain Express Scripts employees, the Department of Justice, the Center for Medicare and Medicaid Services, and certain of Express Scripts' business partners.  Express Scripts alone received over 40,000 such emails.  See id. ¶ 225.  These communications and the communications made on the Pharmacy For All website violated the pharmacies' Provider Agreements and included false and defamatory statements about Express Scripts.  See id. ¶¶ 219, 261, 271, 284–91.

**CareZone Files Multiple Lawsuits Against Express Scripts Arising Out of the Same Facts**.  On June 20, 2018, CareZone's California pharmacy brought its first complaint challenging the termination by Express Scripts.  See Compl., *CZ Services, Inc. v. Express Scripts, Inc.*, No. 4:18-cv-01005-JAR (E.D. Mo. June 20, 2018).  CareZone's California pharmacy dismissed that action without prejudice on July 13, 2018, but then later that same day filed its first complaint in the Express Scripts action, see Dkt. 1, based on allegedly false and defamatory statements made by Express Scripts relating to the CareZone pharmacies' unlicensed shipping of

prescription drugs to patients in other states.  Based on its AWP claim, CareZone's Tennessee pharmacy sought a temporary restraining order prohibiting Express Scripts from terminating the Provider Agreement.  *See* Dkt. 27, at 15.  This Court denied CareZone's motion on October 15, 2018.  *See* Dkt. 92.

Stymied in this Court, two weeks later CareZone's California pharmacy filed (without notice) a small claims complaint against Express Scripts in the Richmond Superior Court.  *See* Dkt. 154 ¶ 250 & Ex. 55 (RSC 18-0574 Small Claims Complaint).  The dispute at the heart of the small claims complaint, and the facts alleged therein, was identical to the issue at the heart of the Express Scripts case.  But CareZone did not stop there.  On December 28, 2018, CareZone's California pharmacy filed two *additional* cases against Express Scripts in small claims court (RSC 18-0659 and RSC 18-0660), again based on the same operative facts.  In an effort to stop CareZone's vexatious conduct, Express Scripts filed a motion for an anti-suit injunction.  At the hearing on that motion, the Court stated,

> **The Court:** . . . This is really kind of a questionable tactic.  Here's where I am.  I'll just cut to the chase.  I'm probably not -- I'm not inclined to cross the lines of federalism in this context at this stage, okay?  I want to emphasize the "at this stage" part.  I do think it's a cheesy tactic.  And I am happy to hear, Mr. Jackson, that you're not orchestrating it because you've done a very good job so far; and to be honest, it seemed a little inconsistent to me with the level of professionalism that you have brought so far.  So whoever's doing it I have some questions about their motivations and the clarity of their thinking about this as a tactical or strategic move.

Jan. 10, 2019, Hr'g Tr. at 3:15–25.

***CareZone Abuses the Discovery Extension and Harasses Express Scripts' Clients.***  Throughout this case, CareZone has delayed, prevaricated, and otherwise failed to prosecute its own case.  The most egregious example of CareZone's discovery delays has been its abuse of the Court's extension of the procedural schedule.  On May 21, 2019, CareZone's counsel told this Court that it would have been able to meet its discovery obligations by the previous discovery deadline (June 10, 2019) without an extension, but that it was requesting additional time to adequately prepare for depositions and ensure a complete production.

We now know that to be yet another misstatement.  Instead, CareZone has used the

Court's generous three-month extension to produce documents at a trickle, to seek to serve duplicative discovery requests on Express Scripts (in an attempt to circumvent the parties' May 21 agreement before the Court), to file an additional motions to compel (with the promise that there are more to come), to repudiate its meet-and-confer agreements, to raise discovery issues with the Court before it meets and confers with Express Scripts at all, and to serve *eight* third-party subpoenas on Express Scripts' clients for the same information that was the subject of the parties' May 21 agreement before the Court.  CareZone did so even after Express Scripts told the Court (without any objection by CareZone) that, "[i]n fact, we have resolved all outstanding discovery issues.  So we shouldn't have a repeat of this because all the discovery issues should be resolved." May 21, 2019, Hr'g Tr. at 7:14–17.  And of course we now know that CareZone also used this extension to conjure meritless claims to harass Express Scripts' clients.[2]

## Argument

The Ninth Circuit recognizes that "[t]here is strong precedent establishing the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances." *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990) (alteration in original) (quoting *Tripati v. Beaman*, 878 F.2d 351, 352 (10th Cir. 1989)).  "[F]lagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007).  There are two independent grounds for the Court to find that CareZone's newest lawsuit is abusive: (1) the All Writs Act; and (2) the Court's inherent power to sanction violations of its orders.

**I.     The Court Should Enjoin CareZone's Lawsuit Against Express Scripts' Clients Under the All Writs Act Because It Is Frivolous and Harassing**

---

[2]  This is not CareZone's first attempt to harass Express Scripts' clients.  Indeed, CareZone's counsel previously threatened to "add [Express Scripts'] customers to the lawsuit," *see* Ex. D (Jan. 2, 2019, Letter from A. Willoughby, CareZone, to N. Jones, Cigna), and to "file claims against the third-party clients." *See* Ex. E (Feb. 1, 2019, Letter from E. Glass to Counsel).  Of course, if CareZone thought they had a valid basis for pursuing such claims, it is unclear why they waited another seven months to file the instant complaint.

-6-     Case No. 3:18-cv-4217-JD
EXPRESS SCRIPTS' MOTION TO ENJOIN CAREZONE FROM HARASSING EXPRESS SCRIPTS' CLIENTS

Under the All Writs Act, "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  This statute authorizes this Court to enter sanctions against vexatious litigants.  *Moy v. United States*, 906 F.2d 467, 469 (9th Cir. 1990).  And this is a paradigm case for relief under the All Writs Act, as the CareZone pharmacies meet every requirement of a vexatious litigant.  There can be no dispute that Express Scripts has given sufficient notice and an adequate record, both in this brief and in the letter it sent to CareZone warning it not to file the vexatious lawsuit.  *See De Long*, 912 F.2d at 1149 (requiring notice and an opportunity to be heard and an "adequate record for review" which includes "a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed," or "[a]t the least, . . . that the litigant's activities were numerous or abusive").  And CareZone's conduct is frivolous and harassing, as detailed below.

The Court has ample evidence to make "substantive findings as to the frivolous or harassing nature of the litigant's actions."  *Id.* at 1148.  In approaching such an analysis, the Ninth Circuit has identified the following five factors as a "helpful framework," *Ringgold-Lockhart v. Cty. of Los Angeles*, 761 F.3d 1057, 1062 (9th Cir. 2014):  (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, *e.g.,* whether the litigant has an objective good faith expectation of prevailing; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.  Each element is met here.

*First*, the facts show that CareZone has repeatedly attempted to relitigate the validity of past decisions and agreements, circumvent this Court's orders, and relitigate the same claims against the same or related defendants.  CareZone has done this in two ways.  It has filed seriatim lawsuits for the same dispute, first in Missouri federal court, then in this Court, later in California state court, and now again in this Court.  CareZone also has forced Express Scripts to relitigate

virtually every discovery dispute—even ones that CareZone has agreed to settle during the meet and confer process.  Courts in this circuit have issued orders to prevent plaintiffs from pursuing claims that "repeat[] any of the claims alleged in [a pending] action or in the prior actions in this District" or that "attack[], seek[] to vacate, void, or expunge, otherwise seek[] to challenge in any way—whether directly or indirectly" already litigated issues.  *See Moore v. Wells Fargo Bank*, 2018 WL 2723305, at *16 (C.D. Cal. Mar. 21, 2018), *report and recommendation adopted*, 2018 WL 2264207 (C.D. Cal. May 17, 2018), *aff'd sub nom. Moore v. Wells Fargo Bank, N.A.*, 749 F. App'x 624 (9th Cir. 2019).  Express Scripts seeks the same here.

*Second*, CareZone's actions clearly evince its true motives are not to use the court system properly.  CareZone admitted to this court nearly a year ago that it could not file lawsuits against Express Scripts' clients.  *See* Sept. 11, 2018, Hr'g Tr. at 26:19–27:4.  CareZone also knows that the Tennessee Any Willing Provider law applies only to insurers regulated by Tennessee, and yet CareZone has sued three Express Scripts clients *who are not licensed in Tennessee*.  With only a minimal amount of pre-filing diligence CareZone would have been able to confirm, as Express Scripts did, that none of the clients CareZone sued are licensed insurers in Tennessee.[3]  Notably, the Complaint carefully avoids describing where the three clients are licensed.  *See CZ Services, Inc. v. Anthem Ins. Cos.*, 3:19-cv-04453, Dkt. 1 at ¶¶ 15–17 (N.D. Cal.).  Thus, the suit against Express Scripts' clients amounts to nothing more than harassment.  This conclusion is buttressed by the fact that counsel for CareZone immediately and incorrectly talked to the press, suggesting that Express Scripts told CareZone to sue its clients:  "Express Scripts told us that they weren't subject to Tennessee's 'any willing provider' statute and only their insurance company clients were, so we're being forced to sue their insurance company clients."  *See* Ex. F.  Attributing CareZone's decision to initiate an action against Express Scripts' clients to Express Scripts is nothing more than an attempt to interfere with Express Scripts' business relationships.  It is also false.  Express Scripts has never argued that CareZone should sue Express Scripts' clients or that Express Scripts' clients were subject to suit under the Tennessee Any Willing Provider statute.  To the contrary, Express Scripts argued that the Any Willing Provider statute did not apply to

---

[3] See *https://sbs-tn.naic.org/Lion-Web/jsp/sbsreports/AgentLookup.jsp*.

Express Scripts and even if it did, that Express Scripts provided CareZone with the same terms and conditions as any other Tennessee pharmacy.  *See* Sept. 11, 2018, Hr'g Tr. at 33:3–21, 36:1–18, 38:17–22, 58:10–14..

*Third*, CareZone is represented by counsel, Boies Schiller and Flexner and Vogl Meredith Burke LLP.  "Although courts are generally protective of pro se litigants, this same protection does not apply to litigants represented by counsel, and thus, this factor also weighs against Plaintiff."  *See Molski v. Mandarin Touch Rest.*, 347 F. Supp. 2d 860, 866 (C.D. Cal. 2004), *aff'd in part, dismissed in part sub nom. Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047 (9th Cir. 2007).  While counsel denied any involvement in the previous harassing state court lawsuits that CareZone brought to harass Express Scripts, they cannot deny their involvement in this new harassing tactic.

*Fourth*, CareZone has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel through its repeated attempts to reargue the mail-order dispute that is the core question of this litigation.  Again, CareZone's seriatim lawsuits and multiple motions to compel after the dispute is resolved during the meet-and-confer process have needlessly taxed the courts and Express Scripts.

Finally, and most importantly, no other sanctions would be adequate to protect the courts and Express Scripts from CareZone's actions.  CareZone has shown a willingness to use serial litigation without hesitation, this time by interfering with Express Scripts' business relationships with clients.  *See, e.g.*, *Smith v. The Educ. People, Inc.*, 2008 WL 749564, at *2 (2d Cir. Mar. 20, 2008) (finding the All Writs Act gives a district court discretion to issue injunctive relief against vexatious litigation pursued "to harass the defendants, its vendors and customers").  Only a firm order from this Court can stop this.

## II.     CareZone's Latest Complaint Is an End Run Around the Court's Scheduling Order

CareZone simply has violated this Court's Scheduling Order.  CareZone concedes that the instant litigation and the client litigation "concern substantially the same transactions and events."  *See* Dkt. 182, at 1–2.  Indeed, the transactional nucleus of facts in both complaints is *identical*, except that, instead of seeking relief for the alleged acts from Express Scripts, CareZone seeks

relief from clients as alleged principals in an agency relationship with Express Scripts. *Id.* at 2. At its core, CareZone's new case against Express Scripts' clients thus is nothing more than a late-in-time attempt to functionally join parties to the Express Scripts' litigation. This, however, is in direct violation of the Court's scheduling order, which set January 14, 2019, as the deadline to add parties or amend pleadings. *See* Dkt. 121. CareZone cannot now attempt to cure its failure to add parties in compliance with the Court's order by bringing a new cause of action. *Cf. Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) ("The fact that plaintiff was denied leave to amend does not give her the right to file a second lawsuit based on the same facts." (citation omitted)), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008). Moreover, the fact that CareZone has brought these claims so late shows how meritless they are—if CareZone really had valid claims against other defendants, it would have brought them before the deadline to join parties *in January*.

### III. CareZone's New Lawsuit Against Express Scripts' Clients Has Been Brought for an Improper Purpose, Warranting an Order to Show Cause Why CareZone Should Not Be Sanctioned

"Any attorney or other person admitted to conduct cases in any court of the United States ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctionable conduct under this section "includes the reckless raising of a frivolous argument or arguing a meritorious claim for the purpose of harassing an opponent." *Baneth v. Planned Parenthood*, 1994 WL 224382, at *4 (N.D. Cal. May 12, 1994). Imposition of costs and fees under § 1927 require a finding that the attorney acted "recklessly or in bad faith." *United States v. Associated Convalescent Enterps.*, 766 F.2d 1342, 1346 (9th Cir. 1985) (quoting *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir. 1983)).

As discussed above, CareZone knowingly filed an action that has no legal basis, which it acknowledged to the Court almost a year ago. *See Stone Creek Inc. v. Omnia Italian Design Inc.*, 2016 WL 492629, at *3 (D. Ariz. Feb. 9, 2016), *aff'd*, 862 F.3d 1131 (9th Cir. 2017), and *aff'd*, 875 F.3d 426 (9th Cir. 2017) (finding bad faith warranting sanctions under § 1927 where plaintiff "[a]t some point, [] knew its actual damages claim was meritless, yet it did not withdraw its

claim"). Recognizing its calculated attempt to harass Express Scripts through litigation would be short-lived with meritless claims, CareZone immediately went to the press to make the unbelievable statement that Express Scripts *told CareZone to sue its clients,* a plain misrepresentation of the record. *See* Sept. 11, 2018, Hr'g Tr. at 26:19–27:4.

CareZone's conduct is sanctionable. It has threatened Express Scripts' client relationships for no purpose other than harassment. It has caused Express Scripts to expend additional time and resources in seeking to enjoin both the recently-filed action and any future actions against Express Scripts clients arising out of the same events alleged in the instant litigation, instead of being able to focus on the lawsuit that CareZone brought in 2018. CareZone even filed this lawsuit even though the Court warned that its previous attempts to harass Express Scripts through multiple lawsuits was a "questionable" and "cheesy" "tactic." Sanctions, therefore, are appropriate not only because of CareZone's reckless and vexatious conduct to date, but also to deter CareZone from continuing its campaign of harassment going forward.

## Conclusion

Express Scripts respectfully requests an order from this Court under the All Writs Acts and its inherent authority instructing CareZone to cease all vexatious conduct, including its pursuit of a lawsuit against Express Scripts' clients and any addition sanctions deemed appropriate by the Court.

| | |
|---|---|
| Dated: August 5, 2019 | Respectfully submitted, |
| | QUINN EMANUEL URQUHART & SULLIVAN, LLP |

By  /s/ Ethan Glass
    Ethan Glass (Bar No. 216159)
    ethanglass@quinnemanuel.com
    Michael Lyle (*pro hac vice*)
    mikelyle@quinnemanuel.com
    Eric Lyttle (*pro hac vice*)
    ericlyttle@quinnemanuel.com
    Meghan McCaffrey (*pro hac vice*)
    meghanmccaffrey@quinnemanuel.com
    1300 I St. NW, Suite 900
    Washington, District of Columbia 20005
    Telephone:     (202) 538-8000
    Facsimile:      (202) 538-8100

    Margret M. Caruso (Bar No. 243473)
    margretcaruso@quinnemanuel.com
    555 Twin Dolphin Drive, 5th Floor
    Redwood Shores, California 94065
    Telephone:     (650) 801-5000
    Facsimile:      (650) 801-5100

    *Attorneys for Express Scripts*
    *Holding Co. and Express Scripts, Inc.*