1

2

3

4                        UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7    CZ SERVICES, INC., et al.,                Case No. 3:18-cv-04217-JD

                Plaintiffs,
8
                                               **ORDER RE SUMMARY JUDGMENT**
9          v.                                  **MOTIONS**

10   EXPRESS SCRIPTS HOLDING                    Re: Dkt. Nos. 239, 244
     COMPANY, et al.,
11
                Defendants.
12

13          In this dispute between a pharmacy and a pharmacy benefits manager ("PBM"), the parties

14   have filed a blizzard of summary judgment motions, Dkt. Nos. 239, 244, and motions to exclude

15   experts under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,

16   509 U.S. 579 (1993), Dkt. Nos. 241, 243, 246, 247.  The motions were accompanied by multiple

17   declarations with hundreds of pages of exhibits.  Defendants also filed a motion to strike certain

18   declarations as untimely under Federal Rule of Civil Procedure 26.  Dkt. No. 303.  Both sides have

19   asked to seal substantial portions of their briefs, declarations, and exhibits, which has compounded

20   the burden on the Court and, more importantly, unfairly sought to hide to these proceedings from

21   public access and scrutiny.

22          The Court took oral argument on the summary judgment and *Daubert* motions.  Dkt.

23   No. 329.  The Court finds the motion to strike suitable for decision on the papers pursuant to Civil

24   Local Rule 7-1(b).  This order resolves the pending summary judgment motions.  An order on the

25   *Daubert* motions, and the related motion to strike, will be filed shortly.  The sealing motions will

26   be denied in a separate order.  The docket references here are to the unredacted briefs and other

27   documents, which will be ordered to be filed.

28

United States District Court
Northern District of California

**BACKGROUND**

The basic factual background for the case was discussed in detail in the orders denying

transfer and plaintiffs' application for a TRO.  Dkt. Nos. 57, 92.  The parties' familiarity with the

record is assumed.

In summary, plaintiffs CZ Services, Inc. ("CZ California") and its wholly owned

subsidiary, CareZone Pharmacy LLC ("CZ Tennessee"), are retail pharmacy businesses.  They are

referred to here as "CZ Pharmacies" when discussed together.  Defendants Express Scripts, Inc.

and Express Scripts Holding Company ("ESI") are a large, national PBM that provides

prescription drugs to customers through, as relevant here, a retail pharmacy network on behalf of

health insurance companies.  CZ California and CZ Tennessee participated under a contract in

ESI's retail network until ESI terminated that arrangement in 2018.

This lawsuit arises out of the termination.  CZ Pharmacies filed a complaint alleging that

ESI made up a variety of pretextual reasons to terminate the contract because ESI feared CZ

Pharmacies as a rising competitor.  The pretexts included allegations by ESI that the pharmacies

operated out of compliance with various state regulatory laws, and was running a mail order drug

service that violated the express terms of the contract.  CZ Pharmacies sued ESI for defamation

under the Lanham Act and unspecified state laws, and brought claims for unfair competition under

California and Tennessee law, and a claim under Tennessee's Any Willing Provider ("AWP")

statute.  Dkt. No. 24.  The AWP prohibits insurers from excluding a licensed pharmacy from their

networks if the pharmacy agrees to participate on the same terms and conditions offered to other

pharmacies.

ESI filed counterclaims against plaintiffs and the additional parties of Care Zone Inc.

("CareZone"), which operates an online app for pharmacy customers, and Jonathan Schwartz, the

CEO of CareZone, and the founder, president, and sole owner of CZ Pharmacies.  ESI alleges

counterclaims for breach of contract, promissory fraud/fraudulent inducement, and defamation for

some online posts attributed to counter-defendants.  Dkt. No. 154.

The organization and legal relationship of the CZ entities is of importance as a backdrop

for the pending motions.  The parties are not in agreement on all of the details, but both sides

2

1   appear to accept this organization chart for purposes of the motions, and the Court will do the

2   same:



Dkt. No. 249-9; *see* Dkt. No. 328 at 34:23-35:8 (CZ referring to same chart at oral argument).  The

"call option," which is the link between CareZone and the pharmacies, gives CareZone the option

to purchase the CZ Pharmacies for the nominal sum of $200.  Dkt. No. 249-15.

As the voluminous mass of the pending motions indicates, the parties have engaged in

scorched-earth tactics from the beginning of this case.  The summary judgment motions did not

benefit from this approach.  Each side sought to kick out virtually every claim by the other, which

means that weighty issues were often superficially discussed, without adequate development and

analysis.  The motions are also replete with factual disputes.  The Court would have been well

within bounds to deny summary judgment across the board on this record.  *See FTC v. D-Link*

*Sys., Inc.*, Case No. 17-cv-00039-JD, 2018 WL 6040192, at *1 (N.D. Cal. Nov. 5, 2018).

Nevertheless, it undertook the unduly arduous task of sorting through the motions with the hope

that this order will focus the case for settlement or trial.  With the guidance provided here, the

Court orders the parties to return to the mediator, Ambassador (ret.) Jeffrey L. Bleich, for a

mandatory settlement conference on a date the mediator can accommodate.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISCUSSION**

**I.     SUMMARY JUDGMENT LEGAL STANDARDS**

Parties "may move for summary judgment, identifying each claim or defense -- or the part of each claim or defense -- on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court may dispose of less than the entire case and even just portions of a claim or defense.  *Smith v. Cal. Dep't of Highway Patrol*, 75 F. Supp. 3d 1173, 1179 (N.D. Cal. 2014).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it could affect the outcome of the suit under the governing law.  *Id.*

To determine whether a genuine dispute as to any material fact exists, the Court views the evidence in the light most favorable to the nonmoving party, and "all justifiable inferences are to be drawn" in that party's favor.  *Id.* at 255.  The moving party may initially establish the absence of a genuine issue of material fact by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  It is then the nonmoving party's burden to go beyond the pleadings and identify specific facts that show a genuine issue for trial.  *Id.* at 323-24.  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

It is not the Court's responsibility to root through the record to establish the absence of factual disputes, *Arvin Kam Constr. Co. v. Envtl. Chem. Corp.*, Case No. 16-cv-02643-JD, 2019 WL 1598220, at *1 (N.D. Cal. Apr. 15, 2019), or to look for evidence on the nonmoving parties' behalf, *Winding Creek Solar LLC v. Peevey*, 293 F. Supp. 3d 980, 989 (N.D. Cal. 2017), *aff'd*, 932 F.3d 861 (9th Cir. 2019).  While the volume of the parties' briefs, declarations, and exhibits is not necessarily fatal to summary judgment, it is indicative of disputes of fact that will require a trial to resolve.  *See D-Link Sys.,* 2018 WL 6040192, at *1.

1

## II.    CZ'S MOTION FOR SUMMARY JUDGMENT

2

CZ sought summary judgment on all of ESI's counterclaims on the grounds that the PBM

3

had failed to provide any computation, or even a rough estimate, of its alleged damages for the

4

breach of contract, fraud, and defamation counterclaims.  In effect, CZ brought a motion for

5

preclusion under Rules 26 and 37 for failure to provide damages evidence in a timely manner.  *See*

6

Dkt. No. 238-4 at 4-7.  From this, CZ Pharmacies says summary judgment should be granted

7

because ESI cannot present any evidence on the essential element of damages for its

8

counterclaims.  *Id.* at 9-12.  The motion is premised on the representation that ESI never

9

"identified even the order of magnitude of the damages it seeks on its counterclaims, much less

10

any calculation of its damages numbers or the method it intends to use to calculate its alleged

11

damages."  *Id*. at 5.

12

ESI opposes summary judgment on the grounds that it has disclosed "all of the information

13

the Counterclaim Defendants [*i.e.* CZ] need to calculate compensatory damages."  Dkt. No. 271-4

14

at 1.  But it diluted this seemingly straightforward response by arguing that: (1) neither side

15

properly disclosed their damages in their initial disclosures or elsewhere, but whatever ESI did

16

was better than what the CZ Pharmacies did; (2) it provided documents from which CZ could

17

determine ESI's damages claims by "simply adding up" the numbers; and (3) in any event, ESI

18

may be seeking only nominal damages, attorney's fees, and punitive damages, and not actual

19

damages.  *See id.* at 2, 5-7.

20

At the motion hearing, the Court spent considerable effort on clarifying these arguments

21

and other ambiguities in the parties' briefs, such as the choice of governing law.  In response to the

22

Court's inquiries, the parties agreed that ESI's counterclaim for promissory fraud or fraudulent

23

inducement should be decided under California law, and that they waived any appeal on this

24

choice of law.  Dkt. No. 328 at 10:17-11:16.  The parties also agreed that ESI's contract claims

25

were governed by Missouri law because of a choice-of-law provision in the provider agreements.

26

Dkt. No. 290-4 at 11.  ESI agreed its defamation claim should be dismissed because of its failure

27

to provide evidence of special damages.  Dkt. No. 328 at 15:18-25.  That claim is dismissed.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1          CZ's summary judgment motion is at heart a discovery sanction request, and the Court

2   declines to grant it.  Rule 26(a)(1)(A)(iii) requires the disclosure of "a computation of each

3   category of damages claimed by the disclosing party."  "Rule 37(c)(1) gives teeth to these

4   requirements by forbidding the use at trial of any information required to be disclosed by

5   Rule 26(a) that is not properly disclosed."  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d

6   1101, 1106 (9th Cir. 2001).  Exclusion is not appropriate if "the failure was substantially justified

7   or is harmless."  Fed. R. Civ. P. 37(c)(1).  When a Rule 37(c)(1) sanction would result in

8   dismissal, the Court is "required to consider whether the claimed noncompliance involved

9   willfulness, fault, or bad faith, and also to consider the availability of lesser sanctions" as part of

10   the harmlessness inquiry under Rule 37(c)(1).  *R&R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240,

11   1247 (9th Cir. 2012).

12          There is not enough evidence in the record of willfulness, fault, or bad faith to warrant the

13   extreme remedy of terminating sanctions.  It is true that ESI did not clearly state the monetary

14   relief it was seeking until it opposed CZ's motion for summary judgment, nearly three months

15   after the close of fact discovery.  Only then did CZ learn that "Express Scripts seeks as

16   compensatory damages for both its breach-of-contract and fraudulent-inducement claims the total

17   amount paid to the CareZone Pharmacies over the life of its contracts with them."  Dkt. No. 271-4

18   at 2.  In addition, the fact that CZ may have had in hand the raw information ESI used to

19   determine damages does not absolve ESI from its obligations of specificity and candor under

20   Rule 26(a).

21          Even so, the record here does not cross the line into a zone of bad faith or willfulness

22   sufficient to terminate ESI's remaining counterclaims.  In contrast to other cases imposing such

23   sanctions, the record does not show that ESI simply ignored damages interrogatories by CZ

24   Pharmacies, defaulted on its discovery obligations until the last minute, or concocted spurious

25   excuses for its conduct.  *See Ingenco Holdings, LLC v. Ace Am. Ins. Co.*, 921 F.3d 803, 821-22

26   (9th Cir. 2019).  CZ never asked ESI in an interrogatory what the PBM's contract damages were

27   or asked ESI to supplement its initial disclosures.  Dkt. No. 328 at 4:16-5:14.  ESI may not have

28   been a model of propriety in the way it handled its Rule 26(a) obligations, but the factors that were

United States District Court
Northern District of California

1    critical for the heavy sanctions in cases like *Ingenco* are not present here.  The public and judicial

2    interest in deciding cases on the merits also weighs against terminating sanctions against ESI.  *See*

3    *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990).

4          This does not mean that ESI can walk away scot free in response to CZ's motion.  There is

5    ample time available for CZ to take additional damages discovery from ESI without impeding a

6    trial date.  No trials are possible before October 2020 anyway, *see* General Order 72-5, and this

7    case is very likely to get a trial date in 2021 in light of the public health crisis.

8          Consequently, the Court re-opens discovery on ESI's damages claims.  CZ Pharmacies

9    may serve a reasonable number of interrogatories and requests for production, and take up to two

10   depositions.  The Court hesitates to say "reasonable" without precise quantification given the

11   parties' repeated discovery disputes, but it will live with that for now in the expectation that it will

12   not see a downpour of discovery letters on this issue.  Discovery should be completed by October

13   15, 2020.  To be clear, this will be a one-way conversation -- CZ asks and ESI answers.  ESI may

14   not supplement or amend any expert witness reports or testimony on damages.  The parties are

15   advised that evidence of non-responsiveness or evasiveness in this supplemental discovery may be

16   grounds for termination of claims or defenses.

17   **III.    ESI'S MOTION FOR SUMMARY JUDGMENT**

18         The CZ Pharmacies allege seven causes of action in a first amended complaint ("FAC").

19   Dkt. No. 24.  ESI's motion for summary judgment is organized by liability themes:  defamation-

20   based claims (Lanham Act, trade libel, negligent and intentional interference with prospective

21   economic relations, and defamation); violation of Tennessee's AWP statute; and unfair

22   competition under California and Tennessee law.  CZ Pharmacies does not challenge the bundling

23   of the Lanham Act and tort claims together, or the overall organizational approach.

24         **A.    The Defamation-Based Claims**

25         The defamation claims arise primarily out of a post on ESI's corporate website on June 19,

26   2018, under the caption "The Facts about Care Zone" and, later, "Some Facts About CareZone."

27   Dkt. No. 24 ¶¶ 32-44.  CZ Pharmacies primarily challenge these statements as defamatory:  (1)

28   "During a recent review, we found two CareZone Pharmacy locations were operating in direct

United States District Court
Northern District of California

1    violation of the retail provider requirement in their agreements, had failed to comply with a

2    number of other obligations under their agreements, and that many prescriptions were being

3    mailed to states where the dispensing pharmacy was not licensed, which is a violation of state

4    law"; and (2) "Because CareZone is violating state pharmacy laws and is unwilling to comply with

5    its contract, we are removing CareZone from our network."  Dkt. No. 24-8.  The pharmacies also

6    point to statements in the posts and a tweet describing them as not providing quality or safe care,

7    affordable access, and misrepresenting themselves.  Dkt. No. 328 at 22:9-23:22.

8         Both sides present the defamation claims as a matter of statements of fact versus

9    expressions of opinion.  *See* Dkt. No. 249-3 at 12-14 (ESI); Dkt. No. 273-4 at 11-15 (CZ

10   Pharmacies).  Neither side analyzes the claims as a matter of commercial speech rights.  They

11   agree, as they must, that a defendant may be liable only for "false statements of fact," and not

12   mere opinions.  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 339-40 (1974).  "Absent a clear and

13   unambiguous ruling from a court or agency of competent jurisdiction, statements by laypersons

14   that purport to interpret the meaning of a statute or regulation are opinion statements, and not

15   statements of fact."  *Coastal Abstract Serv., Inc. v. First Am. Title*, 173 F.3d 725, 731 (9th Cir.

16   1999) (citations omitted).  Even so, only an "opinion that does not convey a false factual

17   implication is not defamatory."  *Id.* at 732.  Whether a statement contains a false factual

18   implication typically is a question for a jury to answer.  *Manufactured Home Cmtys., Inc. v. Cty. of

19   San Diego*, 544 F.3d 959, 965 (9th Cir. 2008).[1]

20        Genuine disputes of material fact preclude summary judgment on the defamation claims.

21   While the accused statements offer a punchline about illegality that has overtones of an opinion,

22   they contain representations of fact about CZ Pharmacies.  For example, the statements say that

23   CZ Pharmacies dispensed drugs from unlicensed pharmacies and engaged in an improper mail

24   order prescription business.  These statements were clearly offered by ESI as assertions of

25   objective facts -- the title of the post was "Some Facts About CareZone" -- and they are capable of

26   being proved true or false as matters of fact.  These statements are hotly disputed by CZ

27

28   [1] Contrary to the representation of ESI at oral argument, Dkt. No. 328 at 30:18-31:1,
     *Manufactured Communities* is not "a fraud case," but a defamation and tortious interference case.

1      Pharmacies as factually inaccurate, particularly the mail order business statement.  This is enough

2      for the defamation claims to go to a jury.  *See Gardner v. Martino*, 563 F.3d 981, 987 (9th Cir.

3      2009).  So too for similar statements made by ESI in the related Twitter post that provided a link

4      to the blog.  *See* Dkt. No. 24-7.  Under California law, for example, "a defamatory meaning must

5      be found, if at all, in a reading of the publication as a whole."  *Kaelin v. Globe Commc'ns. Corp.*,

6      162 F.3d 1036, 1040 (9th Cir. 1998).

7            The Court declines to decide at this time whether CZ Pharmacies must show negligence or

8      actual malice for the defamation-based claims because "the evidence presented is such that a

9      reasonable jury might find that actual malice had been shown with convincing clarity."  *Anderson*,

10     477 U.S. at 257.  The actual malice standard is met if a defendant "purposefully avoided knowing"

11     its statement would be misleading.  *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1187 (9th

12     Cir. 2008).  CZ Pharmacies has identified evidence in the record that it had responded to ESI's

13     requests for pharmacy licenses for CZ California a year before the alleged defamatory statements.

14     Dkt. No. 273-8 at 13.  Similarly, CZ Pharmacies says it told ESI two months before the online

15     post that CZ Tennessee had all the required licenses and was not mailing prescriptions.  *Id.*  While

16     ESI appears to have questioned the existence of CZ Tennessee's licenses, it apparently never

17     asked for copies.  *Id.* at 17.  The defamation-based claims will go to the jury.

18           **B.      The Tennessee AWP**

19           The application *vel non* of the Tennessee AWP to ESI has been a highly contested issue.

20     The AWP prohibits a "health insurance issuer" or "managed health insurance issuer" from

21     excluding a licensed pharmacy from its provider network if the pharmacy agrees to the same terms

22     and conditions offered to other participants.  Tenn. Code Ann. § 56-7-2359.  The Court denied CZ

23     Pharmacies' application for a temporary restraining order at the start of this case because "it is far

24     from clear that ESI is a health insurance or coverage issuer within the purview of the AWP."  Dkt.

25     No. 92 at 3.

26           To a substantial extent, CZ Pharmacies' summary judgment argument merely repeats

27     contentions that the Court considered and declined in the TRO order.  The Court has already

28     determined that ESI is a PBM and that no Tennessee court had concluded that a PBM is a "health

United States District Court
Northern District of California

9

1    insurance issuer" or "managed health insurance issuer" within the meaning of the AWP.  *Id.*

2    Other courts that expressly addressed whether a PBM was an insurer under similar AWP statutes

3    have also concluded that PBMs are not health insurers, but rather are "third-party health plan

4    administrators which manage and administer prescription drug benefits on behalf of health

5    insurance plans."  *Id.* (quoting *Pharm. Care Mgmt. Ass'n. v. Tufte*, 297 F.Supp.3d. 964, 970

6    (D.N.D. 2017)); *see also Beeman v. TDI Managed Care Servs., Inc.*, 449 F.3d 1035, 1037-38 (9th

7    Cir. 2006); *Park Imrat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 518-19 (8th Cir.

8    2018) (PBM not covered by AWP in Georgia, Mississippi, or North Carolina); *HM Compounding

9    Servs. v. Express Scripts, Inc.*, Case No. 14-cv-1858-JAR, 2015 WL 4162762, \*13 (E.D. Mo. July

10   9, 2015) (same under New Jersey law); *In re Express Scripts, Inc., PBM Litig.*, Case No. 05-md-

11   01672-SNL, 2008 WL 2952787, at \*3 (E.D. Mo. July 30, 2008) ("PBMs operate as middlemen"

12   for insurers).  The Court also rejected CZ Pharmacies' effort to bootstrap PBMs into the AWP by

13   citing a provision of the Tennessee Code outside of the AWP chapter.  Dkt. No. 92 at 3.

14         Some recent legislative developments underscore that PBMs are not within the scope of

15   AWP statutes unless specifically included.  For example, Oklahoma enacted an AWP statute that

16   specifically prohibits a PBM or its agents from denying "a pharmacy the opportunity to participate

17   in any pharmacy network at preferred participation status if the pharmacy is willing to accept the

18   terms and conditions that the PBM has established for other pharmacies as a condition of preferred

19   network participation status."  Okla. Stat. tit. 36, § 6962.  Vermont also enacted an AWP statute

20   that expressly applies to health insurers and PBMs.  Vt. Stat. Ann. tit. 8, § 4089j.  If PBMs were

21   obviously covered in the definition of "health insurance issuers," as CZ Pharmacies urges, the

22   denomination of PBMs in these statutes would have been unnecessary and redundant.  The fact

23   that the Oklahoma and Vermont legislatures specifically acted to include PBMs in their statutes, in

24   contrast to the Tennessee AWP, further indicates that insurers and PBMs are not the same for

25   AWP purposes in this case.

26         CZ Pharmacies does not disagree that ESI is a PBM, and has not presented any good

27   reason to revisit the Court's prior conclusions, or the relevant case law.  Instead, CZ Pharmacies

28   makes much more indirect arguments.  It suggests that ESI should be treated as within the AWP

United States District Court
Northern District of California

10

1    simply because it works with health insurers.  In CZ Pharmacies' view, ESI is an agent of health

2    insurers subject to the AWP, and so should be deemed to be covered itself.

3    This argument suffers from multiple flaws.  To start, CZ Pharmacies never commits to the

4    law of a particular state for its agency theory.  It cites cases from Maryland and Tennessee state

5    courts, and federal courts in the Ninth Circuit.  Dkt. No. 273-4 at 4-5.  CZ Pharmacies never

6    explains why the agent-principal laws of so many forums should be considered here, or why it

7    could not determine which laws properly apply to ESI.  This is an obvious analytical problem, if

8    only because "the substantive law will identify which facts are material."  *Anderson*, 477 U.S.

9    at 248.  To ground the discussion here, the Court assumes without deciding that a choice of

10   Tennessee law makes the most sense at this juncture.

11   CZ Pharmacies also tenders no evidence that an agent-principal relationship exists between

12   ESI and a health insurer.  There is no doubt that ESI has contracts with health insurers -- that is its

13   main business as a PBM -- but a contractual relationship is not at all the same as an agency one,

14   and ESI's contracts with insurers typically disclaim an agency relationship.  *See, e.g.*, Dkt. No.

15   273-14 § 1.21 (stating in ESI's agreement with BlueCross BlueShield Tennessee that nothing "in

16   this Agreement shall be construed to create or establish a relationship of employer and employee

17   or principal and agent").

18   Nor does CZ Pharmacies offer evidence of a course of conduct that might have created an

19   agency relationship.  It says that "ESI's clients could, if they chose, create their own network of

20   participating pharmacies and enter into contracts directly with pharmacies" and that "ESI's insurer

21   clients retain the right to control participation in the pharmacy network."  Dkt. No. 273-4 at 5.

22   Even if accepted as true for present purposes, these allegations are of no moment.  They hardly

23   establish an agency relationship between ESI and the insurers under Tennessee law.  *White v.*

24   *Revco Disc. Drug Ctrs., Inc.*, 33 S.W.3d 713, 723 (Tenn. 2000) (while "the principal's right to

25   control the actions of the agent is an important factor in finding the existence of an agency

26   relationship, the right of control is not necessarily as important as the principal's exercise of actual

27   control over the agent").  The focus of the agency inquiry "is placed upon the actions and consent

28   of the principal, rather than upon the agent's actions or the willingness of the agent to perform

United States District Court
Northern District of California

11

1    those actions." *Id*.  CZ Pharmacies has not adduced any facts raising a genuine question of

2    whether health insurers and ESI acted in manner consistent with these agency factors, as opposed

3    to acting as independent parties subject to an arm's-length contract, as the evidence indicates.

4            CZ Pharmacies' reliance on a Medicare-related program operated by an entity affiliated

5    with ESI is similarly strained.  CZ says that an ESI subsidiary offers a Medicare Part D

6    prescription drug plan in Tennessee, which it takes to mean that at least one entity within ESI is a

7    health insurer.  Even if this proposition were accepted as true, which is not at all self-evident or

8    well-established by CZ Pharmacies, its significance is questionable at best.  CZ Pharmacies does

9    not allege that its claims are connected in any way to the actions of the subsidiary that offers a

10   Medicare Part D plan.  In addition, uncontroverted evidence shows that ESI offered CZ

11   Pharmacies an opportunity to participate in its Medicare Part D business line, but that CZ

12   Pharmacies declined.  Dkt. No. 249-3 at 21.  These remote circumstances do not transmute ESI

13   into a covered health insurer under the AWP.

14           If this were all CZ Pharmacies had to offer for the AWP claim, the Court would have no

15   hesitation in dismissing the claim from the case.  But CZ Pharmacies also contends that ESI in

16   effect voluntarily agreed to be bound by the AWP.  It points to provisions in ESI contracts stating

17   that "ESI shall be responsible for complying with all applicable Laws related to the creation and

18   maintenance of a pharmacy network, including: (i) **any willing provider laws**."  Dkt. No. 273-17

19   § 2.2(a)(viii)(i) (emphasis added).  This language is plain, and makes sense in ESI's commercial

20   context in that a health insurer delegating its prescription services to a third-party PBM might have

21   an interest in ensuring that pharmacy-related AWP requirements would be observed.

22           Consequently, ESI had the burden of responding with facts and law to explain why CZ

23   Pharmacies might be wrong on this score.  It did not do that in its reply brief, where it did not say

24   anything substantive in response to the contractual provisions proffered by CZ Pharmacies on this

25   issue.  Dkt. No. 301-3 at 7-8.  At oral argument, counsel for ESI tried to backhoe a bit by arguing,

26   for the first time, that a contract cannot create liability under state law: "if the law says they're not

27   [subject to the law], you can agree all day, you can't change the law by contract.  Whether it

28   applies to you or not, the law says what it is."  Dkt. No. 328 at 47:1-3.  The problem for ESI is that

*United States District Court*
*Northern District of California*

12

1       this proposition, which was unstated in its reply brief, and unsupported by any case law citations

2       or facts in the record, is a day late and a dollar short for summary judgment purposes.  It may be

3       that ESI has a point, or some other good defense to the contractual evidence, but it has not

4       established that on the record before the Court.  Consequently, summary judgment is denied on the

5       AWP claim with respect to whether ESI voluntarily assumed by contract to adhere to it.

6                   **C.      The Unfair Competition Claims**

7                   The pharmacies make claims for unfair competition under California (CZ California) and

8       Tennessee (CZ Tennessee) law.  At oral argument, the Court advised the parties of *Ixchel Pharma*

9       *v. Biogen*, 930 F.3d 1031 (9th Cir. 2019), which referred the question of the applicability of

10      California Business & Professions Code § 16600 to business-to-business agreements to the

11      California Supreme Court.  In light of the certification of that question, the Court expressed doubt

12      that summary judgment would be appropriate at this time.  Dkt. No. 328 at 50:8-51:20.  After the

13      hearing, CZ filed a letter stating it would "consider foregoing that theory of unlawfulness for

14      purposes of their UCL claim."  Dkt. No. 331.  CZ is directed to make an election by August 31,

15      2020.

16                  CZ Tennessee's unfair competition claim will go forward.  Under Tennessee law, a claim

17      for unfair competition is stated when the defendant engaged in conduct that amounts to a

18      recognized tort and deprives the plaintiff of economic prospects.  *B&L Corp. v. Thomas &*

19      *Thorngren*, 162 S.W.3d 189, 216 (Tenn. Ct. App. 2004).  Summary judgment was denied for

20      defamation-based tort claims, and CZ Tennessee has a tort claim on which to base an unfair

21      competition claim.  ESI also did not move for summary judgment on the pharmacies' claims that

22      the termination constituted intentional interference with prospective economic relations.  Dkt.

23      No. 273-4 at 19.

24                  The California Unfair Competition Law ("UCL") defines unfair competition as "any

25      unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  These

26      are separate categories of constitutive acts for UCL purposes.  *Cel-Tech Commc'ns., Inc v. L.A.*

27      *Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  UCL claims are equitable in nature and tried to the

28      Court, not a jury.  *Nationwide Biweekly Admin., Inc. v. Superior Court*, 9 Cal. 5th 279, 292 (2020).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    With respect to the unlawful prong, summary judgment is denied in light of the

2    defamation-based tort claims, as well as the claim that ESI intentionally interfered with CZ

3    Pharmacies' prospective economic relations by virtue of the termination.  The Tennessee AWP

4    may not provide the basis of a UCL claim.  The California Supreme Court has held that "the

5    presumption against extraterritoriality applies to the UCL in full force."  *Sullivan v. Oracle Corp.*,

6    51 Cal. 4th 1191, 1207 (2011).  The allegations about alleged violations of the Tennessee AWP

7    are limited to CZ Tennessee, and no events relating to that claim are alleged to have taken place in

8    California.  Dkt. No. 24 ¶¶107-109.

9    CZ Pharmacies' reliance on alleged violations of two federal statutes, 42 U.S.C. § 1395w-

10   104(b)(1)(A) (Medicare Part D) and 42 U.S.C. § 1396a(a)(23) (Medicaid), have differing results.

11   As discussed, ESI made participation in its Medicare Part D plan available to CZ Pharmacies.  CZ

12   Pharmacies does not dispute this fact.  The exhibit cited for the proposition that ESI had a history

13   denying Medicare Part D applications from similar pharmacies reported that the provider,

14   PillPack, "has failed to submit the required evidence/documentation," Dkt. No. 273-28, and

15   another CZ exhibit actually shows that PillPack reached a provider agreement with ESI, Dkt.

16   No. 273-29.  On the other hand, Section 1396a(a)(23) imposes AWP restrictions on a state "plan

17   for medical assistance" -- a Medicaid plan.  ESI is not a state Medicaid plan.  But CZ Pharmacies

18   has offered an ESI policy document, Dkt. No. 273-26 titled, "Medicaid -- Any Willing Provider

19   Policy," which provides that "Express Scripts must comply with AWP laws and contractual

20   requirements in those in [sic] states when creating and maintaining a Client's Pharmacy Network."

21   In light of this record, the Court cannot say that CZ California is barred as a matter of law from

22   establishing a UCL unlawful claim with respect to the Medicaid AWP.

23   CZ Pharmacies does not have a claim under the unfairness prong.  In situations involving a

24   claim of unfairness between competing business, such as this one, the plaintiff must make out an

25   incipient violation of the antitrust laws.  *Cel-Tech*, 20 Cal. 4th at 187.  CZ Pharmacies has not

26   established an incipient violation of the Sherman or Clayton Acts, or other body of antitrust law.

27   The claim under the UCL's fraud prong stays alive.  As ESI recognizes, CZ's fraud theory

28   is based on the statements the Court has found may constitute defamation.

14

United States District Court
Northern District of California

1

**CONCLUSION**

2   CZ's motion for summary judgment is denied, but it may pursue limited, reasonable,

3   discovery of ESI's damages claims as described in this order until October 15, 2020.  ESI is

4   denied summary judgment except as to portions of the UCL.  The defamation-based claims, the

5   Tennessee AWP, and related claims under Tennessee and California unfair competition law will

6   go forward.

7   CZ should advise the Court by August 31, 2020, whether it intends to pursue its claim

8   related to California Business & Professions Code § 16600 under the UCL.  The parties are

9   ordered to mediation as discussed.

10   **IT IS SO ORDERED.**

11   Dated:  July 30, 2020

12

13

14   JAMES DONATO
United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15