UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CZ SERVICES, INC., et al.,

          Plaintiffs,

     v.

EXPRESS SCRIPTS HOLDING
COMPANY, et al.,

         Defendants.

Case No.  3:18-cv-04217-JD

**ORDER RE JURY INSTRUCTIONS
AND VERDICT FORM**

      Plaintiffs have now rested and the close of evidence is imminent.  This order identifies the claims the jury will be asked to decide in light of the trial record.

      1.      <u>Intentional and Negligent Interference with Prospective Economic Relations</u>:  The Court has doubts about the sufficiency of plaintiffs' evidence for an identifiable class of CZ Services, Inc. and CareZone Pharmacy LLC's (collectively CZ) customers beyond the pharmacies' existing ESI customers.  Even so, the Court will let the intentional and negligent interference with prospective economic relations claims go to the jury.  For the requirement that plaintiffs identify an independently wrongful act by the defendants, *see Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 512 (2017), plaintiffs rely on certain allegedly defamatory statements and trade libels, and the termination of their contracts with ESI, which plaintiffs say was a violation of the Tennessee Any Willing Provider (AWP) statute, *see* Dkt. No. 24 at ¶¶ 87-89, 96.

      The interference claims are limited to defamation and trade libel.  In the summary judgment order, the Court concluded that ESI was a pharmacy benefits manager, and not a "health insurance issuer" or "managed health insurance issuer" within the meaning of the Tennessee AWP law.  Dkt. No. 333 at 9-10.  The Court also concluded that ESI was not an agent of a health insurance issuer.  *Id*. at 11.  No evidence has been adduced during the trial that changes those conclusions in any way.  The trial evidence also establishes that ESI offered plaintiffs an option to participate in the Medicare D program, but plaintiffs declined.

1    The summary judgment order left open one specific, potential question of fact of whether

2    ESI voluntarily agreed to abide by the Tennessee AWP law in connection with plaintiffs. *Id*. at

3    13. Plaintiffs have not adduced any evidence at trial to that end. The contracts between ESI and

4    the plaintiff pharmacies do not require ESI to abide by the Tennessee AWP. *See* Dkt. No. 249-19

5    (CZ Services, Inc.) and Dkt. No. 249-20 (CareZone Pharmacy LLC), and in any event, the agreed-

6    upon choice of Missouri law for the contracts, *see* Dkt. No. 503 at 171-72, provides that the

7    interpretation of a contract and ancillary facts is an issue for the Court, not the jury. *See*

8    *Pelopidas, LLC v. Keller*, 633 S.W.3d 383, 395 (Mo. Ct. App. 2021). On summary judgment, the

9    only evidence plaintiffs presented to show that ESI was ostensibly bound by AWP laws was from

10   contracts between ESI and health insurers. *See* Dkt. No. 273-4 at 6; Dkt. No. 273-17. Plaintiffs

11   adduced at trial a contract between ESI and Blue Cross Blue Shield to say that ESI agreed to be

12   bound by the Tennessee AWP law. But CZ was not a party to that agreement, CZ has shown no

13   nexus between that contract and CZ, and ESI's contracts with CZ do not contain similar

14   provisions in which ESI agreed to be bound by AWP laws in its relationship with CZ.

15   Consequently, the intentional and negligent interference with prospective economic

16   relations claims will go to the jury only on the defamation-related predicates. The Court may

17   address the AWP claim separately in an equity proceeding, if warranted by developments.

18   2.    Defamation and Trade Libel:  The parties agree that plaintiffs' defamation and

19   trade libel claims are governed by California law, and both parties have proposed jury instructions

20   based on the Judicial Council of California Civil Jury Instructions. *See* Dkt. No. 503 at 51-52.

21   The statements in issue are about CZ not providing affordable or quality care, and operating

22   illegally by not being properly licensed in all states to which CZ mailed prescriptions. Trial Exs.

23   592, 847. CZ has not adduced evidence at trial about the statements with respect to affordability

24   and quality of care, and the evidence it has presented focused on the question of whether CZ was

25   operating illegally by failing to have state pharmacy licenses. The affordability and quality

26   statements are excluded from the defamation and trade libel claims for this reason, and because

27   they are far more akin to opinions than statements of fact.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The statement said to have compared CZ to self-driving Uber cars is also excluded as a

2    basis of defamation or trade libel.  The amended complaint, Dkt. No. 24, did not make any

3    mention of an Uber-related statement, and so it may not be considered now.  *See Med. Marijuana,*

4    *Inc. v. ProjectCBD.com*, 46 Cal. App. 5th 869, 893 (2020) ("Case law requires that statements

5    alleged to constitute libel 'must be specifically identified if not pleaded verbatim, in the

6    complaint.'").  The Uber comment also has the flavor of a quip or opinion, as opposed to fact,

7    which is another grounds for exclusion.  The jury will decide the defamation and trade libel claims

8    purely on the basis of the statements about the illegality of CZ's operations for lack of state

9    pharmacy licenses.  ESI's persistent mention of *Costal Abstract Service, Inc. v. First American*

10   *Title Insurance Co.*, 173 F.3d 725 (9th Cir. 1999), is again rejected as a defense of these claims for

11   the reasons detailed in the summary judgment order.  *See* Dkt. No. 333 at 8.

12   For the question of whether the actionable statements are libelous on their face (libel or

13   defamation per se), they may be so characterized if they are "defamatory of the plaintiff without

14   the necessity of explanatory matter."  Cal. Civ. Code § 45a.  "[F]alse statements charging the

15   commission of crime, or tending directly to injure a plaintiff in respect to his or her profession by

16   imputing dishonesty or questionable professional conduct are defamatory per se."  *Burrill v. Nair*,

17   217 Cal. App. 4th 357, 383 (2013).  The statements in this case say that CZ mailed prescriptions to

18   states in which they were not licensed, in violation of state law.  Trial Exs. 592, 847.  These

19   statements are akin to the statements in *Burrill*, which accused the plaintiff of committing various

20   crimes and acting dishonestly in her profession, and which were found to be defamatory per se.

21   *Burrill*, 217 Cal. App. 4th at 383-85.  Consequently, the alleged statements about illegality and

22   CZ's compliance with state licensure laws are properly characterized as defamation per se.

23   Pretrial Order No. 2 concluded that plaintiffs were not public figures for purposes of the

24   defamation claims, but left open a final determination of their status pending the evidence at trial.

25   Dkt. No. 514 at 1-2.  The evidence is now largely in the books, and the Court concludes that

26   plaintiffs are limited public figures under applicable California legal standards.  *See* Dkt. No. 514;

27   *see also Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1577-78 (2005).  Among other facts

28   adduced during trial, plaintiffs took active steps to create a public controversy over ESI's

3

United States District Court
Northern District of California

1    termination of CZ from the network.  Jonathan Schwartz, the CEO and founder of CZ, testified

2    that CareZone, Inc. set up a website where patients could get sample text for an email.  Dkt. No.

3    525 at 210:20-211:1.  The website would also prepopulate an email to be sent to relevant people at

4    the government.  Dkt. No. at 339:9-11.  This evidence goes beyond the plans ESI pointed to

5    previously and shows that not only did CZ plan to encourage patients to write to government

6    agencies, but they actually set up the means for those communications to occur and actively

7    encouraged their patients to email the government, and others.

8            To the extent that plaintiffs may seek to avoid this conclusion by saying that CareZone,

9    Inc., the app company, and not the pharmacies, CZ Services, Inc. and CareZone Pharmacy LLC,

10   created the public controversy in this case, the Court is not persuaded.  Overall, the evidence has

11   demonstrated that plaintiffs have been rather inconsistent in strategic ways about the legal

12   relationships within their corporate family.  The trial evidence has shown that CareZone, Inc. and

13   the pharmacies were closely related.  For example, among other facts, the entities were all owned

14   by Jonathan Schwartz and set up with a $200 call option so that CareZone, Inc. could purchase the

15   pharmacies.  The entities' finances were lumped together and treated as a single unit for

16   investment pitches and the like.  Plaintiffs have displayed something of a sword and shield

17   approach to their corporate structure by claiming unity when in their interests, and independence

18   when not.  That will not do, and the pharmacies cannot escape the controversy that CareZone, Inc.

19   created on their behalf and in their interest.  *See Thomas v. L.A. Times Comm'cs, LLC*, 189 F.

20   Supp. 2d 1005, 1012 (C.D. Cal. 2002) ("Although Thomas was not himself the author of the book,

21   the Court finds that his cooperation with its publication subjects him to becoming a public

22   figure.").  As a result, the Court finds that the pharmacies were a limited public figure for CZ's

23   defamation claims.  Plaintiffs consequently will be required to show by clear and convincing

24   evidence that ESI had knowledge of the falsity of the statements or was reckless with regard to the

25   falsity or truth of the statements.  *Ampex*, 128 Cal. App. 4th at 1577; *see also Overstock.com, Inc.*

26   *v. Gradient Analytics, Inc.,* 151 Cal. App. 4th 688, 700-01 (2007).

27           3.      Punitive Damages:  CZ seeks punitive damages for its defamation, trade libel, and

28   intentional interference with prospective economic relations claims under California law.  To

4

United States District Court
Northern District of California

1   recover punitive damages under California law, plaintiffs must show that ESI is guilty of

2   oppression, fraud, or malice by clear and convincing evidence.  Cal. Civ. Code § 3294; *see also*

3   *Butte Fire Cases*, 24 Cal. App. 5th 1150, 1158 (2018).  Plaintiffs have presented no evidence at

4   trial of oppression, fraud, or malice.  Consequently, the issue of punitive damages will not go to

5   the jury.

6         4.      <u>ESI's Breach of Contract Claim</u>:  For its breach of contract claims, ESI seeks

7   restitution of the sums it paid to CZ Service and CareZone Pharmacy LLC while the relevant

8   contracts were in place.  Under Missouri and Ninth Circuit law, restitution may be either a legal or

9   equitable remedy depending on the case circumstances.  *Bayer v. Neiman Marcus Grp., Inc.*, 861

10   F.3d 853, 866 (9th Cir. 2017) ("[A] monetary award that is restitutionary in nature may be legal or

11   equitable depending on the circumstances in which it is awarded."); *State ex rel. Leonardi v.*

12   *Sherry*, 137 S.W.3d 462, 471 (Mo. 2004) (en banc).  While a good argument can be made that ESI

13   seeks equitable restitution only, the parties each offered proposed jury instructions on the breach

14   of contract claims and restitution.  This manifests mutual consent under FRCP Rule 39 to try the

15   issue to the jury, even if equitable in nature.  Plaintiffs' effort during trial to backpedal from this is

16   not well taken.  The breach of contract counterclaim will go to the jury, with the proviso that the

17   Court may deem the verdict advisory pending post-trial proceedings.

18         5.      <u>Promissory Fraud</u>:  The parties have agreed that ESI's promissory fraud claim is

19   governed by California law, and as the Court noted in its summary judgment order, the parties

20   have waived any appeal on this choice of law.  Dkt. No. 333 at 5.  ESI has also represented to the

21   Court that it seeks the same contract restitution as its remedy for this claim, and nothing else.  This

22   claim will go to the jury for the same reason as the breach of contract claims.

23         The Court will file final jury instructions and a verdict form consistent with this order.

24         **IT IS SO ORDERED.**

25   Dated:  February 7, 2020

26

27                                 JAMES DONATO
                              United States District Judge

28