UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CZ SERVICES, INC., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>EXPRESS SCRIPTS HOLDING COMPANY, et al.,<br><br>    Defendants. | Case No. 3:18-cv-04217-JD<br><br>**ORDER RE EQUITABLE CLAIMS** |

A long-running dispute between plaintiffs CZ Services, Inc. and CareZone Pharmacy LLC (CZ), and defendants Express Scripts Holding Company and Express Scripts, Inc. (ESI), was tried by a jury in February 2022. The jury found against CZ on all of its claims against ESI, namely defamation, violations of the Lanham Act, trade libel, intentional interference with prospective economic relations, and negligent interference with prospective economic relations. Dkt. No. 551. The jury found against ESI on all of its counterclaims against CZ and its CEO, Jonathan Schwartz, for breach of contract and promissory fraud. *Id.* In effect, the jury declared a plague upon both parties' houses. The Court entered judgment on the verdict on March 22, 2022, and the time for appeal has passed. Dkt. No. 560.

The verdict and judgment disposed of the bulk of the claims between CZ and ESI. A few equitable tail ends were not specifically addressed in the verdict, and CZ has inquired about their status. *See* Dkt. No. 563. These relate to CZ's equitable claims under the Tennessee Any Willing Provider (AWP) statute, and the Tennessee and California unfair competition laws.

The Court has written extensively on the AWP claim, and determined that the statute does not apply to ESI. *See* Dkt. No. 92 (order denying TRO); Dkt. No. 333 (order re summary judgment). In pertinent part, the plain text of the AWP statute makes clear that the Tennessee legislature intended to regulate only entities that are a "health insurance issuer" and a "managed health insurance issuer." *See* Dkt. No. 333 at 9. ESI is a pharmaceutical benefits manager (PBM),

1    which is not a health insurance issuer within the meaning or scope of the AWP.  *Id*. at 9-10.  Every

2    court that has examined the application of other AWP statutes to PBMs has reached the same

3    conclusion, and a few states have overcome that hurdle by expressly including PBMs in their

4    AWP statutes.  *Id*. at 10.  Tennessee is not one of those jurisdictions, and CZ never made a good

5    argument justifying the application of the Tennessee statute to ESI.  For this and other related

6    reasons, the Court denied CZ's application for a TRO based on the Tennessee AWP, and largely

7    gutted the AWP claim on summary judgment in ESI's favor.  *Id*. at 9-12; Dkt. No. 92 at 3.

8           The only remnant of the AWP claim left open for further proceedings was whether ESI had

9    voluntarily agreed in its contracts to be bound by the Tennessee AWP statute, even though it was

10   under no legal obligation to do so.  On summary judgment, CZ tendered a few contracts between

11   ESI and the University of Pittsburgh Medical Center, Highmark, Medical Mutual of Ohio, and

12   Wellpoint, which were said to show that ESI had agreed to comply with AWP laws in states other

13   than Tennessee.  *See* Dkt. No. 273-4 at 6 (CZ's summary judgment brief); *see, e.g.*, Dkt. No. 273-

14   17 (UPMC); Dkt. No. 273-16 (Highmark); Dkt. No. 273-18 (Medical Mutual); Dkt. No. 273-19

15   (Wellpoint).  CZ also tendered a contract between ESI and BlueCross/BlueShield of Tennessee

16   (BCBST), which was the only contract that mentioned the Tennessee AWP law.  Dkt. No. 273-14.

17   Based on this record, thin though it was, the Court let the question go forward of whether ESI

18   voluntarily committed itself to complying with the Tennessee AWP.

19          In initial pretrial discussions with the parties, the Court expressed a tentative inclination to

20   take up any equitable claims separately after a jury trial of the legal claims.  *See* Dkt. No. 505

21   30:15-18.  Upon further consideration, the Court directed the parties to present all of their

22   evidence for their claims, legal or equitable, during the jury trial.  *See* Dkt. No. 519 31:3-14; Dkt.

23   No. 533 655:17-659:14.  This was intended to utilize the jury as the fact finder for issues common

24   to the legal and equitable claims.  *See* Fed. R. Civ. P. 39; *Tull v. United States*, 481 U.S. 412, 425

25   (1987).  As a result, CZ had ample notice and opportunity to adduce evidence during the jury trial

26   that ESI had agreed to comply with the Tennessee AWP.  *See* Dkt. No. 543 at 882-95.

27          The evidence CZ presented at trial was vanishingly slight.  CZ proffered just the one

28   contract between ESI and BCBST, which counsel for CZ expressly described as the contract that

United States District Court
Northern District of California

1    ostensibly established ESI's liability under the AWP laws.  TX-0082 (Dkt. No. 273-14).  The

2    Court pressed CZ several times on whether it had any other contracts or testimony to establish that

3    ESI voluntarily agreed to be bound by the AWP laws.  *See* Dkt. No. 543 at 885:23-886:3; 886:12-

4    16; 887:18-22; 889:4-17.  No evidence other than the one BCBST contract was presented.

5           The problem for CZ it that this contract does not establish that ESI has agreed to take on

6    the requirements of the Tennessee AWP statute.  The contract states that "ESI accepts

7    responsibility for performing contracted services and understands BCBST will provide oversight

8    of contracted services based on all applicable BCBST standards, policies, business principles,

9    Federal and State regulations instructions and letter rulings."  Dkt. No. 273-14 Sched. E § 1.1.

10   The Tennessee AWP law is included in a list of statutes to which the provision applies.  *Id*.  But

11   this clause is hardly tantamount to an express statement by ESI that it agreed to comply with the

12   Tennessee AWP.  At best, it says only that BCBST is responsible for compliance, which was

13   consonant with the fact that the AWP statute applies to health insurers like BCBST, and not PBMs

14   like ESI.  CZ did not sponsor any testimony at trial to the effect that this clause made ESI

15   responsible for the Tennessee AWP requirements.  To the contrary, CZ represented to the Court

16   that there was no evidence that ESI ever told CZ that it was bound under the BCBST contract to

17   follow the Tennessee statute.  Dkt. No. 543 892:19-893:5.

18          Consequently, after a full and fair opportunity to present evidence that ESI volunteered to

19   comply with the Tennessee AWP statute, CZ came up well short.  No further proceedings on the

20   issue are warranted.

21          So too for the Tennessee and California unfair competition claims.  In Tennessee, an unfair

22   competition claim requires conduct that amounts to a recognized tort, and deprives the plaintiff of

23   economic prospects.  *See, e.g., B&L Corp. v. Thomas & Thorngren*, 162 S.W.3d 189, 216 (Tenn.

24   Ct. App. 2004); *Dominion Enters. v. Dataium, LLC*, No. M2012-02385-COA-R3-CV, 2013 WL

25   6858266, at *7 (Tenn. Ct. App. Dec. 27, 2013) ("[A] claim of unfair competition also requires an

26   underlying tort.") (unpublished).  The Tennessee claim survived summary judgment because

27   potential underlying tort claims, such as defamation, also survived.  Dkt. No. 333 at 13.  The

28

United States District Court
Northern District of California

3

verdict closed that door. The jury found against CZ on all of its tort claims. Consequently, the Tennessee unfair competition claim lacks an essential element.

For the California Unfair Competition Law (UCL), unfair competition is defined as "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. For the reasons stated in the summary judgment order, the Tennessee AWP statute cannot be the basis of a UCL claim. *See* Dkt. No. 333 at 14 (citing *Sullivan v. Oracle Corp.*, 51 Cal.4th 1191, 1207 (2011)). The Court allowed the UCL claim to go froward on the basis of the alleged defamation and the interference torts, but the jury verdict against CZ on those counts shuts down this avenue, too.

The Court also left open a sliver of a UCL unlawfulness claim predicated on a violation of the Medicaid AWP statute, 42 U.S.C. § 1396a(a)(23), which states that a State plan for medical assistance must provide for any eligible person to obtain care from any qualified provider and that choice of provider will not be restricted. *See* Dkt. No. 333 at 14. To be clear, the Medicaid AWP is a federal statute that is entirely distinct and separate from the Tennessee AWP state law discussed so far. During summary judgment, CZ tendered an ESI policy said to show that ESI would comply with the Medicaid AWP law. Dkt. No. 273-26 (Medicaid - Any Willing Provider Policy). But at trial, CZ did not proffer any evidence establishing that ESI operated as a State Medicaid plan, or had otherwise voluntarily assumed the requirements of the Medicaid AWP statute. CZ did not even tender at trial the ESI policy it had cited in the summary judgment proceedings, *see* Dkt. No. 552 at 3 (admitted trial exhibits), or any evidence whatsoever indicating that ESI might have been subject to by the Medicaid AWP statute.

As the overall record demonstrates, there is nothing left in the case that might warrant post-verdict proceedings. Judgment will be entered against CZ on the AWP and unfair competition claims.

**IT IS SO ORDERED.**

Dated: August 24, 2022

JAMES DONATO
United States District Judge

4